IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 11 B 48903 |
| | ) | |
| CLARE OAKS, | ) | Hon. Pamela S. Hollis |
| | ) | Chapter 11 |
| Debtor. | ) | |

**NOTICE OF DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN INTERIM ORDER: (I) AUTHORIZING USE OF CASH COLLATERAL; (II) PROVIDING ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING**

PLEASE TAKE NOTICE that on **Thursday, December 8, 2011 at 10:00 a.m.** or as soon thereafter as counsel may be heard, I shall appear before the Honorable Pamela S. Hollis or any judge sitting in her stead in Courtroom 644 in the United States Bankruptcy Court, 219 S. Dearborn Street, Chicago, Illinois and shall then and there present Debtor**'s Emergency Motion for Entry of an Interim Order: (I) Authorizing Use of Cash Collateral; (II) Providing Adequate Protection; and (III) Scheduling a Final Hearing**.

Dated: December 5, 2011                    CLARE OAKS

                                                        by:  /s/ George R. Mesires
                                                             Donald L. Schwartz (# 2522861)
                                                             George R. Mesires (# 6276952)
                                                             Patrick F. Ross (# 6296461)
                                                             David R. Doyle (#6303215)
                                                             UNGARETTI & HARRIS LLP
                                                             70 W. Madison Street, Suite 3500
                                                             Chicago, IL 60602
                                                             (312) 977-4400 – phone
                                                             (312) 977-4405 – fax
                                                             Email:  dlschwartz@uhlaw.com
                                                                            grmesires@uhlaw.com
                                                                            pfross@uhlaw.com
                                                                            drdoyle@uhlaw.com

*Proposed Counsel for Debtor and Debtor-in-Possession*

2053649-9

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 11 B 48903 |
| | ) | |
| CLARE OAKS, | ) | Hon. Pamela S. Hollis |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | Hearing Date: December 8, 2011 |
| | ) | Hearing Time: 10:00 a.m. |

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN INTERIM ORDER: (I) AUTHORIZING USE OF CASH COLLATERAL; (II) PROVIDING ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING**

The above-captioned debtor and debtor-in-possession ("Debtor"), by and through its counsel, pursuant to sections 105(a), 361, 362, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), hereby moves this Court for entry of an interim order (the "Interim Order"): (1) authorizing Debtor to use cash collateral; (2) providing adequate protection; and (3) scheduling a final hearing (the "Motion"). In support of its Motion, Debtor states as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the matters raised in this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b).

2. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested in this Motion are sections 105(a), 361, 362, and 363 of the Bankruptcy Code, Rules 2002, 4001, and 9014 of the Bankruptcy Rules, and Rule 4001-2 of the Local Rules.

2053649-9

## INTRODUCTION

4. On December 5, 2011 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Northern District of Illinois, Eastern Division.

5. No trustee, examiner, or committee has been appointed in this case, and Debtor remains in possession of its assets and continue to operate its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

## BACKGROUND

6. Debtor is an Illinois not-for-profit corporation organized under section 501(c)(3) of the Internal Revenue Code. The members of Debtor are the Sisters of St. Joseph of the Third Order of St. Francis, a Roman Catholic religious institute (the "Congregation"), who are elected and serving as the members of the Central Board of the Congregation.

7. Debtor operates a continuing care retirement community ("CCRC") in Bartlett, Illinois, known as "Clare Oaks" (the "Clare Oaks Campus"). CCRCs provide senior citizens a full continuum of affordable living accommodations and related healthcare services during their retirement years – from independent living to skilled nursing care – all on the same campus. CCRCs enable seniors to live on the same campus as their needs change by providing various levels of support and care at the same facility. In addition, CCRCs provide residents with social and entertainment outlets for all stages of retirement living.

8. This Motion is further supported by the Declaration of Paul Rundell, Debtor's Chief Restructuring Officer (the "Rundell Declaration"). The Rundell Declaration provides an overview of Debtor's corporate structure and business operations and the circumstances leading to the commencement of this chapter 11 case.

## DEBTOR'S PREPETITION
## SECURED CREDITORS AND DEPOSIT ACCOUNTS

9. As described more fully in the Rundell Declaration, Debtor is the sole member of an obligated group (the "Obligated Group") created by the Master Trust Indenture dated as of July 1, 2006, as supplemented and amended by the First Supplemental Master Trust Indenture dated as of July 1, 2008, the Second Supplemental Master Trust Indenture dated as of May 1, 2010, and the Third Supplemental Master Trust Indenture dated as of October 1, 2010 (as supplemented and amended, the "Master Indenture"), between Debtor and Wells Fargo Bank, National Association, as Master Trustee (the "Master Trustee").

10. Debtor has issued certain direct note obligations (the "Bond Obligations") under the Master Indenture to secure four series of tax-exempt revenue bonds (collectively, the "Series 2006 Bonds")[1] issued by the Illinois Finance Authority (the "Authority") in the original aggregate principal amount of $112,725,000 pursuant to two separate Bond Trust Indentures, each dated as of July 1, 2006, each between the Authority and Wells Fargo Bank, National Association, as Bond Trustee (the "Bond Trustee"). The Authority loaned the proceeds of the Series 2006 Bonds to Debtor (such loans, the "Prepetition Loans") pursuant to two separate Loan Agreements, each dated as of July 1, 2006 (collectively, the "Loan Agreements"), between the Authority and Debtor. As security for the Series 2006 Bonds, the Authority has assigned and pledged to the Bond Trustee the related Bond Obligations and payments to be made by the Obligated Group thereon, and certain rights of the Authority under the Loan Agreements and

---

[1] The Series 2006 Bonds are comprised of the following series or sub-series (the present outstanding aggregate principal amount of each series or sub-series is listed in parentheses): (i) Revenue Bonds, Series 2006A (Clare Oaks Project) ($50,365,000); (ii) Revenue Bonds, Series 2006B-1 (Clare Oaks Project), Extendable Rate Adjustable Securities (EXTRAS) ($2,000,000); (iii) Revenue Bonds, Series 2008B-2 (Clare Oaks Project), Extendable Rate Adjustable Securities (EXTRAS) ($4,000,000); (iv) Variable Rate Demand Revenue Bonds, Series 2006C (Clare Oaks Project) ($38,360,000); and (v) Variable Rate Demand Revenue Bonds, Series 2008D (Clare Oaks Project) ($1,300,000).

payments to be made by Debtor thereunder. As additional security, Debtor has granted to the Master Trustee a lien on Debtor's leasehold estate and security interest in certain personal property of Debtor pursuant to the Leasehold Mortgage and Security Agreement dated as of July 1, 2006 (the "Mortgage"), between Debtor and the Master Trustee. Debtor's CCRC Campus is located on real estate leased to Debtor by the Congregation pursuant to the Ground Lease dated July 1, 2006 (the "Ground Lease"), between the Congregation, as landlord, and Debtor, as tenant.

11.     The Series 2006C Bonds and the Series 2006D Bonds are also supported by two separate letters of credit, respectively (the "Letters of Credit"), issued by Sovereign Bank (the "Bank") pursuant to the Letter of Credit Agreement dated as of July 1, 2006, as amended by the First Amendment to Letter of Credit Agreement and Waiver dated as of December 1, 2008, and the Second Amendment to Letter of Credit Agreement dated as of October 1, 2008 (as amended, the "L/C Agreement"), between the Bank and Debtor. MB Financial Bank ("MB Financial") is a participant in certain of the rights and obligations of the Bank under the L/C Agreement. Debtor has issued certain direct obligations under the Master Indenture as security for Debtor's reimbursement obligations to the Bank arising under the L/C Agreement for drawings under the Letters of Credit and fees relating to the Letters of Credit.

12.     Debtor has also issued certain direct note obligations under the Master Indenture to secure its obligations (the "Swap Obligations") under two interest rate swaps related to the Series 2006C Bonds and the Series 2006D Bonds entered into by Debtor with Sovereign Bank (the "Swap Provider").

13.     Debtor, as sole member of the Obligated Group is liable for the Prepetition Loans, plus accrued but unpaid interest, fees, costs and expenses incurred by the Bank and MB Financial pursuant to the L/C Agreement and accrued and unpaid Swap Obligations, which,

together with the accrued and unpaid expenses of the Master Trustee and the Bond Trustee, is defined as the "Prepetition Indebtedness."

14. To secure repayment of the Prepetition Indebtedness, Debtor granted to the Master Trustee, pursuant to the Mortgage and the Master Indenture, a mortgage lien on and security interest in the leased premises under the Ground Lease (the "Leased Premises"), a security interest in certain of the personal property of Debtor located on the Leased Premises, and a security interest in all receipts, revenues, rentals, income, insurance proceeds and other moneys derived from the ownership and operation of the CCRC, whether in the form of accounts, general intangibles and other rights, whether now existing or hereafter acquired (all of the foregoing assets generally described above, the "Prepetition Collateral," and such mortgage, liens and security interests, the "Prepetition Liens").

15. As of the Petition Date, the Master Trustee also holds certain accounts and deposits therein pursuant to the terms of the documents evidencing and securing the Series 2006 Bonds (all such funds, the "Debt Service Reserve Funds"). Debtor anticipates that the Master Trustee will assert that the Debt Service Reserve Funds are only permitted to be used to pay amounts owed with respect to the Prepetition Indebtedness. Debtor does not concede this anticipated position of the Master Trustee, but, nevertheless, Debtor does not seek authority in this Motion to use the Debt Service Reserve Funds (which it expressly reserves the right to do in the future).

16. Debtor maintains a general operating account and other bank accounts, none of which are subject to a control agreement in favor of the Master Trustee or any other party. Debtor believes that, despite its failure to perfect a security interest in such bank account, the

2053649-9                                    5

Master Trustee will assert that some or all of the funds in such general operating account constitute its Cash Collateral (as hereinafter defined).

17. Debtor has also established two escrow accounts with The Chicago Trust Company, N.A., a Wintrust Wealth Management Company, for the benefit of certain residents and potential residents that hold entrance fees and option deposits received therefrom (all funds in such escrow accounts, the "Escrowed Funds").

## RELIEF REQUESTED

18. Debtor intends to finance the operation of its business during this chapter 11 case through the continued use of cash collateral (as defined in section 363(a) of the Bankruptcy Code) (the "Cash Collateral") and postpetition financing incurred pursuant to section 364 of the Bankruptcy Code.[2]

19. Pursuant to the Interim Order and Final Order, the use of Cash Collateral will be limited to paying only those expenses contained in the Cash Collateral Budget (as hereinafter defined). Until the Court has entered an order approving the Contemplated DIP Financing (or other postpetition financing) (any such order, the "Financing Order," and the date of entry of the Financing Order, the "Financing Order Date"), the "Cash Collateral Budget" shall be the budget attached to the Interim Order as **Exhibit A** (as it may be amended or extended from time-to-time as provided in a further order of this Court), and from and after the Financing Order Date, the "Cash Collateral Budget" shall be the budget approved in the Financing Order (as it may be amended from time to time pursuant to the terms of the Financing Order) (the "DIP Budget").

---

[2] After negotiating a term sheet for postpetition financing with Senior Care Development, LLC (the "Proposed DIP Lender"), Debtor has nearly finalized the provisions of a credit agreement and financing order with the Proposed DIP Lender (such financing, the "Contemplated DIP Financing"). Debtor anticipates filing a motion seeking the entry of an interim order approving the Contemplated DIP Financing on or about the date of the Court's hearing on this Motion.

2053649-9                                              6

The Interim Order and Final Order shall also provide that Debtor may only make expenditures in excess of the amounts set forth in the Cash Collateral Budget so long as the total variance does not exceed, on a cumulative basis, fifteen percent (15%) of the total budgeted expenses through the end of the applicable period, unless permitted by a further order of this Court or agreed by the Master Trustee.

20. Accordingly, by this Motion, Debtor requests the entry of interim and final orders authorizing Debtor to:

(a) use the Cash Collateral of the Master Trustee as available or made available to Debtor for expenditures contained in the Cash Collateral Budget, subject to a cumulative variance test, pursuant to Sections 361, 362, and 363 of the Bankruptcy Code;

(b) as adequate protection for Debtor's use of the Master Trustee's Cash Collateral, to provide the Master Trustee additional and replacement liens that are senior and superior to the Master Trustee's Prepetition Liens, but that are subject and subordinate to the Permitted Encumbrances, the Carve-Out, and the DIP Liens (in each case, as hereinafter defined) and the 507(b) Claim (as hereinafter defined); and

(c) pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, schedule a final hearing (the "Final Hearing") within 30 days of the entry of the Interim Order for this Court to consider entry of the Final Order.

**BASIS FOR RELIEF**

21. An immediate and critical need exists for Debtor to use Cash Collateral in order to continue its operations and maximize the value of its estate for the benefit of all creditors. Without such funds, Debtor will not be able to pay employees, suppliers, and other operating expenses, provide for the safety or care of its residents, repay entrance fee refund obligations to residents, and obtain goods and services needed to carry on its operations during this sensitive period for the purposes set forth in the Interim Order and summarized in this Motion in a manner that will avoid irreparable harm to Debtor's estate. In the Interim Order, Debtor seeks only to use the portion of Cash Collateral that does not consist of Escrowed Funds and Debt Service Funds

2053649-9                                              7

(all such other Cash Collateral, together with any portion of the Debt Service Reserve Funds which may hereinafter be authorized by an order of this Court, the "Available Cash Collateral").[3] Until the Court has entered the Financing Order, Debtor's ability to finance its operations and the availability of sufficient working capital and liquidity to Debtor through the use of cash collateral is vital to the confidence of Debtor's residents, vendors, and suppliers of goods and services, and to the preservation and maintenance of the going concern value of Debtor's estate.

22. Debtor believes that the adequate protection terms set forth in the Interim Order and Final Order will be sufficient to protect the Master Trustee from any diminution in value of its interest in the Prepetition Collateral resulting from (i) the imposition or enforcement of the automatic stay, (ii) the use of Cash Collateral, (iii) the subordination of the Master Trustee's purported liens on the Prepetition Collateral to the Carve-Out, and (iv) the subordination of the Master Trustee's purported liens on the Prepetition Collateral to any liens now or hereafter granted to secure the Contemplated DIP Facility or otherwise granted under section 364(d) of the Bankruptcy Code (such liens, the "DIP Liens").

23. As demonstrated in the Cash Collateral Budget and the Rundell Declaration, Debtor anticipates that the operation of its business during the period commencing on the Petition Date and continuing through the requested date of a Final Hearing will be cash-flow positive. Accordingly, while it is unlikely that any diminution in value of the Available Cash Collateral will occur, the entry of the Interim Order will assure that there is no immediate and irreparable harm to the value of Prepetition Collateral, and is in the best interest of, Debtor, its estate, and creditors. The adequate protection terms set forth in the proposed Interim Order are fair and reasonable under the circumstances, reflect Debtor's exercise of prudent business

---

[3] In the Escrow Motion, Debtor is seeking the authority to use the Escrowed Funds to pay resident refund obligations pursuant to the terms of the applicable escrow agreements.

judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

## THE TERMS OF USE OF CASH COLLATERAL

24. The Interim Order contain the terms of use of the Cash Collateral. The salient terms are summarized as follows:

| Use of Cash Collateral: | The Available Cash Collateral may be used by Debtor to pay the expenditures contained in the Cash Collateral Budget, subject to a cumulative variance test. |
|---|---|
| Carve-Out: | The Carve Out consists of (i) the unpaid fees of the clerk of the Bankruptcy Court or District Court, as applicable, and of the United States Trustee pursuant to 28 U.S.C. § 1930(a) and (b); (ii) the aggregate allowed (regardless of when allowed) and unpaid fees and expenses of professionals retained in the Chapter 11 Case by Debtor (other than ordinary course professionals) up to $300,000; (iii) the allowed (regardless of when allowed) and unpaid fees and expenses of professionals retained in the Chapter 11 Case by any committee appointed in the Chapter 11 Case up to $40,000; and (iv) reasonable fees and expense incurred by a trustee under 726(b) of the Bankruptcy Code not to exceed $50,000. (Interim Order ¶ 6) |
| Adequate Protection: | • Valid, binding, enforceable and perfected additional and replacement mortgages, pledges, and liens on, and security interests in, all of Debtor's property, whenever acquired or arising, except for claims and causes of action of the estate arising under Chapter 5 of the Bankruptcy Code, except that (x) actions under section 549 of the Bankruptcy Code (and the proceeds thereof) shall be included, and (y) any lien or security interest avoided pursuant to sections 550, 551 and/or 552 of the Bankruptcy Code shall have the same priority as such avoided lien (all such non-excluded property, the "Postpetition Collateral") senior to the Prepetition Liens, but subject and subordinate to (a) the Carve-Out, (b) the DIP Liens, and (c) (i) valid, perfected and non-avoidable liens as of the Petition Date (other than the Prepetition Liens) or (ii) valid liens in existence at the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and perfected thereafter as permitted by section 546(b) of the Bankruptcy Code (the liens described in the preceding sub-clauses (i) and (ii), the "Permitted Encumbrances") and only to the extent of diminution in value, as more fully described in the Interim Order and Final Order (such liens, the "Adequate |

2053649-9                                                                 9

|  | |
|---|---|
|  | <u>Protection Liens</u>"); and<br><br>• a superpriority claim allowed under section 507(b) of the Bankruptcy Code (the "<u>507(b) Claim</u>") against all assets of Debtor's estate, to the extent of the diminution in value, as more fully described in the Interim Order and Final Order, but subject and subordinate only to the Carve-Out and the DIP Liens.<br><br>(Interim Order ¶ 3) |
| Reporting: | Debtor shall provide to the Master Trustee, the Bond Trustee, the Bank and their respective counsel a weekly variance report. Debtor shall also provide the Master Trustee access to Debtor's books and records, advisors and professionals as may be reasonably requested by the Master Trustee from time to time. (Interim Order ¶ 7) |

## **COMPLIANCE WITH L.B.R. 4001-2(A)(2)-(3)**

25.     Local Rule 4001-2(A)(2)-(3) requires that certain provisions contained in cash collateral and financing requests be highlighted (the "<u>Highlighted Provisions</u>"), and that Debtor must provide justification for the inclusion of such Highlighted Provisions. The Interim Order does not contain any Highlighted Provisions.

## **APPLICABLE AUTHORITY**

26.     Section 363(c) of the Bankruptcy Code provides, in pertinent part:

> (c)     (1) If the business of Debtor is authorized to be operated under section 721, 1108, 1203, 1204 or 1304 of this Title and unless the court orders otherwise, the trustee … may use property of the estate in the ordinary course of business without notice or a hearing.
>         (2) The trustee may not use, sell or lease cash collateral under paragraph (1) of this subsection unless--
>             (A) each entity that has an interest in such cash collateral consents; or
>             (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

27.     Bankruptcy Rule 4001(b) governs the procedures for securing authorization to obtain the use of cash collateral and provides, in relevant part:

> [The court may commence a final hearing on a motion for authority to use cash collateral] no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but

2053649-9                                              10

>the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. P. 4001(b)(2). Debtor is seeking entry of the Interim Order to avoid immediate and irreparable harm to its estate. Without the relief requested in the Interim Order, Debtor will suffer immediate and irreparable harm, because Debtor will no longer be able to operate in the ordinary course of business and may be forced to cease operations (which would result in a swift and significant decline in the value of the Prepetition Collateral). Accordingly, pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the Court is authorized to grant the relief requested herein.

**A.   Debtor's Proposed Use of Available Cash Collateral Should be Approved.**

28.    Debtor has a critical need for the immediate use of the Available Cash Collateral. If Debtor is not able to use the Available Cash Collateral, it will be unable to fund its ongoing operations pending consummation of a sale or an affiliation agreement. The availability to Debtor of sufficient working capital and liquidity through the use of Cash Collateral is vital to the confidence of Debtors' residents, vendors and suppliers of goods and services, and to the preservation and maintenance of the going concern value of Debtor's estates.

29.    Under section 363(c)(2) of the Bankruptcy Code, Debtor may not use Cash Collateral without the consent of the Master Trustee or authority granted by the Court. Bankruptcy Code section 363(e) provides that on request of an entity that has an interest in property to be used by a debtor, the Court shall prohibit or condition such use as necessary to provide adequate protection of such interest. Debtor submits that the adequate protection to be provided to the Master Trustee, as detailed below, is sufficient to approve the use of the Available Cash Collateral under section 363 of the Bankruptcy Code.

**B.**     **Debtor's Proposed Adequate Protection Should be Approved.**

30.     Under section 361 of the Bankruptcy Code, Debtor may provide adequate protection by providing an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of an entity's interest in such property. 11 U.S.C. § 361(2).

31.     The determination of adequate protection is a fact-specific inquiry to be decided on a case-by-case basis. *See In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996). Adequate protection can be provided in a number of ways with the focus being to protect a secured creditor from diminution in the value of its interest in the collateral during the period of use. *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

32.     Debtor requests that the Court approve certain protections of the Master Trustee's purported interests in the Prepetition Collateral from any diminution in value resulting from (i) the use of the Cash Collateral, (ii) the subordination of the Master Trustee's purported liens on the Prepetition Collateral to the Carve-Out, (iii) the subordination of the Master Trustee's purported liens on the Prepetition Collateral to any liens granted to secure the Contemplated DIP Facility or otherwise granted under section 364(d) of the Bankruptcy Code (such liens, the "DIP Liens"), or (iv) the imposition or enforcement of the automatic stay.  As adequate protection of the Master Trustee's purported interests in the Prepetition Collateral, including Cash Collateral, Debtor proposes to grant the Master Trustee:

(a)     valid, binding, enforceable and perfected additional and replacement mortgages, pledges, and liens on, and security interests in, all Postpetition Collateral senior to the Prepetition Liens, but subject and subordinate to (a) the Carve-Out, (b) the DIP Liens, and  (c)  Permitted Encumbrances and only to the extent of diminution in value, as more fully described in the Interim Order and Final Order (such liens, the "Adequate Protection Liens"); and

(b)     a superpriority claim allowed under section 507(b) of the Bankruptcy Code (the "507(b) Claim") against all assets of Debtor's estate, only to the extent of

diminution in value, as more fully described in the Interim Order and Final Order, but subject and subordinate only to the Carve-Out and the DIP Liens.

(together, the "Adequate Protection").

33. Debtor submits that the Adequate Protection proposed to be granted to the Master Trustee is appropriate and more than sufficient to protect it from any diminution in the value of its purported interest in the Prepetition Collateral from the actions described in paragraph 36 above. Additionally, Debtor shall provide to the Master Trustee, the Bond Trustee, the Bank, and their respective counsel a copy of the variance report and updated budget contemporaneously with Debtor's delivery of such items to the Proposed DIP Lender (or other provider of postpetition financing) and shall also provide the Master Trustee access to Debtor's books and records, advisors, and professionals as may be reasonably requested by the Master Trustee from time to time.

C. **The Court Should Grant the Requested Interim Relief.**

34. Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral pursuant to Section 363 of the Bankruptcy may not be commenced earlier than fifteen days after the service of such motion. Upon request, however, pursuant to Bankruptcy Rules 4001(b) and (c) and Local Rule 4001-2(B), the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

35. Debtor requires the immediate use of Available Cash Collateral to pay employees, suppliers and other operating expenses, provide for the safety or care of its residents, repay entrance fee refund obligations to residents and obtain goods and services needed to carry on its operations. Thus, the use of the Available Cash Collateral is necessary

to avoid immediate and irreparable damage to Debtor's estate, and Debtor submits that interim relief pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2(B) is appropriate.

36.     Therefore, Debtor requests that the Court schedule and conduct an interim hearing to consider entry of the proposed Interim Order that would (a) authorize Debtor to use the Available Cash Collateral as provided in the proposed Interim Order, and (b) grant the adequate protection as provided in the proposed Interim Order. This relief will enable Debtor to operate its business in the ordinary course and avoid immediate and irreparable harm and prejudice to its bankruptcy estate and all parties-in-interest, pending the Final Hearing.

**D.     The Court Should Approve the Notice Procedures and Schedule a Final Hearing.**

37.     Pursuant to Bankruptcy Rule 4001(b)(1)(C) and (c)(1)(C), as evidenced by the Affidavit of Service relating to this Motion, Debtor has caused notice of this Motion to be given by CM/ECF or overnight delivery to (a) the Office of the United States Trustee; (b) Debtor's 20 largest unsecured creditors; (c) Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., counsel to Wells Fargo Bank, National Association, in its capacity as Master Trustee under the Master Indenture; (d) Duane Morris, counsel to secured lender Sovereign Bank; (e) MB Financial Bank; (f) Debtor's secured creditors; and (g) those persons who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002 (collectively, the "<u>Initial Notice Parties</u>"). In light of the relief requested herein, Debtor submits that no further notice of the hearing on the interim financing is necessary, and Debtor requests that any further notice be dispensed with and waived.

38.     Further, Debtor respectfully requests that the Court schedule the Final Hearing and authorize Debtor to serve a copy of the signed Interim Order which fixes the time and date for the filing of objections by first-class mail upon (i) the Initial Notice Parties, (ii) counsel to

any statutory committee(s) appointed in this chapter 11 case, and (iii) any party who filed a request for notices in this chapter 11 case pursuant to Bankruptcy Rule 2002 prior to the date set forth in the Interim Order for service of notice of the Final Hearing. Debtor requests that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001 and Local Rule 4001-2.

## NO PREVIOUS REQUEST FOR RELIEF

39.     No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, Debtor respectfully requests that the Court enter an order: (1) granting the relief requested in this Motion; (2) authorizing Debtor to use cash collateral; (3) providing adequate protection; (4) scheduling a final hearing; and (5) granting such other relief as the Court deems appropriate under the circumstances.

Respectfully Submitted,

Dated: December 5, 2011         CLARE OAKS

by:  /s/ George R. Mesires
Donald L. Schwartz (# 2522861)
George R. Mesires (# 6276952)
Patrick F. Ross (# 6296461)
David R. Doyle (#6303215)
UNGARETTI & HARRIS LLP
70 W. Madison Street, Suite 3500
Chicago, IL 60602
(312) 977-4400 – phone
(312) 977-4405 – fax
Email:  dlschwartz@uhlaw.com
grmesires@uhlaw.com
pfross@uhlaw.com
drdoyle@uhlaw.com

*Proposed Counsel for Debtor and Debtor-in-Possession*

2053649-9                                   15