IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

-------------------------------------------------------------X
                                    :
In re:                              :    Case No. 11 B 48903
                                    :
CLARE OAKS,                         :    Chapter 11
                                    :
                    Debtor.         :    Hon. Pamela S. Hollis
                                    :
                                    :
-------------------------------------------------------------X

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING PLAN SPONSOR'S PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

This matter coming before the Court on the Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Docket No. 313], which plan and related plan documents were subsequently amended various times, including by that certain Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated September 13, 2012 (the "Plan"), filed by Wells Fargo Bank, National Association, as Master Trustee and Sovereign Bank, N.A. (the "Plan Sponsors"); and the Plan Sponsors having:[1]

    i.    filed, on August 23, 2012, the Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Docket No. 321];

    ii.   filed, on August 23, 2012, the *Disclosure Statement for the Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 321] (the "Disclosure Statement");

    iii.  filed, on August 23, 2012, the Plan Sponsors' Motion for (I) Shortened and Limited Notice of Hearing Regarding Approval of the Adequacy of the

---

[1]    Unless otherwise noted, capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, [Dkt. No. 358] (as may be amended from time to time, the "Plan"). The rules of interpretation set forth in Article I.B of the Plan shall apply to this order (the "Confirmation Order").

Disclosure Statement (II) Approval of the Disclosure Statement, and (III) Authorization to Solicit Acceptances of Creditors' Plan [Docket No. 320];

iv.  filed, on September 11, 2012, the *Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket. No. 351], and the *Amended Disclosure Statement for the Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket. No. 351];

v.  filed, on September 13, 2012, the *Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket. No. 358], and the *Second Amended Disclosure Statement for the Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket. No. 357];

vi.  obtained approval, on September 13, 2012, of the Disclosure Statement by that certain *Order Granting Motion for Approval of Second Amended Disclosure Statement And Authorization to Solicit Acceptances of the Creditors' Plan* [Docket. No. 364] (the "Solicitation Procedures Order"), approving, among other things, solicitation procedures (the "Solicitation Procedures") and certain solicitation materials including notices, Ballots and Master Ballots (collectively, the "Solicitation Package") for soliciting votes with respect to the Plan. The Solicitation Procedures Order also fixed (a) September 6, 2012 as the Record Date; (b) October 17, 2012 as the Voting Deadline; (c) October 19, 2012 at 5:00 p.m. prevailing Central Time as the Plan Objection deadline; and (d) October 25, 2012 at 1:30 p.m. prevailing Central Time as the date and time for the commencement of the Confirmation Hearing, which was continued by the Court to November 6, 2012 at 11:00 am prevailing Central Time;

vii.  obtained approval for the Voting Agent, on or before September 17, 2012, to distribute the Solicitation Packages consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order, as evidenced by the *Affidavit of Service of Solicitation Materials*, filed on September 26, 2012 [Docket No. 383] (the "GCG Affidavit");

viii.  obtained approval for the Voting Agent to cause the publication, on or before September 24, 2012, of the Confirmation Hearing notice (the "Publication Notice") in *The Chicago Tribune* as evidenced by the *Certificate of Publication* [Docket No. 392], filed on October 16, 2012 (the "Publication Affidavit");

ix.  filed, on October 10, 2012, the *Plan Supplement to the Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 389] (as amended and supplemented from time to time, the "First Plan Supplement"). The First Plan Supplement containing (i) a list of Assumed Contracts to be assumed or rejected under the Plan; (ii) a list of Causes of Action; (iii) proposed amended Bylaws of the Reorganized Debtor, (iv) proposed amended articles of incorporation of the Reorganized Debtor; (v)

2

identification of new directors of the Reorganized Debtor; and (vi) substantially complete drafts of the material Series 2012 Supplemental Bond Documents;

x.     caused to be filed, on October 19, 2012, the *Declaration of Patrick M. Leathem of the Garden City Group, Inc. Certifying the Methodology for the Tabulation of Votes on and Results of Voting with Respect to the Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code,* detailing the Plan voting results with respect to all Classes of Claims [Docket No. 398] (the "Voting Report");

xi.     filed, on October 22, 2012, the *Declaration of Paul Rundell in Support of Confirmation of the Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 405] (the "First Rundell Declaration");

xii.     filed, on October 22, 2012, the Plan Sponsors' *Omnibus Response to Objections to (I) Sysco Chicago, Inc., (II) Sisters of St. Joseph of the Third Order of St. Francis, Inc., and (III) Senior Care Development, LLC, to the Confirmation of the Plan Sponsors' Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 404] (the "Response");

xiii.     filed, on November 6, 2012, the *Plan Sponsors' Memorandum of Law in Support of Confirmation of the Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 428] (the "Plan Confirmation Brief");

xiv.     filed on November 6, 2012 with the *Second Declaration of Paul Rundell in Support of Confirmation of the Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 417] (the "Second Rundell Declaration"; together with the First Rundell Declaration, the "Rundell Declarations");

xv.     filed, on November 6, 2012, the *Second Plan Supplement to the Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 427] (as amended and supplemented from time to time, the "Second Plan Supplement"; and together with the First Plan Supplement, the "Plan Supplements"), containing (i) substantially completed draft of the Management Agreement, and (ii) notice of nonmaterial changes to the Plan;

xvi.     filed, on November 14, 2012, a *Third Plan Supplement to the Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 435] (the "Third Plan Supplement"; and together with the First Plan Supplement and the Second Plan Supplement, the "Plan Supplements"), containing: (i) the following final agreements with respect to the amendment to the Ground Lease as described in the Real Estate Purchase Term Sheet attached as Exhibit B to the Plan: (a) Amended and Restated Ground Lease; (b) Option to Purchase; and (c) First Amendment to Clare Oaks Declaration of

Covenants, Conditions, Restriction and Easements (together, the "Fee Simple Option Agreements"); and (ii) the final agreement concerning Charitable Care, Ethical and Religious Directives, and Modifications to Signage at the Clare Oaks Campus as described in the Restructuring Term Sheet attached as Exhibit A to the Plan (the "Relationship Agreement"); and

xvii.    filed, on November 14, 2012, the proposed *Findings of Fact, Conclusions of Law, and Order Confirming Third Amended Plan Reorganization Under Chapter 11 of the Bankruptcy Code* [Docket No. 434].

This Court having conducted the Confirmation Hearing on November 15, 2012; and the Court having reviewed and considered the Plan Sponsors' Memorandum of Law in Support of Confirmation of the Plan, the Voting Report, and the Rundell Declarations; the Court having overruled any and all objections to the Plan and confirmation thereof and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated; the evidence and testimony presented at the Confirmation Hearing, exhibits, records, and any remaining objections and arguments of counsel presented at the Confirmation Hearing; and taken judicial notice of the papers and pleadings filed in the Chapter 11 Case.

NOW, THEREFORE, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation have been adequate and appropriate as to all Entities affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefore, the Court hereby makes and issues the following findings of fact, conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]

THE COURT HEREBY FINDS AND DETERMINES THAT:

### I.   Jurisdiction and Venue

A.   Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

### II.   Commencement of the Chapter 11 Case

B.   On December 5, 2011 (the "Petition Date"), Clare Oaks (the "Debtor") commenced this Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor has operated its business and managed its property as a Debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case. The Debtor was and is qualified to be Debtor under section 109 of the Bankruptcy Code.

### III.   Modifications to the Plan

C.   Any modifications to the Plan described or set forth herein constitute technical changes or changes with respect to particular Claims by agreement with Holders of such Claims, and do not materially or adversely affect or change the treatment of any Claims or Membership Interests. Pursuant to Bankruptcy Rule 3019, these modifications do not require additional

---

[2]   The findings of fact and the conclusions of law set forth herein shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052 (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to confirmation of the Plan are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that the Holders of Claims or Membership Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

**IV.    Judicial Notice**

D.    The Court takes judicial notice of (and deems admitted into evidence for Confirmation of the Plan) the docket of the Chapter 11 Case, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the applicable Court during the pendency of the Chapter 11 Case. Any resolutions of objections to Confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference. All unresolved objections, statements, and reservations of rights are overruled on the merits.

**V.    Solicitation Procedures Order,**

E.    On September 13, 2012, the Court entered the Solicitation Procedures Order, which, among other things: (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code; (b) fixed September 6, 2012 as the Record Date; (c) fixed October 17, 2012 at 4:00 pm prevailing Central Time as the Voting Deadline; (d) fixed October 19, 2012 at 5:00 p.m. prevailing Central Time as the Plan Objection deadline; (e) fixed October 25, 2012 at 1:30 p.m. prevailing Central Time as the date and time for the commencement of the Confirmation Hearing; and (f) approved the Solicitation Procedures and the Solicitation Package.

## VI.    Transmittal and Mailing of Materials; Notice

F.    As evidenced by the GCG Affidavit, due, adequate, and sufficient notice of the Disclosure Statement, the Plan, and the Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, was provided to: (a) all known Holders of Claims and Membership Interests and (b) entities that properly requested notice (and did not withdraw such request) in accordance with Bankruptcy Rule 2002. Such notice was in compliance with the Solicitation Procedures Order and Bankruptcy Rules 2002(b), 3017, and 3020(b), and no other or further notice is or shall be necessary or required. Additionally, notice to all counterparties to executory contracts was provided in compliance with the Solicitation Procedures Order.

G.    The Publication Notice was also published in The Chicago Tribune, in compliance with the Solicitation Procedures and Bankruptcy Rule 2002(1), as evidenced by the Publication Affidavit.

## VII.    Adequacy of Solicitation

H.    Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Solicitation Procedures Order, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws, and regulations. Specifically, the Solicitation Package approved by the Court in the Solicitation Procedures Order (including the Disclosure Statement, the Plan, the appropriate Ballots or the Master Ballot, and the related notices) were transmitted to and served on all Holders of Claims in Classes that were entitled to vote on the Plan and relevant portions of the Solicitation Package were transmitted to and served on other parties in interest in the Chapter 11 Case. Transmittal and service was adequate and sufficient, and no further notice is necessary or required or shall be required. Additionally,

7

Holders of Claims and Membership Interests and other potential parties in interest that were not entitled to vote on the Plan were provided with non-voting materials approved by the Court (including the Confirmation Hearing notice) in accordance with the Solicitation Procedures Order. All procedures used to distribute the Solicitation Package to Holders of Claims were fair and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

## VIII.  Plan Supplements

I.      On October 10, 2012 the Plan Sponsors filed the First Plan Supplement. Copies of such documents were served on all necessary parties and posted at the Voting Agent's authorized website, pursuant to and under the Solicitation Procedures Order. The First Plan Supplement complies with the terms of the Plan, and the filing and notice of such document was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order, and no other or further notice is or shall be required.

J.      On November 5. 2012, the Plan Sponsors filed the Second Plan Supplement. Copies of such documents were served on all necessary parties and posted on the Voting Agent's authorized website. The Second Plan Supplement complies with the terms of the Plan, and the filing and notice of such document was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order, and no other or further notice is or shall be required .

K.      On November 15, 2012, the Plan Sponsors filed the Third Plan Supplement. Copies of such documents were served on all necessary parties and posted on the Voting Agent's authorized website. The Third Plan Supplement complies with the terms of the Plan, and the filing and notice of such document was good and proper in accordance with the Bankruptcy

Code, the Bankruptcy Rules, and the Solicitation Procedures Order, and no other or further notice is or shall be required.

**IX.    Voting Report**

L.    On October 19, 2012, the Voting Agent filed the Voting Report with the Court. All procedures used to tabulate the Ballots and Master Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

M.    As set forth in the Plan and Disclosure Statement, only Holders of Claims and Membership Interests in Class 2, Class 4 (other than Holders of contingent claims under Residency Agreements), and Class 5 are eligible to vote on the Plan pursuant to the Solicitation Procedures Order.  Holders of Claims in Class 1 and Class 3 and Holders of contingent claims under Residency Agreements (Class 4) are Unimpaired and, thus, conclusively deemed to accept the Plan (the "Unimpaired Accepting Classes").   As evidenced by the Voting Report, Holders of Claims and Membership Interests in each of the following Classes eligible to vote on the Plan voted to accept the Plan (collectively, the "Impaired Accepting Classes"):

| Class | Claim/Membership Interest | Status | Voting Right | % of Voting Creditors Accepting | % of Claim Amount Accepting |
|-------|---------------------------|--------|--------------|--------------------------------|-----------------------------|
| 2 | Senior Secured Bond Claims | Impaired | Entitled to Vote | 98.23% | 99.85% |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote | 100% | 100% |
| 5 | Membership Interests | Impaired | Entitled to Vote | N/A | 100% |

N.    Based on the foregoing, at least one Impaired Class of Claims (excluding the acceptance by any insiders of any of the Debtor) has voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.

## X.      Bankruptcy Rule 3016

O.      The Plan is dated and identifies the Entity submitting and filing it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement satisfies Bankruptcy Rule 3016(b).   The releases and injunctions under the Plan are described in specific and conspicuous language that satisfies Bankruptcy Rule 3016(c).

## XI.     Burden of Proof

P.      The Plan Sponsors, as the proponent of the Plan, (a) have met the burden of proving the requisite elements of section 1129(a) and 1129(b) of the Bankruptcy Code by the applicable evidentiary standard for Confirmation, and (b) have proven the elements of section 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence.

## XII.    Compliance with the Requirements of Section 1129 of the Bankruptcy Code

Q.      The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code as follows:

### (a)      Section 1129(a)(1) - Compliance of the Plan with Applicable Provisions of the Bankruptcy Code

R.      The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.

### (i)      Section 1122 and 1123(a)(1) - Classification

S.      The classification of Claims and Membership Interests under the Plan is proper under the Bankruptcy Code.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Plan provides for the separate classification of Claims and Membership Interests into five (5) Classes, based on differences in the legal nature or priority of such Claims

10

and Membership Interests.[3]   Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Membership Interests created under the Plan. Further, the classifications were not done for any improper purpose and the creation of such Classes does not discriminate unfairly between or among Holders of Claims or Membership Interests.

T.      The treatment of Claims under Residency Agreements as Unimpaired shall be deemed a proper and appropriate classification.

U.      In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Membership Interests contains only Claims or Membership Interests that are substantially similar to the other Claims or Membership Interests within that Class.   Accordingly, the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code are satisfied.

### (ii)      Section 1123(a)(2) - Specification of Unimpaired Classes

V.      Article III of the Plan specifies that Claims in Class 1, 3 and Claims under Residency Agreements within Class 4 are Unimpaired under the Plan.   Additionally, Article II of the Plan specifies that Administrative Claims, Professional Fee Claims and Priority Claims are Unimpaired, however, these Claims are not classified under the Plan (collectively, the "Unclassified Claims") pursuant to section 1123(a)(1) of the Bankruptcy Code.   Accordingly, the requirements of section 1123(a)(2) of the Bankruptcy Code are satisfied.

### (iii)     Section 1123(a)(3) - Specification of Treatment of Impaired Classes and Membership Interests

W.      Article III of the Plan specifies the treatment of each Impaired Class and Membership Interests under the Plan, including Class 2, Class 4, and Class 5.   Accordingly, the requirements of section 1123(a)(3) of the Bankruptcy Code are satisfied.

---

[3]   Article II of the Plan discusses the treatment of Administrative Claims, Professional Fee Claims, and Priority Claims. Section 1123(a)(1) of the Bankruptcy Code excepts such claims from the classification requirement.

11

**(iv)   Section 1123(a)(4) - No Discrimination**

X.      In accordance with section 1123(a)(4) of the Bankruptcy Code, Article III of the

Plan provides for the same treatment of each Claim or Membership Interest in a particular Class,

as the case may be, unless the Holder of a particular Claim or Membership Interest has agreed to

a less favorable treatment with respect to such Claim or Membership Interest. Accordingly, the

requirements of section 1123(a)(4) of the Bankruptcy Code are satisfied.

**(v)   Section 1123(a)(5) - Adequate Means for Plan Implementation**

Y.      Pursuant to section 1123(a)(5) of the Bankruptcy Code, Article IV of the Plan and

various other provisions of the Plan specifically provide, in sufficient detail, adequate, and

proper means for the implementation of the Plan, including, among other things: (a) the funding

of the Plan; (b) the restructuring of the existing Senior Secured Bond Claims under the Series

2012 Supplemental Bond Documents; (c) the issuance of Series 2012A Bonds as new exit

financing debt under the Series 2012 Supplemental Bond Documents; (d) the amendment to the

Ground Lease and the entry into the other Fee Simple Option Agreements as described in the

Real Estate Purchase Term Sheet attached as **Exhibit B** to the Plan; (e) the entry into the

Relationship Agreement as described in the Restructuring Term Sheet attached as **Exhibit A** to

the Plan; and (f) the general authority for all corporate action necessary to effectuate the Plan.

Accordingly, the requirements of section 1123(a)(5) of the Bankruptcy Code are satisfied.

**(vi)   Section 1123(a)(6) Voting Power of Equity Securities,**

Z.      Section 1123(a)(6) of the Bankruptcy Code is inapplicable to this Chapter 11 Case

because, among other things, the Debtor is a not for profit enterprise with no equity securities.

**(vii)   Section 1123(a)(7) - The Appointment of Directors and Officers**

AA.     The Plan complies with section 1123(a)(7) of the Bankruptcy Code, regarding the

selection of new directors and officers of the Reorganized Debtor under the Plan and any

successor to such directors and officers, because the selection of directors and officers has been accomplished in a fair and reasonable manner, consistent with public policy and the amendments to the corporate governance documents contemplated under the Restructuring Term Sheet and as set forth in the First Plan Supplement. Accordingly, the requirements of section 1123(a)(7) of the Bankruptcy Code have been satisfied.

**(b)**    **Section 1123(b) - Discretionary Contents of the Plan**

BB.    The Plan contains various provisions that may be construed as discretionary but are not required for confirmation under the Bankruptcy Code. As set forth below, such discretionary provisions comply with section 1123(b) of the Bankruptcy Code and are not inconsistent with the applicable provisions of the Bankruptcy Code. As a result, the requirements of section 1123(b) of the Bankruptcy Code are satisfied.

    **(i)**    **Section 1123(b)(1) and 1123(b)(2) - Unimpaired Claims and Assumed Contracts**

CC.    Pursuant to section 1123(b)(1) and (b)(2) of the Bankruptcy Code, respectively, Article III of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Membership Interests. Further, Article VII of the Plan provides for the assumption or rejection of the potential Assumed Contracts of the Debtor not previously assumed, assumed and assigned, or rejected pursuant to section 365 of the Bankruptcy Code and applicable orders of the Court.

    **(ii)**    **Section 1123(b)(3) - Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action**

DD.    <u>Compromise and Settlement</u>. Pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code and in consideration for the distributions and other benefits provided under the Plan, the compromise and settlement provisions of the Plan constitute a good faith

compromise of all Claims or Membership Interests relating to the contractual, legal, and subordination rights that a Holder of a Claim or Membership Interest may have with respect to any Allowed Claim or any distribution to be made on account of such an Allowed Claim. The compromise and settlement of such Claims or Membership Interests embodied in the Plan is in the best interests of the Debtor, its estate, and all Holders of Claims and Membership Interests, and is fair, equitable, and reasonable.

EE.    All settlements and compromises of Claims, Membership Interests, or Causes of Action of non-Debtor entities that are embodied in the Plan are effective and binding on each Holder of a Claim and Membership Interest who may have standing to assert such Claims or Membership Interests, and no such Holder of a Claim or Membership Interest shall possess standing to assert such Claims or Membership Interests after the Effective Date.

FF.    Releases under the Plan. The release provisions described in Article IX of the Plan (the "Releases") are essential to the Plan and represent a valid exercise of business judgment. The Releases are: (a) in exchange for good and valuable consideration provided by the Releasees; (b) a good faith settlement and compromise of the Causes of Action released by the Releasees; (c) in the best interests of the Debtor and all Holders of Claims and Membership Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar against the Debtor or any Holder of a Claim or Membership Interest that would have been legally entitled to assert any Cause of Action on behalf of the Debtor or the estate from asserting any Cause of Action released pursuant to the Releases against any of the Releasees.

The third party Releases provide for the release of the Releasees by Holders of Claims and Membership Interests that voted in favor of the Plan (which by definition, do not include

14

Holders of Claims and Membership Interests who are not entitled to vote in favor of or against the Plan). The Ballots for Holders of Class 2, Class 4 and Class 5 explicitly state that a vote to accept the Plan constitutes an acceptance and assent to the Releases in favor of the Releasees as set forth in Article IX of the Plan. Thus, Holders of Claims and Membership Interests voting to accept the Plan were given due and adequate notice that they would be granting such Releases by acting in such a manner.

GG.    <u>Exculpation</u>. The exculpation provisions set forth in Article IX of the Plan are essential to the Plan. The record in this Chapter 11 Case fully supports the exculpation provisions set forth in Article IX of the Plan and the exculpation provisions are appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

HH.    <u>Injunction</u>. The injunction provisions set forth in Article IX of the Plan are essential to the Plan and are necessary to preserve and enforce the Releases and the exculpation provisions in Article IX of the Plan, and are narrowly tailored to achieve that purpose.

II.    The Releases and the exculpation and injunction provisions set forth in the Plan: (a) are within the jurisdiction of the Court under 28 U.S.C. § 1334(a), 1334(b), and 1334(d); (b) are essential to implementing the Plan pursuant to section 1123(a)(6) of the Bankruptcy Code; (c) are integral elements of the transactions incorporated into the Plan; (d) confer material benefits on, and are in the best interests of, the Debtor, its Estate, and Holders of Claims and Membership Interests; (e) are important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Case with respect to the Debtor; and (g) are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code and other applicable law, including other applicable provisions of the Bankruptcy Code. The record of the

Confirmation Hearing and the Chapter 11 Case is sufficient to support the Releases and the exculpation and injunction provisions contained in Article IX of the Plan.

JJ.      Preservation of Claims and Causes of Action.  Article IX of the Plan appropriately provides for the maintenance of Causes of Action and the preservation by the Debtor and Reorganized Debtor, as applicable, of all Claims and Causes of Action against a Holder of a Claim or Membership Interest or other Entity that have not been expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including herein) for later adjudication by the Reorganized Debtor, in accordance with section 1123(b)(3)(B) of the Bankruptcy Code.    The provisions regarding retained Causes of Action in the Plan are appropriate and are in the best interests of the Reorganized Debtor, its Estate, and Holders of Claims and Membership Interests.

**(c)      Section 1129(a)(2) - Compliance of the Debtor with the Applicable Provisions of the Bankruptcy Code**

KK.      The Plan Sponsors, as the proponent of the Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128 of the Bankruptcy Code and Bankruptcy Rules 2002, 3017, 3018, and 3019.

LL.      Neither the Plan Sponsors nor their respective present and former members, officers, directors, employees, representatives, advisors, attorneys, professionals, affiliates, and agents solicited the acceptance or rejection of the Plan by any Holders of Claims or Membership Interests prior to the approval and transmission of the Disclosure Statement.  Votes to accept or reject the Plan were solicited by the Plan Sponsors and their respective agents after the Court approved the adequacy of the Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code.

MM.    The Plan Sponsors and their respective present and former members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, and agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Solicitation Procedures Order, the Solicitation Procedures, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provision set forth in Article IX of the Plan.

NN.    The Plan Sponsors and their respective present and former members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates, and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or distributions made pursuant to the Plan.

**(d)    Section 1129(a)(3) - Proposal of the Plan in Good Faith**

OO.    The Plan Sponsors have proposed the Plan in good faith and not by any means forbidden by law.    In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Case, the Plan itself, and the process leading to its formulation.    The Plan Sponsors' good faith is evident from the facts and records of the Chapter 11 Case, the Disclosure Statement and the hearing thereon, the Plan Confirmation Brief, the Rundell Declarations, the record of the Confirmation

17

Hearing, and all other proceedings held in the Chapter 11 Case. The Plan is the product of comprehensive, arm's-length negotiations between the Plan Sponsors, the Debtor, the Landlord, and the Committee. The Plan itself and the process leading to its formulation provide independent evidence of the Plan Sponsors' good faith, and that the Plan serves the public interest and assures fair treatment of Holders of Claims and Membership Interests. The Plan was proposed with the legitimate purpose of maximizing the value of the Debtor's assets and recoveries to Holders of Claims. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

   (e)   **Section 1129(a)(4) - Court Approval of Certain Payments as Reasonable**

   PP.   The procedures set forth in the Plan for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtor in connection with the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, including the payment of Administrative Claims, Professional Fee Claims, and Priority Claims, have been approved by, or are subject to approval of the Court as reasonable. Accordingly, the requirements of section 1129(a)(4) of the Bankruptcy Code are satisfied.

   (f)   **Section 1129(a)(5) - Disclosure of Identity of Proposed  Individuals to Serve as Directors and Officers of the Reorganized Debtor**

   QQ.   The First Plan Supplement under the Plan provides the necessary disclosure of the identity and affiliations of any individual proposed to serve, upon the occurrence of the Effective Date of the Plan, as a director or officer of the Debtor, including the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and with public policy. Further, the First Plan Supplement provides the necessary disclosure of any insider that will be employed or retained by the Reorganized Debtor, and the nature of any compensation for such insider.

18

(g)    **Section 1129(a)(6) - No Governmental Regulatory Approval Required**

RR.    The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.

(h)    **Section 1129(a)(7) - Best Interests of Holders of Claims and Membership Interests**

SS.    The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The Projections included in the Disclosure Statement and the other evidence proffered or adduced at or prior to the Confirmation Hearing or in the Rundell Declarations:  (a) are reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) are based upon reasonable and sound assumptions; (c) have not been controverted by other evidence or have not been challenged; and (d) establish that each Holder of a Claim or Membership Interest in an Impaired Class that has not accepted the Plan will receive or retain under the Plan, on account of such Claim or Membership Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date. Further, the record of the Chapter 11 Case contains an offer to purchase the Debtor's assets for a fraction of the recovery contemplated under the Plan and thus, such offer provides a reasonable estimate of a going concern sale value of the Debtor's assets. Given the sale value attributed to the Debtor's assets, it is likely that the liquidation values of the Debtor's assets upon conversion to a case under chapter 7 of the Bankruptcy Code would be even less. As a result, the requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied.

(i)     **Section 1129(a)(8) - Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class**

TT.     Class 1 and Class 3 are Unimpaired Classes and are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. As set forth in the Voting Report, the Impaired Accepting Classes (i.e., Class 2, Class 4, and Class 5) have voted to accept the Plan. As a result, the requirements of section 1129(b) of the Bankruptcy Code are satisfied.

(j)     **Section 1129(a)(9) - Treatment of Priority Claims**

UU.     The Plan provides for treatment of Administrative Expense Claims, Professional Fee Claims, and Priority Claims in the manner required by section 1129(a)(9) of the Bankruptcy Code. Accordingly, the requirements of section 1129(a)(9) of the Bankruptcy Code are satisfied.

(k)     **Section 1129(a)(10) - Acceptance by at Least One Impaired Class**

VV.     As set forth in the Voting Report, the Impaired Accepting Classes have voted to accept the Plan. As such, there is at least one class of Claims that is Impaired under the Plan that has accepted the Plan (without including any acceptance of the Plan by any insider), thus satisfying section 1129(a)(10) of the Bankruptcy Code in all respects.

(l)     **Section 1129(a)(11) - Feasibility of the Plan**

WW.     The Plan meets the feasibility requirement set forth in section 1129(a)(11) of the Bankruptcy Code. The evidence proffered or adduced at or prior to the Confirmation Hearing or in the Rundell Declarations:  (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered; (b) utilizes reasonable and appropriate methodologies and assumptions; (c) has not been controverted by other evidence; (d) establishes that the Plan is feasible; and (e) establishes that the Debtor will have sufficient funds available to meet its obligations under the Plan. Accordingly, the requirements of section 1129(a)(11) of the Bankruptcy Code are satisfied.

(m)    **Section 1129(a)(12) - Payment of Bankruptcy Fees**

XX.    In accordance with section 1129(a)(12) of the Bankruptcy Code and Article II of the Plan, the Reorganized Debtor will make payment of all fees payable under 28 U.S.C. § 1930 until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first. The Reorganized Debtor has adequate means to pay all such fees.

(n)    **Section 1129(a)(13) - Retiree Benefits**

YY.    The Debtor does not have any retiree benefit programs. The Plan therefore satisfies the requirements of section 1129(a)(13) of the Bankruptcy Code.

(o)    **Section 1129(a)(14) - No Domestic Support Obligations**

ZZ.    The Debtor is not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.

(p)    **Section 1129(a)(15) – Debtor is not an Individual**

AAA.    The Debtor is not an individual, and accordingly section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.

(q)    **Section 1129(a)(16) – No Applicable Nonbankruptcy Law Regarding Transfer**

BBB.    The Debtor is a moneyed, business, or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable to the Chapter 11 Case.

(r)    **Section 1129(c) - Only One Plan**

CCC.    Other than the Plan (including previous versions thereof), no other plan has been filed in the Chapter 11 Case, thus satisfying section 1129(c) of the Bankruptcy Code.

     (s)     **Section 1129(d) - Principal Purpose of the Plan Is Not the Avoidance of Taxes or Application of the Securities Law**

DDD.  No governmental unit has requested that the Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act. Further, as evidenced by the terms of the Plan, the principal purpose of the Plan is not to avoid taxes or the application of securities law. Accordingly, the requirements of section 1129(d) of the Bankruptcy Code are satisfied.

## XIII.  Satisfaction of Confirmation Requirements

EEE.  Based upon the foregoing, the Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

## XIV.  Good Faith

FFF.  Based on the record before the Court, the Rundell Declarations and the record of the Chapter 11 Case, the Master Trustee, the Bond Trustee, the Bank, the Steering Committee, the Debtor, the Landlord, and the Committee (and all of their respective officers, directors, members, partners, employees, representatives, advisors, attorneys, professionals, affiliates, and agents) (i) have been acting and will continue to act in good faith within the meaning of section 1125(e) in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule, or regulation governing their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or

22

rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to

the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such

parties are listed in the Plan, the release, exculpation and related Plan provisions set forth in

Article XIII of the Plan, if they proceed to: (a) consummate the Plan and the agreements,

settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized

and directed by this Confirmation Order.

## XV.    Implementation of Other Necessary Documents and Agreements

GGG.  All documents and agreements necessary to implement the Plan, including, the

Series 2012 Supplemental Bond Documents, the Fee Simple Option Agreements, the

Relationship Agreement, those other documents contained in the Plan Supplements, and all other

relevant and necessary documents developed in connection therewith are essential elements of

the Plan and entry into and consummation of the transactions contemplated by each such

documents and agreements are in the best interests of the Debtor, the Estate, and Holders of

Claims and Membership Interests.  The Plan Sponsors and Debtor have exercised reasonable

business judgment in determining which agreements to enter into and have provided sufficient

and adequate notice of such documents and agreements.  The Debtor and the Plan Sponsors, as

applicable, shall be authorized to execute and deliver all agreements, documents, instruments,

and certificates relating to such agreements and perform its obligations thereunder, including,

without limitation, pay all fees thereunder.  The terms and conditions of such documents and

agreements have been negotiated in good faith, at arm's-length, are fair and reasonable and shall,

upon completion of documentation and execution, shall be valid, binding, and enforceable

documents and agreements not in conflict with any federal or state law.

## XVI.  Executory Contracts and Unexpired Leases

HHH.  A reasonable business judgment has been reached with respect to whether to assume, assume and assign, or reject each of the Assumed Contracts as set forth in Article VII of the Plan.  Each assumption, assignment, and rejection of an Assumed Contract as provided in Article VII of the Plan shall be legal, valid, and binding upon the Reorganized Debtor and all other Debtor or non-Debtor parties to such Assumed Contracts, all to the same extent as if such assumption or rejection had been authorized and effectuated pursuant to an appropriate order of the Court that was entered pursuant to section 365 of the Bankruptcy Code prior to the Confirmation Date.

## XVII. Adequate Assurance

III.    The Debtor has provided adequate assurance of future performance for each Assumed Contract that is being assumed by the Debtor pursuant to the Plan.  Further, the Debtor has cured or provided adequate assurance that the Debtor will cure defaults (if any) under or relating to each of the Assumed Contracts being assumed pursuant to the Plan.  As a result, the requirements of section 365 of the Bankruptcy Code are satisfied.

## XVIII. Conditions Precedent to Confirmation

JJJ.    Entry of this Confirmation Order satisfies one of the conditions to Confirmation set forth in Article VIII.A.

## XIX.  Conditions Precedent to Effective Date

KKK.  Each of the conditions precedent to the Effective Date set forth in Article VIII of, or elsewhere in, the Plan, including but not limited to the issuance of the Series 2012 Bonds upon the Issuer's board authorization, is reasonably likely to be satisfied or waived in accordance with the provisions of the Plan.

24

## XX.   Retention of Jurisdiction

LLL.   The Court properly may retain jurisdiction over the matters set forth in Article X of the Plan and other applicable provisions of the Plan.

* * * *

## ORDER

Based on the foregoing, it is hereby ORDERED:

### A.   Order

1.   This Confirmation Order shall and does confirm the Plan.  A copy of the Plan is attached hereto as Exhibit A.

### B.   Objections

2.   To the extent that any objections, reservations of rights, statements, or joinders to Confirmation have not been resolved, withdrawn, waived, or settled prior to entry of this Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits.

### C.   Findings of Fact and Conclusions of Law

3.   The findings of fact and the conclusions of law set forth herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  All findings of fact and conclusions of law announced by the Court at the Confirmation Hearing in relation to Confirmation of the Plan are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

**D.      Solicitation**

4.      The solicitation of votes on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable nonbankruptcy law.

**E.      Ballots**

5.      The forms of Ballots annexed to the Voting Report are in compliance with Bankruptcy Rule 3018(c), as modified, conform to Official Form Number 14, and are approved in all respects.

**F.      Solicitation/Offer of New Securities**

6.      The Plan contemplates that the Issuer will issue the Series 2012 Bonds in exchange for the Series 2006 Bonds.  Such solicitation and exchange by the Issuer are exempt from the registration requirements of the Securities Act of 1933 (as now in effect or hereafter amended) pursuant to section 3(a)(2) thereof and are exempt from qualification under the state securities or "blue sky" laws of every state.  Section 3(a)(2) exempts from registration under the Securities Act "any securities issued . . . by any State of the United States . . . or by any public instrumentality of one or more States or territories . . ." 15 U.S.C. § 77(c).  The Issuer is a public instrumentality of the State of Illinois.

**G.      Confirmation of the Plan**

7.      The Plan and each of its provisions, terms, and conditions and all documents and agreements related thereto, including the Series 2012 Supplemental Bond Documents, the Fee Simple Option Agreements, and the Relationship Agreement (subject to Paragraph 42, all as may be modified pursuant to this Confirmation Order, in accordance with the Plan or as requested by

26

the Issuer, or other parties in interest to the extent of no material modification), are approved and confirmed in each and every respect pursuant to section 1129 of the Bankruptcy Code.

8.  The Plan and each of its provisions, terms, and conditions, and all documents and agreements related thereto, once finalized and executed, including the Series 2012 Supplemental Bond Documents, the Fee Simple Option Agreements, and the Relationship Agreement are incorporated by reference herein and shall when executed by the parties thereto constitute legal, valid, binding, and authorized obligations enforceable in accordance with their terms as of the Effective Date.

9.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent. Notwithstanding the foregoing, if there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.

## H. Plan Classification Controlling

10.  The terms of the Plan shall solely govern the classification of Claims and Membership Interests for purposes of the distributions to be made thereunder. The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Membership Interests in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Membership Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Membership Interest as representing the actual classification of such Claim or Membership Interest under the Plan for distribution purposes; and (d) shall not be binding on the Plan Sponsors, Debtor or the Reorganized Debtor except for voting purposes.

## I.    Implementation of the Plan

11.    As of the Effective Date, or as soon as reasonably practicable thereafter, the Debtor or Reorganized Debtor, as applicable, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including the Series 2012 Supplemental Bond Documents, the Fee Simple Option Agreements, the Relationship Agreement, and those other documents contained in the Plan Supplements, and to take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan, including all such actions delineated in Article IV of the Plan. On the Effective Date, or as soon as reasonably practicable thereafter, all of the material assets of the Debtor will vest in the Reorganized Debtor, free and clear of all Liens except for those set forth in the Plan, including the Liens of the Master Trustee.

12.    <u>Cancellation of Existing Agreements</u>.  Except (i) for purposes of evidencing a right to distributions under the Plan, (ii) with respect to executory contracts or unexpired leases that have been assumed by the Debtor, or (iii) as otherwise provided under the Plan, on the Effective Date, all the agreements and other documents evidencing the Claims or rights of any Holder of a Claim against the Debtor, all lending and security agreements and encumbrances evidencing such Claims shall be cancelled with respect to the Debtor, but shall continue to govern the rights and obligations by and among third parties.

13.    <u>Exchange of Securities</u>.   On the Effective Date, or as soon as reasonably practicable thereafter, subject to the receipt of the consideration provided for in Article III.B.2 of the Plan, the Series 2006 Bonds shall be deemed automatically exchanged for Series 2012B Bonds and Series 2012C Bonds as set forth in Article III.B.2 of the Plan.  Subject to the

exchange as set forth in Article III.B.2 of the Plan and the Series 2012 Supplemental Bond Documents, the Series 2006 Bonds will be cancelled on the Effective Date.

14.    Issuance of Series 2012A Bonds.   On the Effective Date, or as soon as reasonably practicable thereafter, the Issuer will issue the Series 2012A Bonds in the aggregate principal amount of $12,000,000 under the Series 2012 Supplemental Bond Documents.   The members of the Steering Committee or their designee, along with the Bank and its participant, will purchase the Series 2012A Bonds on a Pro Rata basis, pursuant to the terms of the Series 2012 Supplemental Bond Documents and in accordance with the schedule attached hereto as Schedule 1.

15.    Issuance of Series 2012B Bonds.   On the Effective Date, or as soon as reasonably practicable thereafter, the Issuer will issue the Series 2012B Bonds in the approximate original aggregate principal amount of $40,000,000 under the Series 2012 Supplemental Bond Documents.   The Holders of the Senior Secured Bond Claim shall exchange their existing Series 2006 Bonds for Series 2012B Bonds on a pro rata basis, pursuant to the terms of the Series 2012 Supplemental Bond Documents.

16.    Issuance of Series 2012C Bonds.   On the Effective Date, or as soon as reasonably practicable thereafter, the Issuer will issue the Series 2012C Bonds in the approximate original aggregate principal amount of $35,000,000 under the Series 2012 Supplemental Bond Documents.   The Holders of the Senior Secured Bond Claim shall exchange their existing Series 2006 Bonds for Series 2012C -1 Bonds, Series 2012C -2 Bonds, Series 2012C -3 Bonds, each on a pro rata basis, pursuant to the terms of the Series 2012 Supplemental Bond Documents.

17.    Distribution Record Date.   Notwithstanding any provision in the Plan to the contrary, the Distribution Record Date shall be two (2) Business Days after the Confirmation

29

Date, or, in connection only with the holders of the Series 2006 Bonds, as soon thereafter as is practicable so as to enable the Debtor, the Plan Sponsors, the Issuer and their respective agents to comply with the customary practices and procedures of The Depository Trust Company.

18.    <u>Fee Simple Option Agreements</u>.  On the Effective Date, or as soon as reasonably practicable thereafter, the Debtor or Reorganized Debtor, as applicable, shall pay the Ground Lease Option Fee to the Landlord and enter into the Fee Simple Option Agreements. Notwithstanding anything to the contrary contained in the Plan, payment of the Ground Lease Option Fee to the Landlord and entry into the Fee Simple Option Agreements by the Debtor or Reorganized Debtor, as applicable, shall be conditions precedent to the Effective Date that must be satisfied or waived by the Landlord.

19.    <u>Relationship Agreement</u>.   On the Effective Date, or as soon as reasonably practicable thereafter, the Debtor or Reorganized Debtor, as applicable, shall enter into the Relationship Agreement.  Notwithstanding anything to the contrary contained in the Plan, entry into the Relationship Agreement by the Debtor or Reorganized Debtor, as applicable, shall be a condition precedent to the Effective Date that must be satisfied or waived by the Landlord.

20.    <u>Amended Corporate Governance Documents</u>.   On the Effective Date, or as soon as reasonably practicable thereafter, the Debtor or Reorganized Debtor, as applicable, shall record the amended articles of incorporation referenced at Exhibit C-2 to the First Plan Supplement.

21.    <u>Treatment of Entrance Fee Escrowed Funds</u>.  Pursuant to the *Order Granting Debtor's Emergency Motion for Entry of an Order Authorizing Debtor to (I) Honor Claims Relating to Resident Entrance Fees and Option Deposits, and (II) Escrow Entrance Fees and Option Deposits of New Residents* (the "<u>Escrow Order</u>") [Docket No. 66], entry of this Order

shall constitute a Disbursement Request (as defined in the Escrow Order). Accordingly, the Escrow Agent shall disburse all amounts subject to the Escrow Order to the [Reorganized Debtor] to be used as contemplated under the Plan and/or the Series 2012 Supplemental Bond Documents.

**J.      The Releases, Injunction and Exculpation Provisions**

22.      The following releases, injunctions, exculpations, and related provisions substantially set forth in Article IX of the Plan are essential provisions of the Plan and are hereby approved and authorized in their entirety:

(a)      **Releases.**

Notwithstanding anything contained in the Plan or the Plan Supplements to the contrary, on the Effective Date and effective as of the Effective Date, the Debtor on behalf of itself and the Estate, for the good and valuable consideration provided by each of the Releasees, hereby provides a full release to the Releasees (and each such Releasee so released shall be deemed released by the Debtor) and their respective properties from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, derivative claims, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtor, including, without limitation, those that the Debtor or Reorganized Debtor would have been legally entitled to assert or that any Holder of a Claim against or Membership Interest in the Debtor or other Entity would have been legally entitled to assert for or on behalf of the Debtor, the Reorganized Debtor or the Estate and further including those in any way related to the Chapter 11 Case or the Plan; *provided, however,* that the foregoing provisions shall have no effect on the liability of any Releasee that results from any act or omission that is determined in a Final Order to be solely due to such Releasee's own gross negligence or willful misconduct.

Notwithstanding anything contained in the Plan or the Plan Supplements to the contrary, on the Effective Date and effective as of the Effective Date, each of the Plan Sponsors and each other Holder of a Claim against or Membership Interest in the Debtor who votes in favor of the Plan, in consideration of the obligations provided under the Plan and for other good and valuable consideration provided by the Debtor and the Plan Sponsors, hereby provides a full release to

31

the Releasees (and each such person or party so released shall be deemed released by each such Holder) and their respective properties from any and all Causes of Action and any other debts, obligations, rights, suits, damages, actions, derivative claims, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date, in law, at equity, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Releasees, the Chapter 11 Case or the Plan; *provided, however*, that the foregoing provisions shall have no effect on the liability of any Releasee that results from any act or omission that is determined in a Final Order to be solely due to such Releasee's own gross negligence or willful misconduct.

**(b)     Exculpation.**

Notwithstanding anything contained in the Plan or the Plan Supplements to the contrary, the Exculpated Parties shall neither have nor incur any liability to any Entity for any and all claims and Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other act taken after the Petition Date or omitted to be taken in connection with or in contemplation of the transactions occurring in the Chapter 11 Case; provided, however, that the foregoing provisions shall have no effect on the liability of any Exculpated Party that results from any act or omission that is determined in a Final Order to be solely due to such Exculpated Party's own gross negligence or willful misconduct.

**(c)     Release and Injunction.**

Except as otherwise expressly provided for in the Plan, the Plan Supplements or in obligations issued pursuant to the Plan from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtor, the Reorganized Debtor, the Releasees, their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or to be released, exculpated, or to be exculpated, pursuant to the Plan or the Confirmation Order.

Except as otherwise expressly provided for in the Plan, the Plan Supplements or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtor,

the Reorganized Debtor, or their successors and assigns and their assets and properties, any other Claims based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

Except as otherwise expressly provided for in the Plan, the Plan Supplements or in obligations issued pursuant to the Plan, the rights afforded in the Plan and the treatment of all Claims in the Plan shall be in exchange for and in complete satisfaction of Claims of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtor or Reorganized Debtor or any of their assets or properties. On the Effective Date, all such Claims against the Debtor shall be satisfied and released in full.

Except as otherwise expressly provided for in the Plan, the Plan Supplements or in obligations issued pursuant to the Plan, all parties and entities are permanently enjoined, on and after the Effective Date, on account of any claim against the Debtor, the Reorganized Debtor, their successors and assigns, that is satisfied and released hereby, from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor, the Reorganized Debtor their successors and assigns and their assets and properties; (b) enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor, the Reorganized Debtor their successors and assigns and their assets and properties; (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtor, the Reorganized Debtor or the property or estate of Debtor, the Reorganized Debtor; (d) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor or against the property or estate of the Debtor, the Reorganized Debtor, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed proof of claim; or (e) commencing or continuing in any manner any action or other proceeding of any kind in respect of any claim against the Debtor or cause of action that is released or settled hereunder.

**K.     Retention of Causes of Action/Reservation of Rights**

23.     The provisions of Article IX.E of the Plan are hereby approved in their entirety.

Except as otherwise provided in the Plan, on the Effective Date, all of the Debtor's rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal in an adversary proceeding or contested matter filed in the Chapter 11 Case, will be transferred to the Reorganized Debtor in accordance with the Plan.

24.     Unless a Claim or Cause of Action against a creditor or other Person is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order, the Claim or Cause of Action shall be transferred to the Reorganized Debtor for later adjudication and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches will apply to such Claims or Causes of Action upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Plan or this Confirmation Order, except where such Claims or Causes of Action have been expressly waived, relinquished, released, compromised, or settled in the Plan or a Final Order.

**L.     Allowance and Payment of Certain Administrative Claims**

25.     <u>Professional Fee Claims</u>.    All final requests for payment of Claims of a Professional shall be filed no later than sixty (60) days after the Effective Date.    Any objections to final requests for payment of Claims of a Professional shall be filed no later than thirty (30) days after the Professional files its Professional Fee Claim.    After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Court orders, the Allowed amounts of such Professional Fee Claims shall be determined by the Court.    Except as otherwise provided in the Plan, Professionals shall be paid pursuant to the Interim Compensation Order for amounts earned through the Effective Date.

26.     <u>Other Administrative Claims</u>.    Except as otherwise provided in Paragraph 22 of this Confirmation Order and in the Plan, each Holder of an Allowed Administrative Claim shall be paid the full unpaid amount of such Allowed Administrative Claim in Cash (a) on the Effective Date or as soon thereafter as is reasonably practicable or, if not then due, when such Allowed Administrative Claim is due or as soon thereafter as is reasonably practicable, (b) if an

Administrative Claim is Allowed after the Effective Date, on the date such Administrative Claim

is Allowed or as soon thereafter as is reasonably practicable or, if not then due, when such

Allowed Administrative Claim is due, (c) at such time and upon such terms as may be agreed

upon by such Holder and the Reorganized Debtor, or (d) at such time and upon such terms as set

forth in an order of the Bankruptcy Court.

**M.     Release of Liens and Claims**

27.     Except as otherwise provided in the Plan or in any contract, instrument, release, or

other agreement or document entered into or delivered in connection with the Plan, on the

Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all

mortgages, deeds of trust, liens, or other interests against the property of the Estate will be fully

released and compromised.  All Claims that are not expressly provided for and preserved herein

shall be extinguished upon entry of this Confirmation Order.  Upon entry of this Confirmation

Order, the Debtor and all property dealt with herein shall be free and clear of all such Claims,

including, but not limited to, liens, security interests, and any and all other encumbrances.

Notwithstanding anything herein to the contrary, the Master Trustee shall retain its security

interest in and Liens on the assets of the Debtor as set forth under the Series 2012 Supplemental

Bond Documents and under the Plan.

**N.     Exemptions from Taxation**

28.     Pursuant to section 1146(a) of the Bankruptcy Code, any post-Confirmation

transfer from the Debtor to the Reorganized Debtor pursuant to, in contemplation of, or in

connection with the Plan or pursuant to:  (a) the issuance, distribution, transfer, or exchange of

any debt or other interest in the Debtor;  (b) the creation, modification, consolidation, or

recording of any mortgage, deed of trust, or other security interest, including the amended and

restated leasehold mortgage acquired in connection with the Fee Simple Option Agreements; (c) the making, assignment, or recording of any lease or sublease, including the Ground Lease and the Sublease; or (d) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, in each case to the extent permitted by applicable bankruptcy law, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**O.    Assumption and Rejection of Executory Contracts and Unexpired Leases**

29.    <u>Approval of Assumptions</u>.  This Confirmation Order constitutes approval of the assumption or conditional assumption of the Assumed Contracts to be assumed under the Plan as of the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code.  All executory contracts and unexpired leases to which the Debtor is a party are hereby assumed as of the Effective Date, except for an executory contract or unexpired lease that (i) previously has been rejected pursuant to Final Order of this Court, and (ii) is specifically designated as an executory contract or unexpired lease to be rejected under the Plan.

30.    Except with respect to (i) the assumption of Residency Agreements set forth in paragraph 31 below, and (ii) the entry into the Amended and Restated Ground Lease and the

Sublease in connection with the Fee Simple Option Agreements, and except as otherwise provided in the Plan or this Confirmation Order, assumption of any executory contract or unexpired lease pursuant to the Plan, shall result in the full, final, and complete release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults or provisions restricting the change in control of ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time prior to the effective date of assumption. Any Claim listed in the Schedules and any Proofs of Claim filed with respect to any executory contract or unexpired lease that has been assumed on or prior to the Effective Date shall be deemed disallowed and expunged, without further notice to or action, order, or approval of this Court or any other Entity; *provided, however*, that any Proof of Claim filed only in part with respect to any executory contract or unexpired lease that has been assumed on or prior to the Effective Date shall be deemed disallowed and expunged, without further notice to or action, order, or approval of this Court or any other Entity, only in such part.

31.    <u>Residency Agreements</u>.    As set forth under the Plan, all Residency Agreements and the obligations under the Option Agreements will be assumed on the Effective Date, including all obligations arising thereunder, including the payment of entrance fee refunds. For the avoidance of doubt, the term Residency Agreement as used in the Plan and this Confirmation Order shall include the Residential Unit Use Agreement between the Debtor and the Landlord dated July 1, 2006 (the "<u>Use Agreement</u>").

32.    <u>Bar Date for Rejection Damages</u>.    Notwithstanding anything in any order establishing a Bar Date to the contrary, if the rejection of an Assumed Contract, including pursuant to Article VII of the Plan, gives rise to a Claim by the other party or parties to such

contract or lease, such Claim will be forever barred and will not be enforceable against the Debtor or the Reorganized Debtor, its successor, or its properties unless a Proof of Claim is filed and served on the Reorganized Debtor pursuant to the procedures specified in the notice of the Effective Date or an order of the Court, in each case no later than thirty (30) days after the Effective Date.

33.   <u>Reservation of Rights With Respect to Assumed Contracts</u>.   Nothing in this Confirmation Order, the Plan, or any exhibit to the Plan is intended to be or shall be construed as a waiver of the Debtor's authority to assume and assign or reject an Assumed Contract prior to the Effective Date.   With the exception of the Residency Agreements described in Paragraph 30 above, neither the exclusion nor inclusion of any contract or lease by the Plan Sponsors on any Exhibit to the Plan, nor anything contained in the Plan, will constitute an admission by the Debtor or Plan Sponsors that any such contract or lease is or is not in fact an executory contract or that the Debtor or the Reorganized Debtor, or its affiliates has any liability thereunder. Nothing in the Plan will waive, excuse, limit, diminish, augment, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtor or the Reorganized Debtor under any executory contract or expired lease.   Nothing in the Plan will increase, augment, diminish or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor or the Reorganized Debtor under any executory contract or expired lease.   If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, then the Reorganized Debtor, will have thirty (30) days following entry of a Final Order resolving such dispute to amend its decision to assume or reject such contract or lease.

**P.    Procedures for Resolving Disputed Claims**

34.    After the Effective Date, except as released in the Plan or in this Confirmation

Order, the Reorganized Debtor shall have and retain any and all rights and defenses the Debtor

had with respect to any Claims immediately prior to the Effective Date.

35.    <u>Claims Administration Responsibilities</u>.    Except as otherwise specifically

provided in the Plan, after the Effective Date, the Reorganized Debtor shall have the authority:

(1) to file, withdraw, or litigate to judgment any objections to Claims; (2) to settle or compromise

any Disputed Claim without any further notice to or action, order, or approval by the Court; and

(3) to administer and adjust the Claims Register to reflect any such settlements or compromises

without any further notice to or action, order, or approval by the Court.

36.    <u>Estimation of Claims</u>.    Before the Effective Date, the Plan Sponsors or the Debtor,

and after the Effective Date, the Reorganized Debtor may at any time request that the Court

estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the

Bankruptcy Code for any reason, regardless of whether any party previously has objected to such

Claim or whether the Court has ruled on any such objection, and the Court shall retain

jurisdiction to estimate any such Claim, including during the litigation of any objection to any

Claim or during the appeal relating to such objection.    Notwithstanding any provision to the

contrary in the Plan, a Claim that has been disallowed, but that either is subject to appeal or has

not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless

otherwise ordered by the Court.    In the event that the Court estimates any contingent or

unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim

for all purposes under the Plan (including for purposes of distributions), and the Reorganized

Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution

39

on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has filed a motion requesting the right to seek such reconsideration on or before twenty (20) days after the date on which such Claim is estimated.

37.     Adjustment to Claims Without Objection.  Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be so adjusted or disallowed at the request of the Reorganized Debtor without any further notice to or action, order, or approval of the Court.

38.     Disallowance of Claims.  Any Claim held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Reorganized Debtor.

39.     Offer of Judgment.  The Reorganized Debtor is authorized to serve upon a Holder of a Claim an offer to allow judgment to be taken on account of such Holder's Claim, and, pursuant to Bankruptcy Rules 7068 and 9014, Federal Rule of Civil Procedure 68 shall apply to such offer of judgment. To the extent the Holder of a Claim must pay the costs incurred by the Reorganized Debtor, after the making of such offer, the Reorganized Debtor is entitled to set off

such amounts against the amount of any distribution to be paid to such Holder without any further notice to or action, order, or approval of the Court.

## Q.    Return of Deposits

40.    All utilities, including any Person who received a deposit or other form of adequate assurance of performance pursuant to section 366 of the Bankruptcy Code during this Chapter 11 Case (collectively, the "Deposits"), including, without limitation, gas, electric, telephone, trash and sewer services, shall return such Deposits to the Reorganized Debtor, as applicable, either by setoff against postpetition indebtedness or by cash refund, within forty-five (45) days following the Effective Date. As of the Effective Date, such utilities are not entitled to make requests for or receive Deposits.

## R.    Immediate Binding Effect

41.    Notwithstanding Bankruptcy Rules 3020(e), 6004, or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Master Trustee, the Bank, the Landlord, the Committee and any and all Holders of Claims and Membership Interests (irrespective of whether the Classes of Claims and Membership Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

## S.    Additional Documents

42.    On or before the Effective Date, the Debtor or Plan Sponsors may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and

further evidence the terms and conditions of the Plan, including any and all documents relating to

the bond exchange under the Plan. The Reorganized Debtor and all Holders of Claims receiving

distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare,

execute, and deliver any agreements or documents and take any other actions as may be

necessary or advisable to effectuate the provisions and intent of the Plan. For the avoidance of

doubt, the Fee Simple Option Agreements and the Relationship Agreement may not be amended,

modified, or supplemented without the express written consent of the Landlord, the Plan

Sponsors and the Debtor.

**T.      Payment of Statutory Fees**

43.      All fees payable pursuant to section 1930 of the United States Code shall be paid

for each quarter (including any fraction thereof) until the Chapter 11 Case is converted,

dismissed, or closed, whichever occurs first.

**U.      Dissolution of the Committee**

44.      Upon the Effective Date, the Committee shall dissolve automatically, except with

respect to the resolution of applications for Professional Fee Claims, and members thereof shall

be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or

related to, the Chapter 11 Case and under the Bankruptcy Code.

**V.      Reservation of Rights**

45.      Except as expressly set forth in the Plan, the Plan shall have no force or effect

unless the Court enters this Confirmation Order. None of the Filing of the Plan, any statement or

provision contained in the Plan, or the taking of any action by the Plan Sponsors with respect to

the Plan or the Disclosure Statement shall be or shall be deemed to be an admission or waiver of

any rights of the Plan Sponsors with respect to the Debtor, Holders of Claims or Membership Interests prior to the Effective Date.

**W.      Successors and Assigns**

46.      The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, member, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**X.      Service of Confirmation Order**

47.      In accordance with Bankruptcy Rules 2002 and 3020(c), within fourteen (14) days after the date of entry of this Confirmation Order, the Plan Sponsors shall cause to be served the Notice of Confirmation by United States mail, first class postage prepaid, by hand, or by overnight courier service to all parties having been served with the Confirmation Hearing Notice; provided that no notice or service of any kind shall be required to be mailed or made upon any Entity to whom the Voting Agent mailed a Confirmation Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Voting Agent has been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  Mailing of the Notice of Confirmation in the time and manner set forth in this Confirmation Order shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no further notice is necessary.

**Y.      Notice of Effective Date**

48.      The Debtor shall serve a notice of the Effective Date (the "Effective Date Notice") on all Entities on whom the Debtor served the Confirmation Hearing Notice and to the

Office of the United States Trustee for the Northern District of Illinois no later than fourteen (14) days after the Effective Date.

**Z.      Injunctions and Automatic Stay**

49.      Unless otherwise provided in the Plan or herein, all injunctions or stays in effect in the Chapter 11 Case pursuant to section 105, 362, or 525 of the Bankruptcy Code or otherwise, or any order of the Court, and extant on the date of this Confirmation Order (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or herein shall remain in full force and effect in accordance with its terms.  This Confirmation Order will permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, Causes of Action, obligations, suits, judgments, damages, demands, debts, rights, or liabilities released pursuant to the Plan except as otherwise provided in the Plan or Plan Supplements.

**AA.      Governing Law**

50.      Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Illinois, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

**BB.    Modifications to Plan**

51.    Except as otherwise specifically provided in the Plan, the Plan Sponsors reserve the right to modify the Plan and seek modifications consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Plan Sponsors expressly reserve all rights to revoke or withdraw, or to alter, amend, or modify materially the Plan, one or more times, after confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Section 11.6.1 of the Plan.  For the avoidance of doubt, no modification of the Fee Simple Option Agreements and/or the Relationship Agreement may be made without the express written consent of the Landlord, the Plan Sponsors and the Debtor.

**CC.    Nonseverability of Plan Provisions**

52.    The provisions of this Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Plan Sponsors or Reorganized Debtor, as applicable; and (c) nonseverable and mutually dependent.

**DD.    References to Plan Provisions**

53.    Captions and headings to articles of the Plan are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.  The

failure specifically to include or to refer to any particular article, section or provision of the Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision, it being the intent of the Court that the Plan and any related documents be confirmed in its entirety.

## EE.   Waiver or Estoppel

54.   Each Holder of a Claim or a Membership Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Membership Interest should be Allowed in a certain amount, in a certain priority, secured or not subordinated by virtue of an agreement made with the Debtor or its counsel, the Plan Sponsors or their counsel, the Committee or its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Court prior to the Confirmation Date.

## FF.   Effect of Conflict With this Confirmation Order

55.   To the extent that any provision of the Disclosure Statement, the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing) or any other order of this Court (other than this Confirmation Order), conflict with or are in any way inconsistent with any provision of this Confirmation Order, this Confirmation Order shall govern and control.

## GG.   Effect of Conflict Between the Plan, the Confirmation Order or the Series 2012 Bonds

56.   Article IV of the Plan provides for the implementation of the Plan, including the issuance of Series 2012 Bonds.  The First Plan Supplement filed with the Court contained the various Series 2012 Supplemental Bond Documents in substantially final form.  Notwithstanding anything herein to the contrary (including paragraph 54 above), to the extent that any provision

of the Disclosure Statement, or Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with the Series 2012 Bond Documents, the Series 2012 Bond Documents shall control.

**HH.    Effect of Conflict Between the Plan, the Confirmation Order or the Fee Simple Option Agreements and/or Relationship Agreement**

57.    Article IV of the Plan, the Real Estate Purchase Term Sheet attached to the Plan as **Exhibit B**, and the Restructuring Term Sheet attached to the Plan as **Exhibit A**  provide for the implementation of the Plan, including the entry into the Fee Simple Option Agreements and the Relationship Agreement.  The Third Plan Supplement filed with the Court contained the final versions of the Fee Simple Option Agreements and the Relationship Agreement. Notwithstanding anything herein to the contrary (including paragraph 54 above), to the extent that any provision of the Disclosure Statement, or Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with the Fee Simple Option Agreements and/or the Relationship Agreement, the Fee Simple Option Agreements and/or the Relationship Agreements, in each case in the form in which they are executed by the parties thereto, shall control.

**II.    Authorization to Consummate**

58.    The Plan Sponsors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to consummation set forth in Article VIII of the Plan or paragraphs 18 and 19 above.  For the avoidance of doubt, the conditions precedent to consummation of the Plan set forth in paragraphs 18 and 19 above may only be waived by the Landlord.

**JJ.    Effect of Non-Occurrence of Conditions to Effective Date**

59.     Each of the conditions to consummation must be satisfied or duly waived pursuant to Article VIII of the Plan and consummation must occur within one hundred twenty (120) days of Confirmation, or by such later date established by Court order.  If consummation has not occurred within one hundred twenty (120) days of entry of this Confirmation Order, then upon motion by a party in interest made before consummation and a hearing, this Confirmation Order may be vacated by the Court; provided that, notwithstanding the filing of such motion to vacate, this Confirmation Order may not be vacated if consummation occurs before the Court enters an order granting such motion.  If this Confirmation Order is vacated for any reason, then except as provided in any order of the Court vacating this Confirmation Order, the Plan will be null and void in all respects, including the treatment of Claims and Membership Interests pursuant to the Plan and the assumptions, assumptions and assignments, or rejections of Assumed Contracts pursuant to Article VII of the Plan, and nothing contained in the Plan or Disclosure Statement shall (a) constitute a waiver or release of any Claims, Membership Interests, or Causes of Action; (b) prejudice in any manner the rights of the Plan Sponsors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Plan Sponsors or any other Entity.

**KK.    Substantial Consummation**

60.     The substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, shall be deemed to have occurred on the Effective Date.

**LL.    Retention of Jurisdiction**

61.     Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or

48

related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the

Bankruptcy Code, including jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

(b)     grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date, provided, however, that all Professional Fee Claims shall be subject to the cap set forth in the Professional Fee Budget;

(c)     resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired lease to which the Debtor or Reorganized Debtor, as applicable, is party or with respect to which the Debtor or Reorganized Debtor, as applicable, may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to any amendment to the Plan after the Effective Date pursuant to Article XI.A of the Plan adding executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be assumed;

(d)     ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(e)     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Reorganized Debtor after the Effective Date, provided, however, that the Reorganized Debtor shall reserve the right to commence actions in all appropriate jurisdictions;

(f)     enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan, Plan Supplements or the Disclosure Statement;

(g)     resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(h)     issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain

49

interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

(i)    enforce Article IX.A, Article IX.B,O and Article IX.E of the Plan;

(j)    enforce the injunction set forth in Article IX.F of the Plan;

(k)    resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article IX of the Plan, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

(l)    enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

(m)    resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

(n)    enter an order and/or the decree contemplated in section 350 of the Bankruptcy Code and Bankruptcy Rule 3022 concluding the Chapter 11 Case.

## MM.    Final Confirmation Order

62.    This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

Dated:    NOV 1 5 2012

_____
United States Bankruptcy Judge

50

**Miscellaneous:**

11-48903 Clare Oaks
Type: bk                     Chapter: 11 v                    Office: 1 (Chicago)
Assets: y                    Judge: PSH

**U.S. Bankruptcy Court**

**Northern District of Illinois**

Notice of Electronic Filing

The following transaction was received from Rosanne Ciambrone entered on 11/14/2012 at 5:19 PM CST and filed on 11/14/2012
**Case Name:**        Clare Oaks
**Case Number:**      11-48903
**Document Number:** 434

**Docket Text:**
Proposed Order - Order Confirming Plan of Reorganization Filed by Rosanne Ciambrone on behalf of Sovereign Bank (RE: [358] Modified Chapter 11 Plan). (Ciambrone, Rosanne)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** I:\RXC\Clare Oaks\Proposed Order Confirming Plan of Reorganization.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017686655 [Date=11/14/2012] [FileNumber=40982004
-0] [a733ac738d0b55eca8491ae996a26de503d27db106d103dfcabe71bb5ecd93279
9bbd309f0839699d1ef3e9d1170b5302f52e92642a59452b0f7a0d19dfac9a6]]

**11-48903 Notice will be electronically mailed to:**

Elizabeth A. Bates on behalf of Attorney Elizabeth Bates
ebates@springerbrown.com

Timothy W Brink on behalf of Creditor The Sisters of St. Joseph of the Third Order of St. Francis, Inc.
timothy.brink@dlapiper.com, docketingchicago@dlapiper.com;william.guthrie@dlapiper.com

Rosanne Ciambrone on behalf of Creditor Sovereign Bank
rciambrone@duanemorris.com, jkahane@duanemorris.com

Roberto A Dall'Asta on behalf of Other Prof. B.C. Ziegler and Company
rdallasta@mwe.com

Bruce Dopke on behalf of Interested Party Friendship Senior Options, NFP
bruce@dopkelaw.com

David R Doyle on behalf of Debtor Clare Oaks
ddoyle@shawfishman.com

Robert M Fishman on behalf of Creditor Wells Fargo Bank, National Association
rfishman@shawfishman.com

Ronald E Gold on behalf of Interested Party ER Propco Co., LLC
rgold@fbtlaw.com

Emily S. Gottlieb on behalf of Other Prof. Garden City Group Inc
emily_gottlieb@gardencitygroup.com, paul.kinealy@gardencitygroup.com;PACERTeam@gardencitygroup.com

Joshua D Greene on behalf of Attorney Joshua Greene
jgreene@springerbrown.com, sellis@springerbrown.com

Allen J Guon on behalf of Creditor Wells Fargo Bank, National Association
aguon@shawfishman.com, cowens@shawfishman.com

James R Irving on behalf of Creditor The Sisters of St. Joseph of the Third Order of St. Francis, Inc.
jim.irving@dlapiper.com,
timothy.walsh@dlapiper.com;;lawrence.uchill@dlapiper.com;;william.coleman@dlapiper.com;;jason.karaffa@dlapiper.com;;docketingchicag@dlapiper.com

Robert J. Labate on behalf of Creditor Senior Care Development LLC
robert.labate@hklaw.com

Patrick S Layng
USTPRegion11.ES.ECF@usdoj.gov

Phillip A Martin on behalf of Creditor Pharmerica Drug Systems, LLC
pmartin@fmhd.com

George R Mesires on behalf of Debtor Clare Oaks
grmesires@uhlaw.com

Kathleen Noga on behalf of Creditor Sysco Chicago Inc.
kathleen@mcmahanlaw.com

Patrick F Ross on behalf of Debtor Clare Oaks
pfross@uhlaw.com, kburde@uhlaw.com;rjanczak@uhlaw.com;KAMcLoud@uhlaw.com;keedeus@uhlaw.com;sgfeibus@uhlaw.com

Jeffrey Snell on behalf of U.S. Trustee Patrick Layng
jeffrey.snell@usdoj.gov

Thomas E Springer on behalf of Attorney Thomas Springer
tspringer@springerbrown.com, jkrafcisin@springerbrown.com

Jerry L Switzer on behalf of Interested Party ER Propco Co., LLC
jswitzer@polsinelli.com

Michael Traison on behalf of Interested Party Illinois Finance Authority
traison@millercanfield.com, wysocki@millercanfield.com,swansonm@millercanfield.com

Adrienne K Walker on behalf of Creditor Wells Fargo Bank, National Association
awalker@mintz.com

John R Weiss on behalf of Creditor Sovereign Bank
jrweiss@duanemorris.com

Neal L Wolf on behalf of Creditor Committee The Official Committee of Unsecured Creditorsof Clare Oaks
nwolf@nealwolflaw.com,
dwolski@nealwolflaw.com;dgramlich@nealwolflaw.com;gmunitz@nealwolflaw.com;jlenzke@nealwolflaw.com;jbenson@nealwolflaw.com;fdosunmu@nealwolflaw.com;dc

**11-48903 Notice will not be electronically mailed to:**

Arrow CT Corporation
,

B C Ziegler & Co
,

Jordan Bailey on behalf of Creditor Sysco Chicago Inc.
Haynes and Boone, LLP
2323 Victory Avenue
Suite 700
Dallas, TX 75219

Beautiful Aquarium, Inc.
,

Bernard Food Industries, Inc.
,

Kevin O. Carden
B.C. Ziegler and Company
,

Kevin Carter
Ungaretti & Harris LLP
c/o George R Mesires
Three First National Plaza
70 W Madison Street Suite 3500
Chicago, IL 60602

CliftonLarsonAllen LLP
,

Jones Day
,

Robert A Guy on behalf of Interested Party ER Propco Co., LLC
,

George R Mesires
Gardner Carton & Douglas LLC
191 N Wacker Drive Suite 3700
Chicago, IL 60606

George R Mesires on behalf of Interested Party Kevin Carter
Ungaretti & Harris LLP
70 W. Madison Street
Suite 3500
Chicago, IL 60602

Paul Rundell
Ungaretti & Harris LLP
c/o George R Mesires
Three First National Plaza
70 W Madison Street Ste 3500
Chicago, IL 60602

Ungaretti & Harris LLP
,

Adrienne K Walker on behalf of Creditor Wells Fargo Bank, National Association
,

Neal Wolf
,