## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Clare Oaks, | ) | Case No. 11-48903 (PSH) |
|  | ) |  |
| Debtor. | ) | **Hearing Date:**  February 14, 2013 |
|  | ) | **Hearing Time:**  10:00 a.m. |

## SUMMARY OF FINAL APPLICATION OF
## NEAL WOLF & ASSOCIATES, LLC FOR ALLOWANCE OF
## COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL
## FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

| | |
|---|---|
| Name of Applicant: | Neal Wolf & Associates, LLC |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Order Authorizing Employment: | January 31, 2012 *nunc pro tunc* to December 19, 2011 |
| Period for Which Compensation is sought: | December 19, 2011 through December 31, 2012 (plus capped fee of $2,500 and expenses for period January 1, 2013 through February 14, 2013) |
| Amount of compensation sought: | $245,210.53[1] |
| Amount of expense reimbursement sought: | $ 3,812.83[2] |
| Type of Fee Application: | Final Fee Application |

*[Remainder of this page intentionally left blank.]*

---

[1]  The gross amount of compensation originally sought for the period through the December 31, 2012 Effective Date of the Plan (as such terms are defined in this final application) as actual, reasonable and necessary was $242,962.50. $242,710.53 is the net amount after deducting the amounts ($119.47 and $132.50) disallowed by the Court in its Orders granting in part the First and Second Interim Applications of NW&A. *See* Docket Nos. 247 and 372.  The amount of compensation sought in this final application also includes an additional lump sum of $2,500.00 in fees for work performed after the Plan Effective Date relating to NW&A's preparation of this Final Application and its review of the final fee and expense applications of the Debtor's professionals as requested by the Office of the United States Trustee.

[2]  The expense figure does not include incidental expenses incurred after the Plan Effective Date.  NW&A believes those expenses will be minimal.

If this is not the first application filed herein by this professional, disclosure as to all prior fee applications:

| Date Filed | Period Covered | Total Requested (Fees and Expenses) | Total Allowed (Fees and Expenses) | Fees and Expenses Paid |
|---|---|---|---|---|
| 4/18/2012 | 12/19/2011 - 3/31/2012 | $91,317.50 | $91,198.03 | $91,198.03 |
| 8/30/2012 | 4/1/2012 – 7/31/2012 | $66,586.13 | $66,453.63 | $66,453.63 |
| **TOTAL** | | **$157,903.63** | **$157,651.66** | **$157,651.66** |

Monthly Fee Statements submitted to Debtor as required by the Interim Fee Procedures Order:

| Date Submitted | Period Covered | Total Fees Requested | Total Expenses Requested | Fees (80%) and Expenses Paid |
|---|---|---|---|---|
| 10/15/2012 | 8/1/2012 – 8/30/2012 | $24,429.00 | $54.92 | $19,598.12 |
| 10/15/2012 | 9/1/2012 – 9/30/2012 | $25,988.00 | $387.36 | $21,177.76 |
| 11/15/2012 | 10/1/2012 – 10/31/2012 | $15,840.00 | $471.30 | $13,143.30 |
| 12/28/2012 | 11/1/2012 – 11/30/2012 | $4,801.50 | $234.30 | $4,075.50 |
| 1/15/2013 | 12/1/2012 – 12/31/2012 | $7,213.50 | $65.99 | $0.00 |
| **TOTAL** | | **$78,272.00** | **$1,213.87** | **$57,994.68** |

The aggregate amount of fees and expenses paid to Neal Wolf & Associates, LLC to date for services rendered and expenses incurred herein is $215,646.34.

Dated: January 24, 2013

By: /s/ Dean C. Gramlich
Neal L. Wolf (ARDC No. 6186361)
Dean C. Gramlich (ARDC No. 6191587)
NEAL WOLF & ASSOCIATES, LLC
*Counsel to Official Committee of Unsecured Creditors*
155 N. Wacker Drive, Suite 1910
Chicago, IL 60606
Main:      (312) 228-4990
Fax:       (312) 228-4988
Email:     nwolf@nealwolflaw.com
           dgramlich@nealwolflaw.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Clare Oaks, | ) | Case No. 11-48903 (PSH) |
| | ) | |
| Debtor. | ) | **Hearing Date:**    **February 14, 2013** |
| | ) | **Hearing Time:**    **10:00 a.m.** |

**FINAL APPLICATION OF NEAL WOLF & ASSOCIATES, LLC
FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT
OF EXPENSES AS COUNSEL FOR THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

Pursuant to sections 330(a) and 331 of the Bankruptcy Code, Rule 2016 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 5082-1 of the Local

Bankruptcy Rules, effective as of January 1, 2012 (the "Local Bankruptcy Rules"), this

Court's Order Establishing Interim Fee and Expense Reimbursement Procedures, dated

March 1, 2012 (Docket No. 170) (the "Interim Fee Procedures Order"), and certain

applicable provisions of the United States Trustee's Guidelines for Reviewing Applications

for Compensation and reimbursement Filed Under 11 U.S.C. § 330 (Appendix A to 28

C.F.R. § 58 (the "Guidelines")), Neal Wolf & Associates, LLC ("NW&A"), as counsel to

the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned

case (the "Case"), hereby files its Final Application for Allowance of Compensation and

Reimbursement of Expenses as Counsel for the Official Committee of Unsecured Creditors

(the "Final Application").

By this Final Application, NW&A seeks a final approval and allowance of fees in the

amount of $245,210.53[1] and reimbursement of expenses in the amount of $3,812.83[2] for the

---

[1]   The gross amount of compensation originally sought for the period through the December 31, 2012 Effective

period December 19, 2011 through and including December 31, 2012 (the "Final

Application Period"). NW&A further requests that the Court direct the Debtor to pay to

NW&A all fees allowed by the Court in connection with its consideration of the Final

Application, including any fees held back from payment pursuant to this Court's Interim Fee

Procedures Order, and certain fees and expenses incurred by NW&A for work done

subsequent to the December 31, 2012 effective date ("Effective Date") of the Third

Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Filed by Wells

Fargo Bank, N.A., and Sovereign Bank, N.A., as modified, dated September 13, 2012

(Docket No. 358) (the "Plan").

## I.   FACTUAL BACKGROUND

### A.   <u>General Case Status</u>

1.      On December 5, 2011 (the "Petition Date"), the above-captioned Debtor and

Debtor in Possession (the "Debtor") filed a voluntary petition in this Court under chapter 11

of the Bankruptcy Code. The Debtor remains in possession of its property and continues to

operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code. No trustee or examiner has been appointed in this Case.

2.      On December 19, 2011, the Office of the United States Trustee for the

Northern District of Illinois (the "U.S. Trustee") appointed the following creditors to serve

on the Committee: PharMerica Drug Systems, LLC, Pizzo & Associates, LTD, Harold

---

Date of the Plan (as such terms are defined in this Final Application) as actual, reasonable and necessary was
$242,962.50. $242,710.53 is the net amount after deducting the amounts ($119.47 and $132.50) disallowed by the
Court in its Orders granting in part the First and Second Interim Applications of NW&A. *See* Docket Nos. 247 and
372. The amount of compensation sought in this Final Application also includes an additional lump sum of $2,500
in fees for work performed after the Plan Effective Date relating to NW&A's preparation of this Final Application
and its review of the final fee and expense applications of the Debtor's professionals as requested by the Office of
the United States Trustee.
[2]  The expense figure does not include incidental expenses incurred after the Plan Effective Date. NW&A believes
those expenses will be minimal.

Koenen, Tom Maguire and Lucille Merlihan. *See* Appointment of Unsecured Creditors

Committee (Docket No. 63). In August 2012, the U.S. Trustee appointed a sixth member,

Robert Webb, a resident at the facility. *See* Amended Appointment of Unsecured Creditors'

Committee (Docket No. 312).

      3.      On December 19, 2011, the Committee met and selected NW&A to act as its

counsel in this Case.

      4.      On January 9, 2012, the Committee filed its Application to Employ Neal Wolf

& Associates, LLC as Counsel to the Official Committee of Unsecured Creditors of Clare

Oaks (Docket No. 96) (the "Retention Application").

      5.      On January 31, 2012, the Court granted the Retention Application and entered

its Order Granting Application of Official Committee of Unsecured Creditors for Entry of

an Order Authorizing the Retention and Employment of Neal Wolf & Associates, LLC as

counsel to the Committee Effective as of December 19, 2011, dated January 31, 2012

(Docket No. 140) (the "Retention Order").

      6.      Subsequent to entry of the Retention Order, NW&A has acted as sole counsel,

and indeed sole professional, to the Committee in connection with this Case.

      7.      On November 15, 2012, this Court entered an Order (Docket No. 437) (the

"Confirmation Order"), confirming the Plan. On December 20, 2012, this Court entered a

subsequent Order (Docket No. 453) allowing certain nonmaterial modifications to the Plan.

      8.      Pursuant to Article IV.N of the Plan, the Committee was dissolved as of the

Effective Date of the Plan (December 31, 2012). However, Article IV.N allows NW&A to

continue work after the Effective Date solely on this Final Fee Application and in

connection with the review of the final fee applications of the Debtor's professionals.

9.      To the best of NW&A's knowledge, the Debtor has paid or will pay all quarterly fees of the U.S. Trustee.

10.     The source of the payment of fees and expenses previously paid to or sought by NW&A is either the general revenues of the Debtor, which the Debtor has authority to use subject to various budgets attached to the Final Order Granting Motion to Use Cash Collateral, dated March 8, 2012 (Docket No. 178) (as modified, the "Cash Collateral Order"), or funding made available pursuant to the Final Order (I) Authorizing Debtor to Obtain Postpetition Financing on a Senior Secured, Superpriority Basis Pursuant to 11 U.S.C. §§ 105, 361, 362, 363 and 364 and (II) Granting Related Relief, also dated March 12, 2012 (Docket No. 179) (as modified, the "DIP Financing Order").

### B.      Jurisdictional and Statutory Basis for this Final Application

11.     This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b) (2) and 1334.  The venue of this Case and the Final Application is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

12.     NW&A makes this Final Application pursuant to: (a) sections 328, 330 and 331 of the Bankruptcy Code, (b) Rule 2016(a) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), and (c) Rule 5082-1 of the Local Bankruptcy Rules.

## II.     STATUS OF NW&A'S FEES AND EXPENSES, BUDGET LIMITATIONS AND EXHIBITS.

13.     Pursuant to the Interim Fee Procedures Order, NW&A has, as of the date of this Final Application, received full or partial payments on twelve of its monthly fee statements.  NW&A has as yet received no payment on its thirteenth monthly fee statement (December 2012).  NW&A has also not received any portion of the $2,500 in fees for work done after the Effective Date on this Final Application and on reviewing the final fee and

expense applications of the Debtor's professionals.  The $2,500 acts as a cap on NW&A's

fees in connection with this work.  NW&A expects its fees in connection with these post-

Effective Date matters to exceed the $2,500 cap.  NW&A also intends to request

reimbursement of its incidental expenses incurred in connection with its post-Effective Date

work.  NW&A expects those expenses to be minimal.

14.     NW&A has also previously filed two interim fee applications (covering the

periods December 19, 2011 through March 31, 2012 ("First Interim Application Period")

and April 1, 2012 through July 31, 2012 ("Second Interim Application Period")).  The Court

granted both of these interim applications in substantial part.  *See* Docket Nos. 196, 247, 334

and 372.  To date, NW&A has received payment in the total amount of $215,646.34.  This

amount includes the amounts approved with respect to the First and Second Interim

Application Periods and amounts requested in the firm's August to November 2012 monthly

fee statements, net of the 20% holdback.  No amount has yet been paid with respect to the

December 2012 monthly fee statement.  The Debtor currently owes NW&A the total

amount of $23,991.19, which is comprised of the 20% fee holdback for the August to

November 2012 monthly fee statements, the fees and expenses reflected in the December

2012 monthly fee statement and the $2,500 cap amount, plus an unliquidated amount for

expenses incurred during the post-Effective Date period.

15.     NW&A has not filed an interim application for the period August 1, 2012 to

December 31, 2012.  NW&A submitted monthly fee statements for this period to the Debtor

as required by the Interim Fee Procedures Order.  Narrative summaries of the professional

services rendered by NW&A during this period are included in Section III below.

16.     NW&A has received no retainer in connection with its representation of the

Committee in this Case.

17.     Shortly after its formation, the Committee engaged in negotiations with counsel for the Debtor; Wells Fargo Bank, N.A., in its capacity as Master Indenture Trustee under certain bond issues (described in more detail in the Declaration of Paul Rundell in Support of the Debtor's First Day Motions (Docket No. 18)) ("Wells Fargo"), Sovereign Bank ("Sovereign") and Senior Care Development, LLC, in its capacity as lender under the DIP Financing Order ("SCD").  These negotiations related to budgetary limitations on the fees and expenses to be paid to Committee professionals.

18.     As a result of the negotiations, NW&A agreed to certain budgetary limitations on its fees and expenses in connection with two different time periods.  NW&A also agreed to a separate budgetary limitation on its investigation of the validity and enforceability of the substantial claims asserted by the Prepetition Secured Lenders and other issues related to those claims.  Those budgetary limitations and their rather complex implementation are discussed in greater detail in the First Interim Application.  *See* Docket No. 196, ¶¶ 15-19. As a result of those limitations, NW&A reduced its fees for work done during the First Interim Application Period by a total of $3,888.09.

19.     The budget also limited NW&A's fees and expenses with respect to the Second Interim Application Period.  However, NW&A's fees and expenses for each of the months (April through July) within the Second Interim Application Period were well below the cap noted in paragraph 16(b) of the First Interim Application.  NW&A's fees and expenses have also been below budgeted amounts for later periods in the Case.

20.     Finally, NW&A has agreed to cap its fees for work done subsequent to the Effective Date at $2,500.  Because NW&A does not know how much its actual fees will

exceed the $2,500 cap, it cannot disclose the amount of the discount.  As noted above,

however, the amount of NW&A's fees will certainly exceed the $2,500 cap.  NW&A has

not waived its right to reimbursement of its expenses during the post-Effective Date period

and will provide the Court with the amount of its expenses at the hearing on this Final

Application.  NW&A expects these expenses to be minimal.

21.    In connection with the compensation and expenses sought by NW&A herein,

neither NW&A nor its sole member, Neal L. Wolf, has received or been promised any

compensation for services rendered or to be rendered in any capacity in connection with this

case other than as set forth herein.

22.    No agreement or understanding exists between NW&A and any third party for

the sharing of compensation.

23.    All of the services for which NW&A requests compensation were rendered

solely at the request of the Committee and not on behalf of any other person or entity.

24.    To assist the Court, the Debtor, the U.S. Trustee and the various parties in

interest in analyzing NW&A's fees and expenses during the Final Application Period and as

otherwise required, NW&A has attached the exhibits described below.  Each such exhibit is

based on actual fees and expenses billed by NW&A professionals.  These exhibits do not

reflect (i) the holdback amounts required by the Interim Fee Procedures Order, (ii) the fee

amounts disallowed in the First and Second Interim Applications ($119.47 and $132.50,

respectively), or (iii) the $2,500 cap for the limited work done subsequent to the Effective

Date:

a.    In accordance with Local Rule 5082-1(B)(1)(e), **Exhibit A** hereto is a

timekeeper summary showing the hourly rate of each attorney and paraprofessional for

whom compensation is requested, with the total number of hours expended and total

compensation requested for each such attorney and paraprofessional during the Final

Application Period.  The total amount of fees set forth on Exhibit A, $242,962.50, together

with the total amount of expenses set forth in detail on Exhibit E discussed below, fall well

below the aggregate budget limitations to which the Committee was subject during the Final

Application Period.

       b.     In accordance with Local Rule 5082-1(B)(1)(a), **Exhibit B** hereto is a

summary list showing all activity categories into which NW&A organized its work and the

total fees in each such category,

       c.     In accordance with Local Rule 5082-1(b)(1)(d), **Exhibit C** hereto is a

summary showing each professional who performed work in a given activity category, the

hours worked in each activity category by each such professional and the total compensation

for that professional in each activity category.

       d.     In accordance with Local Rule 5082-1(B)(1)(b) and (C), **Group**

**Exhibit D** consists of NW&A's monthly fee statements for August, September, October,

November and December 2012.  NW&A has not filed an interim application with respect to

these five monthly fee statements.  NW&A has also included in Group Exhibit D a partial

invoice for January 2013 (through January 21, 2013) relating to work done on final fee

application matters.  These invoices describe in detail each activity performed by a billing

professional divided by activity category and further show (i) the date the work was

performed; (ii) the name of the professional performing the work; (iii) a brief statement

showing the nature of the work; and (iv) the time expended on the work in tenth of an hour

increments.

e.      In accordance with Local Bankruptcy Rule 5082-1(B) (1) (g), **Exhibit E** hereto is a summary showing the firm's total expenses for the period through December 31, 2012.  It does not include expenses incurred subsequent to the December 31, 2012 Effective Date.

25.      In addition to the foregoing Exhibits, **Exhibit F** hereto is the Declaration of Dean C. Gramlich in support of the Final Application.  NW&A has also submitted a proposed form of order approving the Final Application.

## III.   NARRATIVE STATEMENT

### D.   General Summary

26.      NW&A hereby seeks final approval and allowance of compensation earned during the Final Application Period in the amount of $245,210.53 and allowance of expenses in the amount of $3,812.83.[3]

27.      During the Final Application Period, NW&A performed a number of important functions for the Committee.  During the Second Interim Period, NW&A reviewed and analyzed materials on the sale of the facility to various proposed bidders and the asset purchase agreement with Evergreen, the stalking horse bidder.  During the period August 1, 2012 through December 31, 2012 ("Third Interim Period"), NW&A analyzed the bond holder plan proposals.  NW&A also engaged in negotiations with the bond holder constituency regarding the treatment of resident claims, the assumption and rejection of executory contracts and leases and other issues, and filed a limited objection to the disclosure statement submitted by the bond holders for approval on an expedited basis ("Disclosure Statement") (Docket No. 321, as subsequently amended).  At all times during

---

[3]  See notes 1 and 2 above with respect to computation of the total amounts of compensation and expenses requested.

its representation of the Committee, NW&A communicated frequently with the Committee

regarding case developments.  NW&A prepared a number of memoranda for the

Committee, including analyses of the bond holder plan proposals and the financial modeling

underlying those proposals.  The members of the Committee, most of whom resided at Clare

Oaks, strongly preferred in-person meetings.  NW&A attorney Dean Gramlich, primary

Committee counsel, prepared the agenda for each meeting and personally attended most of

the Committee meetings.  Attorney Gramlich also attended certain town hall meetings at

which the sale process, the bond holder plan proposals and other chapter 11 case matters.

These meetings enabled the Committee to understand the section 363 sale and plan

confirmation processes.  NW&A also represented the Committee at various hearings before

the Court on plan exclusivity, the Debtor's motion to sell the facility to Evergreen and to set

bid procedures, the bond holder's objections to the sale, the Disclosure Statement and plan

confirmation.  NW&A also participated in discussions with counsel for the Debtor and

counsel for the bond holders regarding the bond holder constituency's objections to use of

cash collateral and the bond holders' proposed plan structure.  At the beginning of the Case,

NW&A performed an extensive analysis of possible claims against the bond holders and

presented its analysis to the Committee.  A more detailed summary of the work performed

by NW&A is set forth below.

    28.    NW&A has staffed its representation at all times to avoid duplication of

efforts with the services provided by other professionals.  The majority of the services

described in Group Exhibit D were rendered by one NW&A attorney, Dean Gramlich.  The

Committee did not retain a financial consultant, thus requiring NW&A to provide

information and advice to the Committee on financial, capital structure and technical bond

restructuring issues.  Using materials from both the public record and confidential materials

obtained from the Debtor and the Debtor's investment bankers, NW&A has counseled the

Committee on such issues as the reasons for the Debtor's bankruptcy, the assets available

for distribution to unsecured creditors, the relative merits of the proposals tendered for the

Debtor's facilities, the relative merits of the Evergreen bid, the bond holder plan structure

and requested changes to both the Plan and the Disclosure Statement.  NW&A has provided

high quality services on a variety of legal and factual issues at rates which favorably

compare with those of other law firms considered by the Committee.

### E.     **Detailed Summary**

29.     In accordance with Local Bankruptcy Rule 5082-1(B)(1), the principal

activity categories performed by NW&A on behalf of the Debtor during the Final

Application Period generally have been characterized according to the subject matter

involved as required by the Guidelines.  The principal activities are:

a.     <u>General (Matter #001).</u>  NW&A seeks fees of $7,065.50 with respect
to this activity category.

b.     <u>Financing (Matter #002).</u>  NW&A seeks fees of $34,140.00 with
respect to this activity category.

c.     <u>Asset Sales (Matter #003).</u>  NW&A seeks fees of $32,258.50 with
respect to this activity category.

d.     <u>Communications with Creditors (Matter #004).</u>  NW&A seeks fees of
$6,347.00 with respect to this activity category.

e.     <u>Committee Meetings (Matter #005).</u>  NW&A seeks fees of $55,746.00
with respect to this activity category.

f.      Employment and Fee Matters (Matter #006).  NW&A seeks fees of

$40,210.50 with respect to this activity category for services rendered during the Final

Application Period.  Compensation in this category made up approximately 17% of the

compensation requested for the Final Application Period.  When adjusted to account for the

additional $2,500 in post-Effective Date fees, compensation in this category amounted to

$42,710.50 and again made up approximately 17% of the total compensation requested.

g.      Plan of Reorganization (Matter # 008).  NW&A seeks fees of

$50,356.50 with respect to this activity category.

h.      Committee Investigation (Matter # 009).  NW&A seeks fees of

$16,838.50 with respect to this activity category.

30.     The following principal activities undertaken by NW&A are, in accordance

with Local Bankruptcy Rule 5082-1(B)(1), more particularly described as follows:

a.      General (Matter # 001).  This activity category pertains to the general

administration of the case and all work that does not fit within more specific activity

categories.  NW&A attorneys prepared Committee bylaws, communicated with potential

financial advisors, and reviewed and analyzed the Debtor's motion to fix a claims bar date

and various other motions to determine any needed Committee action.  NW&A reviewed

and analyzed the Debtor's request to abstain from appointing a patient care ombudsman and

communicated with and advised the Committee with respect to its decision not to oppose the

Debtor's motion.  NW&A attorneys also reviewed and analyzed audited financial reports for

2009 and 2010 and the Debtor's motion to extend the period to assume or reject the

Congregation's ground lease.

b.      Financing (Matter # 002).  This activity category pertains to matters

surrounding the Debtor's use of cash collateral and the postpetition financing provided by

SCD to the Debtor.  NW&A attorneys participated in negotiations with SCD over certain

terms of the DIP financing and with the Prepetition Secured Lenders over the budget

limitations on estate professionals and other aspects of the interim and final cash collateral

orders.  NW&A attorneys reviewed and analyzed monthly operating reports and budgets,

and discussed with bondholders' counsel the bondholders' notice to terminate use of cash

collateral.  During the Third Interim Period, NW&A reviewed the Debtor's various motions

to amend the Cash Collateral and DIP Financing Orders to extend the milestones relating to

first the sale and then the plan confirmation process.  NW&A attorney Dean Gramlich

attended several hearings regarding the Court's consideration of these issues.

   c.  <u>Asset Sales (Matter # 003).</u>  NW&A attorney Dean Gramlich

participated in discussions with the Debtor's professionals and other parties regarding the

status of discussions with interested parties relating to a section 363 sale of the Debtor's

CCRC and reviewed confidential information provided by the Debtor.  NW&A prepared a

confidentiality agreement which provided a structure for the production of certain

documents and set procedures for the provision of confidential information to the

Committee.  NW&A communicated with the Committee regarding the sale process subject

to and in accordance with a confidentiality agreement with the Debtor.  NW&A attorneys

also reviewed bidding information provided by the Debtor and prepared binders containing

confidential background information on potentially interested parties.  NW&A reviewed and

analyzed the asset purchase agreement with Evergreen, the stalking horse bidder selected by

the Debtor, and related pleadings.  On August 8, 2012, NW&A attended the emergency

hearing on the Debtor's request to pay an additional fee to Evergreen and the status of bond

holder plan negotiations.

        d.     <u>Communications with Creditors (Matter # 004).</u>  NW&A attorneys communicated with the Committee members about a number of legal and financial issues during the Final Application Period.  NW&A attorneys also communicated with particular residents not on the Committee, parties interested in purchasing independent living units at the facility and trade creditors regarding the status of the Case and the prospects for recovery on prepetition trade claims.  During the First Interim Period, attorney Gramlich also assisted the U.S. Trustee in arranging for telephonic participation by certain residents in the first meeting of creditors under section 341 of the Bankruptcy Code.

        e.     <u>Committee Meetings (Matter # 005).</u>  NW&A attorney Dean Gramlich spent significant time attending meetings with the Committee at the Bartlett facility to discuss the sales process, financing issues, the Debtor's post-petition operating performance, the principal points of the bond restructuring underlying the Plan and the financial models used by the Debtor in forecasting the Debtor's cash flows over the 40-year period covered by the bond restructuring.  In-person meetings at the Clare Oaks facility (greatly preferred by the Committee) occurred on January 4, January 19, January 31, February 16, February 28, March 13, April 4, April 17, May 8, May 22, June 6, July 10, August 7, September 5, September 18, October 2, October 16 and December 20.  NW&A also participated in several joint meetings between the Committee and Paul Rundell, the Debtor's chief restructuring officer, including the meeting on August 14, 2012 to discuss the financial modeling done by Alvarez & Marsal (Mr. Rundell's firm) in connection with the complex bond holder plan construct.  Attorney Gramlich also presided over telephonic meetings on June 26, July 3, July 24, and August 23, 2012.  Attorney Gramlich prepared a

number of memoranda for Committee review in connection with these meetings and was the only NW&A attorney who attended these meetings. The Clare Oaks facility also holds monthly town hall meetings for the residents. When at the facility to meet with the Committee, attorney Gramlich also attended certain town hall meetings to listen to the discussions between Mr. Rundell and the residents regarding the sale process, the bond holder plan formulations and other Case matters. Attorney Gramlich also worked with the Debtor to establish procedures to preserve the confidentiality of information provided by the Debtor while at the same time facilitating Committee access. All of attorney Gramlich's non-working travel time was billed at 50% of actual travel time.

      f.    <u>Employment and Fee Matters (Matter # 006)</u>. In addition to this Final Application, NW&A prepared and filed interim fee and expense applications in April and August 2012. *See* Docket Nos. 196 and 334. NW&A reviewed and analyzed the retention applications of the various other professionals, and also negotiated with the Debtor and the U.S. Trustee regarding the terms of certain professionals' retention. NW&A also reviewed the interim fee applications and monthly invoices of the various professionals. NW&A communicated with the U.S. Trustee regarding issues relating to B.C. Ziegler's first interim fee application and the Debtor's request to retain additional financial consultants. Fees billed in this activity category amounted to $40,210.50 for the Final Application Period or approximately 17% of NW&A's total fee amounts.

      g.    <u>Plan of Reorganization (Matter # 008).</u> Most of the work in this activity category occurred in the Third Interim Period. In August 2012, NW&A analyzed preliminary drafts of the bond holder plan and discussed with the Committee various issues relating to plan feasibility. NW&A also analyzed various disputed motions relating to

extension of the exclusivity period and the bond holder's motion, as plan proponents, to

shorten the notice of the hearing on the Disclosure Statement.  In September, NW&A

analyzed the Disclosure Statement and the initial plan filed by the bond holders,

communicated with counsel for the bond holders regarding requested changes and filed a

limited objection to the Disclosure Statement on September 10, 2012.  NW&A attended

hearings on the Disclosure Statement, argued its sole remaining objection to the Court and

then participated in final drafting sessions with counsel for the bond holders and the

Congregation.[4]  In October, NW&A prepared a substantial memo to the Committee on the

possible plan objections.  Ultimately, the Committee determined not to object to the Plan.

In November and December 2012, NW&A submitted changes to the 46-page proposed

confirmation order and participated in several hearings on confirmation and the hearing on

the bond holder's emergency motion to modify the Plan in late December.  The Illinois

Finance Authority approved the issuance of the new bonds necessary to consummate the

Plan transactions.  On December 31, 2012, the bond holders declared the Effective Date of

the Plan.

       h.     <u>Committee Investigation (Matter # 009).</u>  This activity category

includes work done during the First Interim Period to investigate the validity and

enforceability of the claims asserted by Wells Fargo on behalf of the bond holders, the

perfection of liens and security interests in the Debtor's assets and avoidance and other

claims analysis issues.  Because of the complexity of the Debtor's financial structure,

NW&A Counsel Dean Gramlich and associates John Benson and Jacob Lenzke spent

considerable time reviewing and analyzing indenture trust instruments and related

---

[4]  The Committee agreed with bond holder counsel that, because of operating problems at the Clare Oaks facility resulting from the length of time the facility had remained in bankruptcy, any claims classification and related objections should be resolved prior to the initial solicitation.

mortgages and security agreements, the letter of credit facility provided by Sovereign Bank,

financing statements, opinion letters and bank account and other documents provided by the

Debtor at NW&A's request.  NW&A also analyzed the Debtor's schedules and statement of

financial affairs to assist in determining the value of any potential claims held by the estate.

The Committee investigation was largely completed by the end of February 2012.

Committee counsel also communicated its detailed conclusions to the Committee chair and

its more general conclusions to the Committee as a group.

## IV.    DESCRIPTION OF EXPENSES INCURRED

31.     NW&A seeks reimbursement of its actual and necessary expenses incurred in

rendering services during the Final Application Period.  The total amount of expenses for

which reimbursement is sought is $3,812.83, plus whatever reimbursable expenses NW&A

incurs during the post-Effective Date period.  **Exhibit E** hereto is a summary by type of all

expenses incurred by NW&A during the Final Application Period.

32.     NW&A incurred copying and courier charges in the course of the Firm's

work.  NW&A also incurred expenses in connection with legal research using LexisNexis,

docket review using Pacer and for telephone conference calling services in connection with

telephonic Committee meetings and the participation of Committee member PharMerica

Drug Systems, LLC by telephone in all Committee meetings.  NW&A has not requested

reimbursement for any meals or for any luxury items.  NW&A has not marked up the

expenses for which NW&A seeks reimbursement.

## V.    THE COMPENSATION AND EXPENSE REIMBURSEMENT SOUGHT
##    BY NW&A ARE REASONABLE

33.     To grant a request for compensation under sections 330 and 331 of the

Bankruptcy Code, a bankruptcy court must find that such request is reasonable.  As

amended in 1994, Section 330 states:

> In determining the amount of reasonable compensation to be awarded to . . . [a] professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problems, issues, or tasks addressed;
>
> (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)    whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

34.    Bankruptcy courts in this District normally engage in the so-called "lodestar" approach."  The lodestar approach is a two-step process involving the calculation of a lodestar figure (the time expended multiplied by the hourly rate) and adjustment of this figure based on the factors referenced above.  Based on the lodestar approach, NW&A is entitled to the compensation requested for the Final Application Period.  NW&A provided necessary and important services to the Committee in connection with this Case.  The services rendered by NW&A went beyond legal advice to include issues relating to the value of the Debtor, the financial modeling underlying the bond holder plan and other financial and accounting issues.  NW&A attorney Dean Gramlich has 27 years of experience in bankruptcy practice and is well-regarded in the field.  The rates charged by

NW&A are reasonable and commensurate with or below that of the billing rates of other

bankruptcy attorneys with similar levels of experience.  As demonstrated above, NW&A's

expenses were actual and necessary in light of the work required.

## VI.    REQUEST TO APPROVE LIMTED NOTICE

35.    On December 8, 2011, the Court entered an Order Granting Debtor's Emergency

Motion to Authorize Establishment of a Master Service List and Notice Procedures (Docket No.

38) (the "Notice Order").  Pursuant to the Notice Order, any entity seeking compensation of fees

or expenses must serve such motion on the Master Service List (as that term is defined herein).

*See* Notice Order, ¶ 3.  The entity may provide limited notice of such motion to all other

creditors.  *Id*.  In accordance with the Notice Order, NW&A served its First and Second Interim

Applications on the Master Service List and limited notice to all other creditors.

36.    In connection with this Final Application, the Debtor requested that notice be

limited to the Master Service List and that the Court relieve the estate of the cost of providing

limited notice to all other creditors.  On January 22, 2013, the Court approved this limited notice

for the purpose of the final applications only.  *See* Docket No. 470.

37.    Accordingly, NW&A has provided copies of this Final Application to (a) the

Office of the United States Trustee; (b) Ungaretti & Harris, principal counsel to the Debtor; (c)

SCD, the Debtor's postpetition DIP Lender; (d) Mintz Levin Cohn Ferris Glovsky and Popeo,

PC, counsel to Wells Fargo in its capacity as Master Trustee; (e) Duane Morris, counsel to

Sovereign Bank; (f) MB Financial Bank; (g) the Debtor's other secured creditors; and (h) those

persons who have formally appeared and requested service in these proceedings pursuant to

Bankruptcy Rule 2002.

38.    NW&A therefore submits that notice of the Final Application is sufficient under

the circumstances and that no further notice is required.

## VII.   CONCLUSION

39.     For the foregoing reasons, the fees requested in this Final Application are reasonable and reflect the value of the services provided to the Committee and other unsecured creditors in accordance with section 1102(b)(3) of the Bankruptcy Code. Moreover, NW&A has requested reimbursement only of its actual and necessary expenses.

**WHEREFORE,** NW&A respectfully requests that the Court enter an Order:

a.     allowing on a final basis compensation of $245,210.53 for legal services rendered during the Final Application Period, which amount includes the additional amount of $2,500 in fees with respect to work on final fee applications occurring subsequent to the Effective Date;

b.     allowing on a final basis reimbursement of expenses incurred during the Final Application Period in the amount of $3,812.8 plus any additional incidental expenses incurred with respect to work on final fee applications occurring subsequent to the Effective Date;

c.     ordering the Debtors to pay to NW&A all fees held back from prior payments pursuant to the Court's Interim Fee Procedures Order; and

*[Reminder of page intentionally left blank]*

        d.     granting such other and further relief as the Court deems

appropriate.

Dated: January 24, 2012           By: /s/ Dean C. Gramlich
                              Neal L. Wolf (ARDC No. 6186361)
                              Dean C. Gramlich (ARDC No. 6191587)
                              NEAL WOLF & ASSOCIATES, LLC
                              Counsel to the Official Committee of
                              Unsecured Creditors of Clare Oaks
                              155 N. Wacker Drive, Suite 1910
                              Chicago, IL 60606
                              Main:    (312) 228-4990
                              Fax:     (312) 228-4988
                              Email:    nwolf@nealwolflaw.com
                                           dgramlich@nealwolflaw.com