IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 11-48903 |
| | ) | |
| CLARE OAKS, | ) | Hon. Pamela S. Hollis |
| | ) | Chapter 11 |
| Debtor. | ) | |

**NOTICE OF HEARING ON THIRD AND FINAL APPLICATION FOR ALLOWANCE
AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES
OF ALVAREZ & MARSAL HEALTHCARE INDUSTRY GROUP LLC AND PAUL RUNDELL,
DEBTOR'S CHIEF RESTRUCTURING OFFICER AND
CERTAIN ADDITIONAL PERSONNEL**

TO:      See Attached Service List

PLEASE TAKE NOTICE that on **February 14, 2013 at 10:00 a.m.**, or as soon thereafter as counsel may be heard, I shall appear before the Honorable Pamela S. Hollis or any judge sitting in her stead in Courtroom 644 in the United States Bankruptcy Court, 219 S. Dearborn Street, Chicago, Illinois and shall then and there present the **Third and Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses of Alvarez & Marsal Healthcare Industry Group LLC and Paul Rundell, Debtor's Chief Restructuring Officer and Certain Additional Personnel**, a copy of which is hereby served on you.

Dated: January 24, 2013

ALVAREZ & MARSAL HEALTHCARE INDUSTRY
GROUP LLC

By: /s/ Paul Rundell_____

Paul Rundell, Managing Director
Alvarez & Marsal Healthcare Industry Group
55 W Monroe
Suite 4000
Chicago, IL 60603

Prepared with the assistance of and filed by:

/s/ George R. Mesires_____
George R. Mesires (# 6276952)
Patrick F. Ross (# 6296461)
Ungaretti & Harris LLP
70 W. Madison Street, Suite 3500
Chicago, IL 60602
(312) 977-4400 – phone
(312) 977-4405 – fax
Email:  grmesires@uhlaw.com
            pfross@uhlaw.com

*Counsel for the Reorganized Debtor*

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that on January 24, 2013, I electronically filed the **Third and Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses of Alvarez & Marsal Healthcare Industry Group LLC and Paul Rundell, Debtor's Chief Restructuring Officer and Certain Additional Personnel** with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the following individuals:

*See Attached Service List*

and I hereby certify that on January 24, 2013, I caused to be sent by first class U.S. mail the **Third and Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses of Alvarez & Marsal Healthcare Industry Group LLC and Paul Rundell, Debtor's Chief Restructuring Officer and Certain Additional Personnel** to the following non-registered individuals:

MB Financial Bank, NA
6111 N. River Rd., 8th Floor
Rosemont, IL 60018
Attn: Trust Operations Dept.
Ursula Fernandez, Customer Svc Mgr
Henry Wessel, VP, Managed Assets

/s/ George R. Mesires

## SERVICE LIST

| | | |
|---|---|---|
| **Jordan Bailey**<br>Haynes and Boone, LLP<br>2323 Victory Avenue<br>Suite 700<br>Dallas, TX 75219<br>214.651.5000<br>*Assigned: 10/22/2012*<br>*LEAD ATTORNEY* | representing | **Sysco Chicago Inc.**<br>*(Creditor)* |
| **Elizabeth A. Bates**<br>Springer, Brown, Covey, Gaertner &<br>Davis<br>400 South County Farm Road<br>Ste. 330<br>Wheaton, IL 60187<br>630-510-0000<br>630-510-0004 (fax)<br>ebates@springerbrown.com<br>*Assigned: 06/22/2012* | representing | **Elizabeth A Bates**<br>Springer, Brown, Covey, Gaertner and<br>Dav<br>*(Attorney)* |

**Timothy W Brink**
DLA Piper US LLP
203 N. LaSalle Street, Suite 1900
Chicago, IL 60601
312- 368-6802
312 251-2170 (fax)
timothy.brink@dlapiper.com
*Assigned: 12/06/2011*

representing

**The Sisters of St. Joseph of the Third Order of St. Francis, Inc.**
*(Creditor)*

**Rosanne Ciambrone**
Duane Morris LLP
190 South LaSalle Street Suite 3700
Chicago, IL 60603
312 499-6700
312 499-6701 (fax)
rciambrone@duanemorris.com
*Assigned: 09/11/2012*

representing

**Sovereign Bank**
*(Creditor)*

**Roberto A Dall'Asta**
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, IL 60606
(312) - 9847517
rdallasta@mwe.com
*Assigned: 04/18/2012*

representing

**B.C. Ziegler and Company**
*(Other Prof.)*

**Bruce Dopke**
P O Box 681246
Schaumburg, IL 60168
847 524-4811
847 524-4131 (fax)
bruce@dopkelaw.com
*Assigned: 04/20/2012*

representing

**Friendship Senior Options, NFP**
*(Interested Party)*

**Robert M Fishman**
Shaw Fishman Glantz & Towbin LLC
321 N Clark Street
Suite 800
Chicago, IL 60654
312 666-2842
312 275-0567 (fax)
rfishman@shawfishman.com
*Assigned: 12/07/2011*

representing

**Wells Fargo Bank, National Association**
*(Creditor)*

**Ronald E Gold**
Frost Brown Todd LLC
201 E Fifth St
Cincinnati, OH 45202
513-651-6156
rgold@fbtlaw.com
*Assigned: 07/10/2012*

representing

**ER Propco Co., LLC**
*(Interested Party)*

**Emily S. Gottlieb**
The Garden City Group, Inc.
190 S. LaSalle Street
Suite 1520
Chicago, IL 60603
312-499-6900
emily_gottlieb@gardencitygroup.com
*Assigned: 12/07/2011*

representing

**The Garden City Group, Inc.**
*(Other Prof.)*

**Joshua D Greene**
Springer, Brown, Covey, Gaertner &
Davis
400 South County Farm Rd.
Suite330
Wheaton, IL 60187
630-510-0000
jgreene@springerbrown.com
*Assigned: 06/22/2012*

representing

**Joshua D Greene**
*(Attorney)*

**Allen J Guon**
Shaw Fishman Glantz & Towbin LLC
321 N. Clark St., Suite 800
Chicago, Il 60610
312- 541-0151
(312) 980-3888 (fax)
aguon@shawfishman.com
*Assigned: 12/08/2011*

representing

**Wells Fargo Bank, National
Association**
*(Creditor)*

**Robert A Guy, JR**
*Assigned: 07/27/2012*
*LEAD ATTORNEY*

representing

**ER Propco Co., LLC**
*(Interested Party)*

**James R Irving**
DLA Piper LLP US
203 North LaSalle Street
Suite 1900
Chicago, IL 60611
312 368-4000
jim.irving@dlapiper.com
*Assigned: 12/06/2011*

representing

**The Sisters of St. Joseph of the Third
Order of St. Francis, Inc.**
*(Creditor)*

**Robert J. Labate**
Holland & Knight LLP
131 S. Dearborn Street
30th Floor
Chicago, IL 60603                  representing   **Senior Care Development LLC**
312 263-3600 Ext. 65751                          *(Creditor)*
312 578-6666 (fax)
robert.labate@hklaw.com
*Assigned: 01/05/2012*

**Phillip A Martin**
Fultz Maddox Hovious & Dickens
PLC
101 South Fifth St., 27th Floor    representing   **Pharmerica Drug Systems, LLC**
Louisville, KY 40202                             *(Creditor)*
(502) - 5882000
pmartin@fmhd.com
*Assigned: 12/12/2011*

**George R Mesires**
Ungaretti & Harris LLP
Three First National Plaza                       **Clare Oaks**
70 W. Madison Street, Suite 3500                 801 W Bartlett Rd
Chicago, IL 60602                  representing   Bartlett, IL 60103
312 977-4151                                     *(Debtor)*
312 977-4405 (fax)
grmesires@uhlaw.com
*Assigned: 12/05/2011*

**Kathleen Noga**
McMahan & Sigunick, Ltd.
412 S. Wells St., 6th Fl.
Chicago, IL 60607                  representing   **Sysco Chicago Inc.**
(312) - 9131174                                  *(Creditor)*
kathleen@mcmahanlaw.com
*Assigned: 10/17/2012*

**Jonathan N Rogers**
Stitt, Klein, Daday, Aretos, et al
2550 W. Golf Rd.
Suite 250                                        **James F Jackson**
Rolling Meadows, IL 60008                        4020 Meadow Drive
847 590-8700 Ext. 110              representing   St. Charles, IL 60175
847 590-9825 (fax)                               *(Creditor)*
jrogers@skdaglaw.com
*Assigned: 01/11/2013*

| | | |
|---|---|---|
| **Jeffrey Snell**<br>Office of the United States Trustee<br>219 S. Dearborn St., Room 873<br>Chicago, IL 60604<br>(312) - 886-0890<br>jeffrey.snell@usdoj.gov<br>*Assigned: 01/20/2012* | representing | **Patrick S Layng**<br>Office of the U.S. Trustee, Region 11<br>219 S Dearborn St<br>Room 873<br>Chicago, IL 60604<br>312-886-5785<br>USTPRegion11.ES.ECF@usdoj.gov<br>*(U.S. Trustee)* |
| **Thomas E Springer**<br>Springer, Brown, Covey, Gaertner &<br>Davis<br>400 S. County Farm Road<br>Suite 330<br>Wheaton, IL 60187<br>630-510-0000<br>630-510-0004 (fax)<br>tspringer@springerbrown.com<br>*Assigned: 06/22/2012* | representing | **Thomas E. Springer**<br>d<br>400 S. County Farm Road<br>Suite 330<br>Wheaton, IL 60187<br>*(Attorney)* |
| **Marc N Swanson**<br>Miller Canfield Paddocki & Stone,<br>PLC<br>150 West Jefferson Avenue<br>Suite 2500<br>Detroit, MI 48226<br>*Assigned: 12/20/2012* | representing | **Illinois Finance Authority**<br>*(Interested Party)* |
| *Assigned: 01/08/2013*<br>*LEAD ATTORNEY* | representing | **Illinois Finance Authority**<br>*(Interested Party)* |
| **Jerry L Switzer**<br>Polsinelli Shughart, PC<br>161 N. Clark Ste 4200<br>Chicago, IL 60601<br>312 873-3626<br>312 873-2926 (fax)<br>jswitzer@polsinelli.com<br>*Assigned: 07/19/2012* | representing | **ER Propco Co., LLC**<br>*(Interested Party)* |

**Michael Traison**
Miller, Canfield, Paddock & Stone
PLC
225 W. Washington
Suite 2600                       representing    **Illinois Finance Authority**
Chicago, IL 60606                                *(Interested Party)*
312-927-9669
312-460-4201 (fax)
traison@millercanfield.com
*Assigned: 01/03/2012*

**Adrienne K Walker**
Mintz, Levine, Cohn, Ferris Glovsky
and Popeo, P.C.                                  **Wells Fargo Bank, National**
One Financial Center                             **Association**
Boston, MA 02111                 representing    *(Creditor)*
(617) - 3481612
awalker@mintz.com
*Assigned: 07/22/2012*

**John R Weiss**
Duane Morris LLP
190 South LaSalle Street
Suite 3700
Chicago, IL 60603                representing    **Sovereign Bank**
312 499-0148                                     *(Creditor)*
312 499-6701 (fax)
jrweiss@duanemorris.com
*Assigned: 12/05/2011*


*Assigned: 11/06/2012*                           **Wells Fargo Bank, National**
                                 representing    **Association**
                                                 *(Creditor)*


**Neal L Wolf**
Neal Wolf & Associates, LLC
155 N. Wacker Drive
Suite 1910                                       **The Official Committee of Unsecured**
Chicago, IL 60606                representing    **Creditorsof Clare Oaks**
312-228-4990                                     *(Creditor Committee)*
312-228-4988 (fax)
nwolf@nealwolflaw.com
*Assigned: 12/21/2011*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 11-48903 |
| | ) | |
| CLARE OAKS, | ) | |
| | ) | Hon. Pamela S. Hollis |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | Hearing Date: February 14, 2013 |
| | ) | Hearing Time: 10:00 a.m. |

**THIRD AND FINAL APPLICATION FOR ALLOWANCE AND PAYMENT OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES OF ALVAREZ &
MARSAL HEALTHCARE INDUSTRY GROUP LLC AND PAUL RUNDELL,
DEBTOR'S CHIEF RESTRUCTURING OFFICER AND
CERTAIN ADDITIONAL PERSONNEL**

Alvarez and Marsal Healthcare Industry Group LLC ("A&M"), with Paul Rundell as

Chief Restructuring Officer ("CRO") and certain Additional Personnel (the "Additional

Personnel," and together with the CRO, the "Engagement Personnel") for the above-captioned

reorganized debtor (the "Debtor"), pursuant to sections 330 and 331 of title 11 of the United

States Code (the "Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Local Rule 5082-1 of the Bankruptcy Court for the

Northern District of Illinois (the "Local Rules"), hereby requests the entry of an order allowing

the fees and reimbursement of expenses to A&M on a final basis (the "Third and Final

Application").

Between December 5, 2011 to December 31, 2012 (the "Total Application Period"),

A&M provided 2,851.5 hours of restructuring services to the Debtor with a value of

$1,584,900.00 in fees and incurred $14,181.66 of expenses on behalf of the Debtor. Certain

events have reduced the total amount of fees and expenses incurred by the Debtor. Most notably,

to accommodate the Illinois Finance Authority, which would not approve the issuance of new

bonds to the Debtor's secured creditors unless all professionals first agreed to further discount

their invoices, A&M agreed to voluntarily reduce its total requested fees and expenses by

$200,000.[1]

Accordingly, by this Final Application, A&M seeks entry of an order: (a) allowing and

awarding as reasonable compensation to A&M fees in the amount of $776,027.18[2] for 1,257.3

hours of actual, necessary restructuring services rendered to the Debtors from July 1, 2012 to

December 31, 2012 (the "Third and Final Application Period"); (b) allowing and approving the

reimbursement of A&M's out of pocket costs in the amount of $3,100.03 as actual, necessary

expenses incurred by A&M during the Final Application Period; (c) approving the Debtor's

interim payments to A&M pursuant to the Employment Order (as that capitalized term is defined

herein) totaling $779,127.21 for fees and expenses during the Final Application Period; and (d)

allowing A&M compensation in the amount of $1,376,027.18 and reimbursement of $13,581.73

of expenses on a final basis for services rendered to the Debtor from December 5, 2011 to

December 31, 2012.

---

[1] Additionally, on September 20, 2012, the Court entered its Order on A&M's Second Interim Fee
Application [Dkt. 371], which disallowed $599.93 of A&M's expenses incurred during the Second
Application Period.

[2] In its First Interim Fee Application [Dkt. 202] and Second Interim Fee Application [Dkt. 338], A&M
disclosed that its actual fees for the 1,594.2 hours of services rendered between December 5, 2011 and
June 30, 2012 was $879,750. However, in order to comply with the DIP budget negotiated with the
Prepetition Lenders, A&M limited its request for compensation to $600,000, or $279,750 less than its
actual fees, with an express reservation of A&M's rights to seek the allowance, approval, and payment of
remaining fees in future fee applications. During the time period July 1, 2012 through December 31, 2012
which this Third and Final Application covers, A&M's actual fees for 1,257.3 hours of services rendered
to the Debtor total $705,150. At the end of the case, amounts remained in the DIP budget for A&M's fees
and expenses, which permitted A&M to reduce its previous holdback of fees by $45,249.82 (from
$279,750 to $234,500.18). Therefore, A&M also seeks the allowance, approval, and payment of
compensation totaling $70,877.18 from the First and Second Interim Fee Applications to offset the
remaining DIP budget amount ($45,249.82), as well as its prepetition retainer ($25,627.36), against part
of the fees previously held back in the First and Second Interim Fee Applications ($279,750). Subject to
approval in full of its compensation and reimbursement requested in this Application, A&M has agreed to
voluntarily write-off the balance of actual fees held back: $208,872.82.

In further support of its Third and Final Application, A&M states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the matters raised in this Third Application pursuant to 28 U.S.C. §§ 157 and 1334.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (M).

3.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are Sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Rule 5082-1.

## BACKGROUND

5.      On December 5, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Northern District of Illinois, Eastern Division.

6.      On November 15, 2012, the Court entered an Order [Dkt. 437] (the "Confirmation Order") confirming the Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated September 13, 2012 [Dkt. 357] (the "Plan").

7.      As provided in the Confirmation Order, the Plan became effective on December 31, 2012 (the "Effective Date") upon the satisfaction of certain conditions precedent.

## The Debtor's Employment of A&M

8.      On January 6, 2012, the Debtor filed its *Motion to Authorize Debtor to Retain A&M and Designate Paul Rundell as Chief Restructuring Officer* [Dkt. 92]. The Engagement Letter attached to the motion provided that the Debtor would pay for the services of the CRO and the Additional Personnel at their customary hourly billing rates based upon position held, as well as receive reimbursement for reasonable and necessary expenses.

9.     On January 20, 2012, the Court entered its Order Granting the Debtor's Motion to Employ [Dkt. 112] (the "Employment Order") that authorized the Debtor to retain A&M pursuant to the terms of the Engagement Letter.

**The Debtor's Interim Payments to A&M and Rundell**

10.     On or about November 14, 2011, A&M received $190,000 as a retainer (the "Retainer") in connection with preparing for and conducting the filing of this case, as required by the Engagement Letter. A&M applied the Retainer to its fees and expenses for services performed for the Debtor before the Petition Date (total: $164,372.64). Accordingly, the balance of the Retainer as of the Petition Date was approximately $25,627.36. A&M proposes to offset its Retainer against its voluntary write-off reducing the voluntary write-off to $208,872.82.

11.     The Employment Order permitted A&M to submit on a monthly basis detailed statements of services rendered and expenses incurred by A&M for the prior monthly period (each a "Monthly Fee Statement"). After notice to required parties and the expiration of a 10-day period without objections, the Employment Order authorized the Debtor to pay 100% of A&M's fees and expenses requested in a Monthly Fee Statement.

12.     On April 18, 2012, A&M submitted its First Fee Application for the period December 5, 2011 to February 29, 2012 (the "First Application Period"). On May 10, 2012 the Court granted the application (a) allowing A&M's fees in the amount of $290,000.00; (b) allowing reimbursement of A&M's  expenses in the amount of $1,355.92; and (c) approving the Debtor's interim payments to A&M totaling $291,355.92 pursuant to the Employment Order.

13.     On August 30, 2012, A&M submitted its Second Fee Application for the period March 1, 2012 to June 30, 2012 (the "Second Application Period"). On September 21, 2012 the Court granted the application (a) allowing A&M's fees in the amount of $310,000.00; (b)

allowing the reimbursement of A&M's expenses in the amount of $9,125.78; and (c) approving

the Debtor's interim payments to A&M totaling $319,125.78 pursuant to the Employment Order.

14.     Following the approval of the Second Fee Application, A&M has submitted six

monthly statements for the periods July 1-31, 2012, August 1-31, 2012, September 1-30, 2012,

October 1-31, 2012, November 1-30, 2012, and December 1-31, 2012 to the required parties and

has not received any objections. Accordingly, as of the filing date of this Third and Final

Application, A&M has received 100% of its requested compensation and reimbursement of

expenses – subject to the restrictions of the DIP budget negotiated with the Pre-Petition Lenders

– in each of the six monthly fee statements, totaling $705,150.

## SERVICES PERFORMED BY A&M

15.     As required by Local Rule 5082-1(B), A&M provides the following Narrative

Summary of the services rendered (organized by task code) by the Engagement Personnel during

the Third and Final Application Period.

16.     L.R. 5082-1(B)(1)(a), (d), and (e) – Summary lists are attached as **Exhibit A** and

**Exhibit B** that display (i) A&M's principal activities and total compensation requested in

connection with each activity, (ii) the name and  position of each person who performed work on

each activity, the approximate hours worked, and total compensation sought for each person's

work on each activity, and (iii) the hourly rate of each professional, the total number of hours

expended by each person, and the total compensation sought for each.

17.     L.R. 5082-1(B)(1)(b) – During the Third and Final Application Period, A&M kept

detailed records of its hours and fees by person and by task code. Detailed daily time entries

describing the services performed, hours worked, and compensation sought for each professional

during the Third and Final Application Period are attached as **Exhibit C**. Additionally, a separate description of each of the principal activities performed follows:

### A.  Accounting/Auditing

Under this task code, A&M primarily managed and reviewed the Debtor's financial statements and worked with its auditors to complete the 2011 and 2012 audits as well as continuing work on the certificate of need audit.  The 2011 and 2012 audits were necessary to the successful marketing and sale of assets to potential buyers.  Multiple potential residents have requested the most recent audit as a condition to moving into Clare oaks and paying a significant entrance fee.  Because residents often request an audit from a retirement home as a condition to paying a significant entrance fee, A&M believed it was in the Debtor's best interest to finish the audit and provide these financials to all potential residents. During the Application Period, A&M spent a total of 2.6 hours providing services under this task code for total fees of $1,690.00.

### B.  Asset Disposition

In this fee application period, the Debtor spent less time on the sales process as it focused its time and energy on executing a bond exchange process.  In order to keep all options available as well as to protect the residents' interests, A&M kept the sales process going as a viable option in the event the bond exchange could not be completed.  During the beginning of this Final Application Period, A&M worked with the Debtor to select a potential Stalking Horse bidder and negotiated three different Asset Purchase Agreements with different potential parties, including putting together complete statements and schedules of all assets, liabilities and contracts, and negotiated terms with the various parties to maximize the sales price and the return to the creditors.  Although the Debtor ended up executing a bond exchange, the sales process helped all constituencies understand the Debtor's value from a sales perspective, which helped bring all the parties together to complete the bond exchange, which was ultimately the highest and best result for the various creditors. During the Application Period, A&M spent a total of 38.8 hours providing services under this task code for total fees of $20,360.00.

### C.  Business Analysis & Operations

A&M worked with the Debtor's management and employees to develop and implement strategies to resolve business process and operations issues associated with the restructuring. Tasks in this category included performing financial analyses of liquidity, management, marketing, and insurance payment processes; collection and analysis meetings with the Debtor's management and employees; and resolution of issues related to the treasury management system, vendor payments and other business issues.  Through A&M's efforts, the Debtor, at the time this Third Application was filed, is significantly ahead of budget and the Debtor was able to take a DIP budget that was to be fully drawn by June/July 2012 and allow for the DIP to be extended until December 2012.  This six months of additional runway was imperative for the Debtor to be able to execute its bond exchange and as a result generate a significant higher recovery to their creditors.  The additional runway was possible through A&M's efforts in generating operational efficiencies and improving the collection processes, working with potential interested new residents to explain the entrance fee escrow, and many other operational improvements created

under A&M's guidance. During the Application Period, A&M spent a total of 196.0 hours providing services under this task code for total fees of $104,600.00.

### D. CRO Governance

A&M worked on various chief restructuring officer ("CRO") activities, including supporting the CRO, managing the Debtor's business, and performing other tasks necessary to the restructuring. Some of these tasks included attending meetings and/or participating in calls regarding monthly operating reports sent to the U.S. Trustee's Office, preparing for court hearings at which the CRO's presence and/or testimony might be required, ensuring that all legal documents were timely-filed, and meeting with the Debtor's management with respect to how financial, communication, operations, and other issues might impact the restructuring process. A&M attended many telephonic and in-person meetings with the board of directors and separate multiple meetings with residents and employees to explain A&M's fiduciary duty to the Debtor's creditors, including maximizing value. A&M also ensured proper controls were implemented regarding bank accounts, cash transfers, sale disposition process, bond exchange process and other financial and legal matters required by orders of this Court and the U.S. Trustee's requirements for chapter 11 debtors in possession. During the Application Period, A&M spent a total of 35.8 providing services under this task code for total fees of $23,270.00.

### E. Cash Management

A&M managed the Debtor's daily, weekly, and monthly cash flow and liquidity related to this chapter 11 case. Specific tasks under this category included approving and reviewing all disbursements; developing daily, weekly, and monthly cash flow forecasts; improving and monitoring cash and collection of initial escrow deposits ("IEDs"); daily and weekly cash flow reporting and variance analyses; resolving payments, collections, and treasury issues; and analyzing the liquidity impact of bankruptcy issues (e.g., contract assumption) on liquidity. Due to the complicated nature of the Debtor's liabilities and legal structure, as well as the number of secured creditors, Committee, and Debtor-professionals involved in this case, a significant amount of time was required of A&M on cash management tasks to ensure that all creditors were comfortable with A&M's ability to control and preserve liquidity and accurately project the Debtor's cash needs. During the Application Period, A&M spent a total of 71.9 hours providing services under this task code for total fees of $35,590.00.

### F. Communications

A&M worked with the Debtor's management and board of directors to develop effective communications content and strategy to share with various constituencies regarding the restructuring process, and reviewed various press releases and outside communications to manage the flow of public information. A&M meets with management and the residents several times each month to discuss the restructuring and sales process in order to assure all parties that the process is moving forward despite false rumors to the contrary circulated by competitors and other adverse parties. Despite the Debtor's bankruptcy case, the Debtor's effective communications resulted in six new residents moving into independent units on the Clare Oaks Campus, which compared to zero projected in the DIP budget. The elongated bankruptcy has added complexity as A&M needed to be able to layout the strategic direction that Clare Oaks

was heading and provide comfort and assurance that the residents' lives and financial well-being would not be impacted by the delayed emergence from Chapter 11.  In addition, census across the Debtor's property has remained steady despite the difficult bankruptcy environment, and the Debtor has experienced low employee turnover, all of which has generated significant value to the estate. During the Application Period, A&M spent a total of 44.3 hours providing services under this task code for total fees of $24,205.00.

### G.  Contract / Lease Assume / Reject

A&M worked with the Debtor's management and employees to develop a list of executory contracts and unexpired leases to be assumed and assigned in connection with the Debtor's bankruptcy case, as part of the Plan of Reorganization and the bond exchange process. Tasks performed with respect to this category included cataloging and categorizing all of the Debtor's contracts and leases; researching and reviewing all contracts and leases and making an "assume" or "reject" recommendation to the Debtor; negotiating with vendors on cure payments; and preparing and reviewing various contract and lease amendments. During the Application Period, A&M spent a total of 32.4 hours providing services under this task code for total fees of $16,200.00.

### H.  DIP Financing and Cash Collateral

Under this task code, A&M assisted the Debtor in securing the use of cash collateral and debtor in possession financing.  The major tasks included analyzing and determining projected cash needs during the pendency of this bankruptcy case, developing a cash collateral use budget, weekly reporting on actual budget results, updating the budget on a weekly and monthly basis, telephone calls with the prepetition secured creditors and their advisors regarding cash collateral and debtor in possession financing issues, liquidation analysis and wind-down analysis, and reviewing and negotiating various post-petition credit facility documents. Various amendments have been made to the original DIP budget to keep open the possibility of a bond restructuring while at the same time maintaining the option of the sales process.  Due to the bond exchange process, it required a several negotiations with the DIP lender in order to extend the DIP financing maturity date.  The Pre-Petition Bondholders and the DIP Lenders required various financial analyses and reports on the DIP loan and liquidity, which A&M prepared on the Debtor's behalf. During the Application Period, A&M spent a total of 103.5 hours providing services under this task code for total fees of $52,110.00.

### I.  Plan & Disclosure Statement

A&M was able to work with their creditors during this fee application period in order to complete a bond exchange.  The bond exchange process was very complicated and required the need for the Debtor to have a Plan of Reorganization ("POR") and Disclosure Statement ("DS").  Although the original POR and DS were drafted by the Pre-Petition Lenders, all of the projections and analyses were led by A&M working with the various parties.  In fact, the POR and DS included Paul Rundell's affidavit regarding feasibility and all parties relied upon A&M in order to confirm the POR.  Throughout this fee application period, A&M was requested to review and analyze dozens of scenarios for the Pre-Petition Lenders, the Debtor and the Congregation, which ultimately lowered the total cost to the estate as it was more efficient and

less expensive to rely upon one firm rather than multiple firms. Without A&M's involvement in the bond exchange process, the Pre-Petition Lenders would not have been able to generate financials to support the POR, which ultimately led to a significantly higher recovery to all creditors. During the Application Period, A&M spent a total of 98.4 hours providing services under this task code for total fees of $57,150.00.

### J.  Operating Reports, Schedules and Statements for Trustee

A&M prepared and filed monthly operating reports during the Third and Final Application Period.  Due to the complexity of the Debtor's business and capital structure, a significant amount of time was spent ensuring that the reports were filed correctly and on-time and to ensure that various creditors had accurate information. During the Application Period, A&M spent a total of 69.8 hours providing services under this task code for total fees of $34,900.00.

### K.  Testimony & Litigation Support

A&M supported and supplied the Debtor's counsel throughout the Third and Final Application Period with information requested by various constituencies. A&M also helped the Debtor's counsel prepare for court hearings, including DIP extension hearing, POR and DS hearing, fee application hearing, and assisted in negotiations with respect to resolving objections to various relief requested by the Debtor during the Third and Final Application Period.  The CRO prepared to testify at several hearings during the period on numerous issues.  All of these issues required intensive negotiations with the Pre-Petition Bondholders and most of the issues were not solved until shortly before the hearing or, in some cases, during a break at the hearing. During the Application Period, A&M spent a total of 7.3 hours providing services under this task code for total fees of $4,745.00.

### L.  Various requests from Creditors and Unsecured Creditors & Residents' Committee

A&M worked to provide requested data and analyses to the legal and financial advisors of the various constituencies in these cases.  The data and analyses requests included recurring data requests and analyses in addition to those that were ad hoc or one-time in nature.  Recurring weekly, monthly and quarterly requests included items related to liquidity, cash flow, marketing spending, settlement activity, reservation activity, and financial performance. During the Application Period, A&M spent a total of 5.7 hours providing services under this task code for total fees of $3,705.00.

### M. Bond Exchange Analysis

During the Third and Final fee application period, the Debtor mostly pursued a bond exchange and restructuring path in an attempt to maximize value. Work in this task code was not contemplated in the original DIP budget projections and cash collateral order, but at the request of the creditors, A&M has spent hundreds of hours working on this scenario. Work in this task code have included, among others, working on an updated financial budget model and 45-year restructuring projection, negotiating and working with various parties including the banks, bondholders, investment bankers, landlord and their various attorneys, to negotiate and size a restructuring scenarios that is acceptable to all parties which maximizes return to the creditors

while at the same time is financially feasible to the Debtor.  Dozens of drafts and scenarios, at the request of various constituencies, have been designed during the application period, all of which required numerous meetings with both creditor parties, the Board of Directors of the Debtor, the Congregation, Illinois Financing Authority and the various lawyers involved with the bond exchange.  Due to the complexity of the debt structure and at the request of the Illinois Financing Authority, the Debtor had to retain a firm to perform a feasibility analysis and provide an independent report.   This led to significant work by A&M as they had to provide all assumptions, support behind the assumptions and a lot of financial information, which led to an enormous undertaking by A&M.  In addition, all of the various term sheets negotiated, which were the basis for the POR and DS, were negotiated by A&M.  Finally, A&M was relied upon by all constituencies to close the transaction by understanding all of the sources and uses of the various funds as well as the taxable and tax exempt issues that increased the complexity of the bond exchange process.  Ultimately, this complicated and time consuming process led to a substantially higher recovery for the creditors.  A&M estimates that their efforts enhanced the creditors' recovery by as much as $65 million by undertaking this process. During the Application Period, A&M spent a total of 550.8 hours providing services under this task code for total fees of $326,265.00.

22.      L.R. 5082-1(B)(1)(c) – No time or compensation is being requested in connection with the preparation of the First, Second or Third and Final Application.

23.      L.R. 5082-1(B)(1)(f) – Pursuant to the *Order Granting A&M's First Interim Fee Application* [Dkt. 240], A&M was awarded and paid compensation and reimbursed expenses totaling $291,355.92 for services rendered during the First Application Period. Pursuant to the *Order on A&M's Second Interim Fee Application* [Dkt. 371], A&M was awarded and paid compensation and reimbursed expenses totaling $319,125.78 for services rendered during the Second Application Period. Pursuant to the Employment Order, A&M has received Interim Payments during the Final Application Period totaling $753,499.85.

24.      L.R. 5082-1(B)(1)(g) – A&M seeks the allowance and reimbursement of its out of pocket expenses totaling $3,100.03 as actual, necessary expenses. A summary of the A&M's expenses is attached as **Exhibit D** with a detailed listing found on **Exhibit E**. All of the expenses for which A&M seeks reimbursement were actually incurred by A&M, were necessary for the proper representation of the Debtor, and were specifically allocated to the Debtor's case. None of

the expenses represents general overhead or other expenses unrelated to this case. A&M has not added any additional charges, and the expenses reflect A&M's actual out-of-pocket costs.

25. <u>L.R. 5082-1(B)(2)</u> – By this Third and Final Application, A&M seeks the allowance of its compensation and reimbursement of expenses. As discussed above, the Debtor has previously made interim payments to A&M totaling $779,127.21 pursuant to the Employment Order. The source of Debtor's payments to A&M was the carve-out in the budget relating to the Debtor's post-petition DIP financing and a $25,627.36 pre-petition retainer.

**DETAILED STATEMENT OF SERVICES**
(L.R. 5082-1(C))

26. The Bankruptcy Rules require "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate [to] file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a). The Local Rules permit "[t]he applicant's detailed time records [to] constitute the detailed statement required by Fed. R. Bankr. P. 2016(a)." Local R. 5082-1(C).

27. The time detail attached as **Exhibit C** complies with the requirements of Bankruptcy Rule 2016(a) and Local Rule 5082-1(C), because the time detail is divided by tasks and activities that match the narrative descriptions in this Final Application, and all time entries list the date of the work, the name of the person performing the work, a brief description of the nature of the work, the time expended on the work in increments of tenth of an hour, and the fee charged for the work described in the entry.

**SUMMARY OF THE FIRST AND SECOND APPLICATION PERIODS**

28. By this Final Application, A&M also seeks approval on a final basis of all compensation ($600,000.00) and reimbursement of expenses ($10,481.70) previously awarded to

A&M on an interim basis during the First and Second Application Periods. A&M used the same

task codes during the First, Second, and Third and Final Application Periods. Summary lists for

the Total Application period (December 5, 2011 to December 31, 2012) are attached as **Exhibit**

**F** and **Exhibit G**, which display (i) A&M's principal activities and total compensation requested

in connection with each activity, (ii) the name and  position of each person who performed work

on each activity, the approximate hours worked, and total compensation sought for each person's

work on each activity, and (iii) the hourly rate of each professional, the total number of hours

expended by each person, and the total compensation sought for each

29.     In the First Fee Application [Dkt. 202] and Second Fee Application [Dkt. 338],

A&M provided narrative summaries of the principal activities and services rendered on behalf of

the Debtor, which are incorporated by reference. To summarize them herein, some of A&M's

principal activities during the First and Second Application Periods consisted of the following:

a.     Led an asset disposition process that resulted in a stalking horse asset
purchase agreement;

b.     Led all communications with residents, vendors, bondholders,
congregation and Debtor's Board;

c.     Successfully negotiated and raised a $6 million DIP financing and
obtained several extensions which was necessary for the Debtor to
consummate its bond exchange;

d.     Implemented operational improvements to improve the cash flow and
although the Debtor time to restructure itself;

e.     Analyzed the Debtor's budgeted numbers and developed a bond structure
that was used as the basis for the Plan of Reorganization;

f.     Led the negotiations with various parties on a restructuring term sheet,
which was the basis for the Plan of Reorganization;

g.     Worked with prospective residents to move into the Debtor, which
generate almost $1.5M of cash;

h.      Worked with Management of the Debtor to improve quality of operations, which ultimately improved the skilled nursing rating from a two star to a four star;

i.      Worked with Management to complete four years of audits, which was necessary for prospective residents as well for the bond exchange;

j.      Reported to the DIP lender on a weekly basis and managed cash flows to be better than budget throughout the entire bankruptcy period;

k.      Testified successfully throughout the case in order to provide clarity and direction to the various constituencies; and

l.      Led all constituencies through the bankruptcy process.

## BASIS FOR RELIEF

30.      Pursuant to sections 330 and 331 of the Bankruptcy Code and the generally applicable criteria with respect to time, nature, extent, and value of services performed, all of A&M's services are compensable and the compensation requested is fair and reasonable. All of the restructuring services performed by A&M during the Third and Final Application Period were required for the proper representation of the Debtor in this bankruptcy case.

31.      The compensation requested by A&M is fair and reasonable. A&M's hourly rates are less than or comparable to rates charged by other financial advisors having the same amount of experience, expertise, and standing for similar services in comparable Chapter 11 cases in the Northern District of Illinois.

32.      A&M has at all times acted specifically in the best interest of the Debtor and its estate. All services performed and all expenses incurred by A&M were reasonable and necessary for the preservation of the Debtor's bankruptcy estate.

33.      A&M has not entered into an agreement or understanding of any kind, expressed or implied, with any entity to share in its compensation received or to be received by A&M for services rendered to the Debtor in this case.

34.    This is A&M's final application for an award of compensation and reimbursement of expenses. Accordingly, A&M may present this Final Application pursuant to Section 330 of the Bankruptcy Code.

## LIMITED NOTICE

35.    On January 22, 2013, the Court entered its *Order Granting Debtor's Motion To Limit Service of Professionals Final Fee Applications* [Dkt. 470], which requires all parties and professionals filing final fee applications to serve a full copy of the application on the entire Master Service List but excuses parties and professionals from serving detailed notices of hearing of each application to all creditors who are not on the Master Service List.

36.    Accordingly, A&M has caused copies of this Final Application to be provided by CM/ECF or first class U.S. mail to (a) the Office of the United States Trustee; (b) Neal Wolf & Associates, LLC, counsel to the Creditors' Committee; (c) Senior Care Development, LLC, the Debtor's post-petition DIP Lender; (d) Mintz Levin Cohn Ferris Glovsky and Popeo, PC, counsel to Wells Fargo Bank, National Association, in its capacity as Master Trustee under the Master Indenture; (e) Duane Morris, counsel to secured lender Sovereign Bank; (f) MB Financial Bank; and (g) those persons who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002 (collectively, the "Master Service List"). A&M submits that notice of the Final Application is sufficient under the circumstances and that no further notice is required.

WHEREFORE, Alvarez & Marsal Healthcare Industry Group LLC respectfully requests that this Court enter an order: (a) granting the relief requested in the Third and Final Application; (b) allowing A&M's fees in the amount of $776,027.18 as reasonable compensation for 1,257.30 hours of actual, necessary restructuring services rendered to the Debtor between July 1, 2012 and

December 31, 2012; (c) allowing A&M's out of pocket costs in the amount of $3,100.03 as actual, necessary expenses incurred in connection with the services rendered to the Debtor between July 1, 2012 and December 31, 2012; (d) approving the Debtor's interim payments to A&M totaling $779,127.21 pursuant to the Employment Order, which represents A&M's allowed compensation and the reimbursement of A&M's allowed expenses; (e) allowing A&M compensation in the amount of $1,376,027.18 and reimbursement of $13,581.73 of expenses on a final basis for services rendered to the Debtor from December 5, 2011 to December 31, 2012; and (f) granting such other relief as this Court deems just and proper.

Respectfully submitted,

Dated: January 24, 2013

ALVAREZ & MARSAL HEALTHCARE
INDUSTRY GROUP LLC

By: /s/ Paul Rundell

Paul Rundell, Managing Director
Alvarez & Marsal Healthcare Industry Group
55 W Monroe
Suite 4000
Chicago, IL 60603

Prepared with the assistance of and filed by:

/s/ George R. Mesires
George R. Mesires (# 6276952)
Patrick F. Ross (# 6296461)
Ungaretti & Harris LLP
70 W. Madison Street, Suite 3500
Chicago, IL 60602
(312) 977-4400 – phone
(312) 977-4405 – fax
Email: grmesires@uhlaw.com
        pfross@uhlaw.com

*Counsel for the Reorganized Debtor*