IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 11-48903 |
| | ) | |
| CLARE OAKS, | ) | Hon. Pamela S. Hollis |
| | ) | Chapter 11 |
| Debtor. | ) | |

**NOTICE OF HEARING ON FINAL APPLICATION FOR ALLOWANCE AND
PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF
CLIFTONLARSONALLEN LLP, THE DEBTOR'S ACCOUNTANTS**

TO:     See Attached Service List

PLEASE TAKE NOTICE that on **February 14, 2013 at 10:00 a.m.**, or as soon thereafter as counsel may be heard, I shall appear before the Honorable Pamela S. Hollis or any judge sitting in her stead in Courtroom 644 in the United States Bankruptcy Court, 219 S. Dearborn Street, Chicago, Illinois and shall then and there present the **Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses of CliftonLarsonAllen LLP, the Debtor's Accountants** (the "Application"), a copy of which is hereby served on you.

Dated: January 24, 2013

CLIFTONLARSONALLEN LLP

By: /s/ Chad Kunze

Chad Kunze, Partner
CliftonLarsonAllen LLP
600 Washington Avenue, Suite 1800
St. Louis, MO 63101-1312
(314) 925-4300 – phone
(314) 925-4350 – fax

Prepared with the assistance of and filed by:

/s/ George R. Mesires
George R. Mesires (# 6276952)
Patrick F. Ross (# 6296461)
Ungaretti & Harris LLP
70 W. Madison Street, Suite 3500
Chicago, IL 60602
(312) 977-4400 – phone
(312) 977-4405 – fax
Email:  grmesires@uhlaw.com
           pfross@uhlaw.com

*Counsel for the Reorganized Debtor*

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that on January 24, 2013, I electronically filed the **Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses of CliftonLarsonAllen LLP, the Debtor's Accountants** with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the following individuals:

*See Attached Service List*

and I hereby certify that on January 24, 2013, I caused to be sent by first class U.S. mail the **Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses of CliftonLarsonAllen LLP, the Debtor's Accountants** to the following non-registered individuals:

MB Financial Bank, NA
6111 N. River Rd., 8th Floor
Rosemont, IL 60018
Attn: Trust Operations Dept.
Ursula Fernandez, Customer Svc Mgr
Henry Wessel, VP, Managed Assets

/s/ George R. Mesires

## SERVICE LIST

| | | |
|---|---|---|
| **Jordan Bailey**<br>Haynes and Boone, LLP<br>2323 Victory Avenue<br>Suite 700<br>Dallas, TX 75219<br>214.651.5000<br>*Assigned: 10/22/2012*<br>*LEAD ATTORNEY* | representing | **Sysco Chicago Inc.**<br>*(Creditor)* |
| **Elizabeth A. Bates**<br>Springer, Brown, Covey, Gaertner &<br>Davis<br>400 South County Farm Road<br>Ste. 330<br>Wheaton, IL 60187<br>630-510-0000<br>630-510-0004 (fax)<br>ebates@springerbrown.com<br>*Assigned: 06/22/2012* | representing | **Elizabeth A Bates**<br>Springer, Brown, Covey, Gaertner and<br>Dav<br>*(Attorney)* |

**Timothy W Brink**
DLA Piper US LLP
203 N. LaSalle Street, Suite 1900
Chicago, IL 60601
312- 368-6802
312 251-2170 (fax)
timothy.brink@dlapiper.com
*Assigned: 12/06/2011*

representing   **The Sisters of St. Joseph of the Third
Order of St. Francis, Inc.**
*(Creditor)*

**Rosanne Ciambrone**
Duane Morris LLP
190 South LaSalle Street Suite 3700
Chicago, IL 60603
312 499-6700
312 499-6701 (fax)
rciambrone@duanemorris.com
*Assigned: 09/11/2012*

representing   **Sovereign Bank**
*(Creditor)*

**Roberto A Dall'Asta**
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, IL 60606
(312) - 9847517
rdallasta@mwe.com
*Assigned: 04/18/2012*

representing   **B.C. Ziegler and Company**
*(Other Prof.)*

**Bruce Dopke**
P O Box 681246
Schaumburg, IL 60168
847 524-4811
847 524-4131 (fax)
bruce@dopkelaw.com
*Assigned: 04/20/2012*

representing   **Friendship Senior Options, NFP**
*(Interested Party)*

**Robert M Fishman**
Shaw Fishman Glantz & Towbin LLC
321 N Clark Street
Suite 800
Chicago, IL 60654
312 666-2842
312 275-0567 (fax)
rfishman@shawfishman.com
*Assigned: 12/07/2011*

representing   **Wells Fargo Bank, National
Association**
*(Creditor)*

**Ronald E Gold**
Frost Brown Todd LLC
201 E Fifth St
Cincinnati, OH 45202
513-651-6156
rgold@fbtlaw.com
*Assigned: 07/10/2012*

representing

**ER Propco Co., LLC**
*(Interested Party)*

**Emily S. Gottlieb**
The Garden City Group, Inc.
190 S. LaSalle Street
Suite 1520
Chicago, IL 60603
312-499-6900
emily_gottlieb@gardencitygroup.com
*Assigned: 12/07/2011*

representing

**The Garden City Group, Inc.**
*(Other Prof.)*

**Joshua D Greene**
Springer, Brown, Covey, Gaertner &
Davis
400 South County Farm Rd.
Suite330
Wheaton, IL 60187
630-510-0000
jgreene@springerbrown.com
*Assigned: 06/22/2012*

representing

**Joshua D Greene**
*(Attorney)*

**Allen J Guon**
Shaw Fishman Glantz & Towbin LLC
321 N. Clark St., Suite 800
Chicago, Il 60610
312- 541-0151
(312) 980-3888 (fax)
aguon@shawfishman.com
*Assigned: 12/08/2011*

representing

**Wells Fargo Bank, National
Association**
*(Creditor)*

**Robert A Guy, JR**
*Assigned: 07/27/2012*
*LEAD ATTORNEY*

representing

**ER Propco Co., LLC**
*(Interested Party)*

**James R Irving**
DLA Piper LLP US
203 North LaSalle Street
Suite 1900
Chicago, IL 60611
312 368-4000
jim.irving@dlapiper.com
*Assigned: 12/06/2011*

representing

**The Sisters of St. Joseph of the Third
Order of St. Francis, Inc.**
*(Creditor)*

**Robert J. Labate**
Holland & Knight LLP
131 S. Dearborn Street
30th Floor
Chicago, IL 60603          representing    **Senior Care Development LLC**
312 263-3600 Ext. 65751                    *(Creditor)*
312 578-6666 (fax)
robert.labate@hklaw.com
*Assigned: 01/05/2012*

**Phillip A Martin**
Fultz Maddox Hovious & Dickens
PLC
101 South Fifth St., 27th Floor            **Pharmerica Drug Systems, LLC**
Louisville, KY 40202       representing    *(Creditor)*
(502) - 5882000
pmartin@fmhd.com
*Assigned: 12/12/2011*

**George R Mesires**
Ungaretti & Harris LLP
Three First National Plaza                 **Clare Oaks**
70 W. Madison Street, Suite 3500           801 W Bartlett Rd
Chicago, IL 60602          representing    Bartlett, IL 60103
312 977-4151                               *(Debtor)*
312 977-4405 (fax)
grmesires@uhlaw.com
*Assigned: 12/05/2011*

**Kathleen Noga**
McMahan & Sigunick, Ltd.
412 S. Wells St., 6th Fl.                  **Sysco Chicago Inc.**
Chicago, IL 60607          representing    *(Creditor)*
(312) - 9131174
kathleen@mcmahanlaw.com
*Assigned: 10/17/2012*

**Jonathan N Rogers**
Stitt, Klein, Daday, Aretos, et al
2550 W. Golf Rd.                           **James F Jackson**
Suite 250                                  4020 Meadow Drive
Rolling Meadows, IL 60008  representing    St. Charles, IL 60175
847 590-8700 Ext. 110                      *(Creditor)*
847 590-9825 (fax)
jrogers@skdaglaw.com
*Assigned: 01/11/2013*

| | | |
|---|---|---|
| **Jeffrey Snell**<br>Office of the United States Trustee<br>219 S. Dearborn St., Room 873<br>Chicago, IL 60604<br>(312) - 886-0890<br>jeffrey.snell@usdoj.gov<br>*Assigned: 01/20/2012* | representing | **Patrick S Layng**<br>Office of the U.S. Trustee, Region 11<br>219 S Dearborn St<br>Room 873<br>Chicago, IL 60604<br>312-886-5785<br>USTPRegion11.ES.ECF@usdoj.gov<br>*(U.S. Trustee)* |
| **Thomas E Springer**<br>Springer, Brown, Covey, Gaertner &<br>Davis<br>400 S. County Farm Road<br>Suite 330<br>Wheaton, IL 60187<br>630-510-0000<br>630-510-0004 (fax)<br>tspringer@springerbrown.com<br>*Assigned: 06/22/2012* | representing | **Thomas E. Springer**<br>d<br>400 S. County Farm Road<br>Suite 330<br>Wheaton, IL 60187<br>*(Attorney)* |
| **Marc N Swanson**<br>Miller Canfield Paddocki & Stone,<br>PLC<br>150 West Jefferson Avenue<br>Suite 2500<br>Detroit, MI 48226<br>*Assigned: 12/20/2012* | representing | **Illinois Finance Authority**<br>*(Interested Party)* |
| *Assigned: 01/08/2013*<br>*LEAD ATTORNEY* | representing | **Illinois Finance Authority**<br>*(Interested Party)* |
| **Jerry L Switzer**<br>Polsinelli Shughart, PC<br>161 N. Clark Ste 4200<br>Chicago, IL 60601<br>312 873-3626<br>312 873-2926 (fax)<br>jswitzer@polsinelli.com<br>*Assigned: 07/19/2012* | representing | **ER Propco Co., LLC**<br>*(Interested Party)* |

**Michael Traison**
Miller, Canfield, Paddock & Stone
PLC
225 W. Washington
Suite 2600                              representing    **Illinois Finance Authority**
Chicago, IL 60606                                      *(Interested Party)*
312-927-9669
312-460-4201 (fax)
traison@millercanfield.com
*Assigned: 01/03/2012*

**Adrienne K Walker**
Mintz, Levine, Cohn, Ferris Glovsky
and Popeo, P.C.                                       **Wells Fargo Bank, National**
One Financial Center                   representing    **Association**
Boston, MA 02111                                       *(Creditor)*
(617) - 3481612
awalker@mintz.com
*Assigned: 07/22/2012*

**John R Weiss**
Duane Morris LLP
190 South LaSalle Street
Suite 3700                                            **Sovereign Bank**
Chicago, IL 60603                      representing    *(Creditor)*
312 499-0148
312 499-6701 (fax)
jrweiss@duanemorris.com
*Assigned: 12/05/2011*

*Assigned: 11/06/2012*                                **Wells Fargo Bank, National**
                                       representing    **Association**
                                                       *(Creditor)*

**Neal L Wolf**
Neal Wolf & Associates, LLC
155 N. Wacker Drive
Suite 1910                                            **The Official Committee of Unsecured**
Chicago, IL 60606                      representing    **Creditorsof Clare Oaks**
312-228-4990                                           *(Creditor Committee)*
312-228-4988 (fax)
nwolf@nealwolflaw.com
*Assigned: 12/21/2011*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 11-48903 |
| | ) | |
| CLARE OAKS, | ) | |
| | ) | Hon. Pamela S. Hollis |
| Debtor. | ) | Chapter 11 |
| | ) | |
| | ) | Hearing Date: February 14, 2013 |
| | ) | Hearing Time: 10:00 a.m. |

**FINAL APPLICATION FOR ALLOWANCE AND PAYMENT OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES OF
CLIFTONLARSONALLEN LLP, THE DEBTOR'S ACCOUNTANTS**

CliftonLarsonAllen LLP("CLA"), accountants for the above-captioned reorganized

debtor (the "Debtor"), pursuant to sections 330 and 331 of title 11 of the United States Code (the

"Bankruptcy Code"), Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), and Local Rule 5082-1 of the Bankruptcy Court for the Northern District

of Illinois (the "Local Rules"), hereby requests the entry of an order allowing CLA compensation

and reimbursement of expenses on a final basis (the "Application").

In this Application, CLA requests entry of an order: (a) allowing CLA's fees in the

amount of $257,558.11[1] as reasonable compensation for 1,501.70 hours of actual, necessary

---

[1] During the time period December 5, 2011 through December 31, 2012 which this Final Application
covers, CLA's actual fees for 1,501.70 hours of services rendered to the Debtor total $375,143.50 and
reimbursement of expenses totaling $37,079.64. Prior to billing Debtor, CLA wrote down the amounts it
billed Debtor for fees by a total of $5,739.00 to conform CLA's billings to the quoted prices for services
contained in its engagement letters or correct for rounding errors. The voluntary reductions prior to billing
are shown on rows 56 and 57 of Exhibit B1. However, in order to comply with the revised estimate for
the examined forecast, which has been agreed to among CLA, Debtor and other interested parties, CLA
has voluntarily agreed to limit its request for payment in connection with the examined forecast to
$145,000 at this time, and, therefore, this Final Application seeks total compensation for fees and
expenses in the amount of $294,637.75, or **$111,846.39 less** than CLA's actual billed fees during the
application period. CLA agrees to this reduction so that its request for payment will "fit" within the
parameters of the wind down budget which was established before the full cost and extent of the work
required by the Examined Forecast and Feasibility Study could be determined. No party has objected to

accounting services rendered to the Debtor between December 5, 2011 and December 31, 2012 (the "Application Period"); (b) allowing reimbursement CLA's out of pocket costs in the amount of $37,079.64 as actual, necessary expenses incurred during the Application Period; (c) approving on a final basis the Debtor's payments to CLA totaling $135,287.75 pursuant to the *Order Amending the Employment Order* [Dkt. 429]; and (d) authorizing the Debtor to pay CLA its remaining allowed compensation in the amount of $159,350.00 which includes allowed cost reimbursement of $37,079.64 on a final basis. In further support of its Final Application, CLA states as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the matters raised in this Third Application pursuant to 28 U.S.C. §§ 157 and 1334.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (M).

3.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are Sections 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016(a), and Local Rule 5082-1.

## BACKGROUND

5.      On December 5, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Northern District of Illinois, Eastern Division.

6.      On November 15, 2012, the Court entered an Order [Dkt. 437] (the "Confirmation Order") confirming the Third Amended Plan of Reorganization Under Chapter 11 of the

---

CLA's fees and reimbursement.  CLA reserves its rights to seek allowance, approval, and payment of its remaining fees in future fee applications from any funds that may remain in the Debtor's wind down budget after reconciliation of actual wind down expenses to that budget and not from any other source.

Bankruptcy Code, dated September 13, 2012 [Dkt. 357] (the "Plan"). As provided in the

Confirmation Order, the Plan became effective on December 31, 2012 (the "Effective Date")

upon the satisfaction of certain conditions precedent.

### The Debtor's Employment of CLA

7.      On January 12, 2012, the Debtor filed its *Application to Employ CLA as the Debtor's Accountants* [Dkt. 101]. The application attached the Declaration of Chad Kunze and three engagement agreements describing the services to be provided and the fees to be paid for CLA's work.

8.      On January 20, 2012, the Court entered its *Order Authorizing the Debtor to Employ CLA* [Dkt. 113] (the "Employment Order").

9.      The Debtor has previously filed two motions to amend the Employment Order seeking to expand the scope of accounting services to be provided by CLA. Most recently, on November 5, 2012, the Debtor filed its *Motion to Amend the Employment Order* [Dkt. 415] seeking authority to employ CLA to conduct an Examined Forecast.

10.     On November 8, 2012, the Court entered its *Order Amending the Employment Order* [Dkt. 429] (the "Amended Employment Order") granting the Debtor's Motion to Amend. Altogether the Debtor and CLA are parties to seven engagement letters describing separate subsets of accounting and assurance services to be provided by CLA.

### The Debtor's Interim Payments to CLA

11.     Pursuant to the Amended Employment Order, the Debtor is authorized to pay CLA up to a total of $239,500 ($64,500 in connection with the services described in the three Original Engagement Letters, plus $65,000 in connection with the services described in the First Supplemental Engagement Letters, plus an additional $110,000 in connection with the services

described in the Second Supplemental Engagement Letter, as those capitalized terms are defined in the Motion to Amend) as invoices were presented in respect of CLA's delivery of and the Debtor's acceptance of each component of work product.

12.    On January 28, February 26, April 28, May 27, June 28, July, 26 August 31, October 31 and December 31, 2012, CLA sent invoices to the Debtor, true and correct copies of which are attached as **Exhibit A (1-9)**.

13.    Debtor has made the following payments to CLA:

| | | |
|---|---|---|
| (a) | March 26, 2012 | $39,025.00 |
| (b) | June 5, 2012 | $ 9,376.07 |
| (c) | July 5, 2012 | $ 4,647.16 |
| (d) | August 3, 2012 | $ 2,494.82 |
| (e) | September 7, 2012 | $ 4,275.00 |
| (f) | September 26, 2012 | $ 3,800.00 |
| (g) | December 7, 2012 | $71,959.70 |

14.    Accordingly, as of the date this Application is filed, CLA has received payments totaling $135,287.75 and requests payment of remaining compensation and reimbursement of expenses totaling $159,350.00. [2]

---

[2] During the time period December 5, 2011 through December 31, 2012 which this Final Application covers, CLA's actual fees for 1,501.70 hours of services rendered to the Debtor total $375,143.50 and reimbursement of expenses totaling $37,079.64.  Prior to billing Debtor, CLA wrote down the amounts it billed Debtor for fees by a total of $5,739.00 to conform CLA's billings to the quoted prices for services contained in its engagement letters or to correct for rounding errors.  The voluntary reductions prior to billing are shown on rows 56 and 57 of Exhibit B1.  However, in order to comply with the revised estimate for the examined forecast, which has been agreed to among CLA, Debtor and other interested parties, CLA has voluntarily agreed to limit its request for payment in connection with the examined forecast to $145,000 at this time, and, therefore, this Final Application seeks total compensation for fees and expenses in the amount of  $294,637.75, or **$111,846.39 less** than CLA's actual billed fees during the application period.  CLA agrees to this reduction so that its request for payment will "fit" within the parameters of the wind down budget which was established before the full cost and extent of the work

## SERVICES PERFORMED BY CLA

15.     As required by Local Rule 5082-1(B), CLA provides the following Narrative Summary of the services rendered during the Application Period.

16.     L.R. 5082-1(B)(1)(a), (d), and (e) – A summary list is attached as **Exhibit B1** that displays (i) CLA's principal activities and total compensation requested in connection with each activity, (ii) the name and  position of each person who performed work on each activity, the approximate hours worked, and total compensation sought for each person's work on each activity, and (iii) the hourly rate of each professional, the total number of hours expended by each person, and the total compensation sought for each.

17.     L.R. 5082-1(B)(1)(b) – During the Application Period, CLA kept detailed records of its hours and fees by person and by task code. Detailed daily time entries describing the services performed, hours worked, and compensation sought for each professional during the Application Period are attached as Exhibits C1a-C9b, inclusive. Additionally, a separate description of each of the principal activities performed follows:

### A.  Audits for 2009 and 2010

An audit of financial statements is the verification of the financial statements of a legal entity with a view to express an audit opinion. The audit opinion is intended to provide reasonable assurance that the financial statements are presented fairly, in all material respects, and/or give a true and fair view in accordance with the financial reporting framework. The purpose of an audit is to enhance the intended users' confidence in the financial statements.

As a regulated entity, Clare Oaks is required to supply certain governmental agencies with audited financial statements.  In addition, Clare Oaks agreements with its bondholders require audited financial statements.  CliftonLarsonAllen ("CLA") was engaged to complete and issue an audit of Clare Oaks financial statements for the fiscal years identified above.  CLA had performed services related to the 2009 and 2010 fiscal periods prior to the bankruptcy but was

---

required by the Examined Forecast and Feasibility Study could be determined.  No party has objected to CLA's fees and reimbursement.  CLA reserves its rights to seek allowance, approval, and payment of its remaining fees in future fee applications from any funds that may remain in the Debtor's wind down budget after reconciliation of actual wind down expenses to that budget and not from any other source.

not able to issue the completed audits because of uncertainty related to the ability of Clare Oaks to continue as a going concern.

CLA's services consisted of completing on-site fieldwork and reconciliations of Clare Oaks numerous financial accounts which had been started prior to the bankruptcy filing as well as engaging in a detailed analysis of the impact of the bankruptcy filing on Clare Oaks financial condition so that required disclosures could be made. The fieldwork also entailed reviewing Clare Oaks records to verify the accuracy of the required disclosures. The audits were completed in accordance with the requirements of Generally Accepted Auditing Standards (GAAS) and the disclosures required by Generally Accepted Accounting Principles (GAAP), including a GAAP departure due to Clare Oaks' management's decision not to engage an expert to prepare a valuation report regarding Clare Oaks building and improvements, were made. The audits were completed within the time parameters required by Clare Oaks and for the $27,000 estimate of cost provided by CLA to Clare Oaks in its engagement letter dated January 5, 2012.

During the Application Period, CLA spent a total of 116.75 hours providing services under this task code for total fees of $27,000.00.

### B.  Medicare Report

Clare Oaks must complete and submit a Federal Medicare Cost Report within 5 months after each fiscal year end. Medicare does not allow extensions of this reporting requirement. CLA was engaged to prepare the required annual report for the fiscal year ended June 30, 2012. CLA has assisted in the preparation of the Clare Oaks annual Medicare Cost Report for the last several years. CLA used existing conforming software to input the data collected from Clare Oaks and produce the required filing documents and accompanying data files. This engagement was completed on time and within initial estimates.

During the Application Period, CLA spent a total of 18.60 hours providing services under this task code for total fees of $2,500.00.

### C.  Certificate Of Need (CON) Audit

The Illinois Department of Public Health (IDPH) requires a newly constructed Continuing Care Retirement Center (CCRC) and Skilled Nursing Facility (SNF) such as Clare Oaks, to submit a special purpose audit to obtain a Certificate of Need from the IDPH (a "CON Audit") . Without a Certificate of Need a CCRC and SNF cannot operate in Illinois. Prior to bankruptcy, Clare Oaks had received multiple extensions of time to complete this audit based upon uncertainties about final construction costs and outstanding disputes. During 2012, IDPH required Clare Oaks to complete and file the CON audit to retain its license to operate. CLA was engaged to complete the CON audit. CLA examined the records of Clare Oaks on site and obtained the required documentation and reconciliation to be able to issue the CON audit. During the fieldwork for this engagement it became necessary to work with many third parties to reconcile their records of construction, building and labor costs of the project with Clare Oaks. In addition, it was necessary to estimate the final amounts of some costs because of un-resolved disputes. CLA was also required to allocate building costs between the SNF and non-SNF components of the facility. This added to the final cost of CLA's services in connection with this

task.  Some of the additional cost is reflected in the General and Reimbursement Consulting services identified separately because it involved advising Clare Oaks on record keeping procedures that were applicable generally.  Therefore the CON audit was completed on time and within initial estimates.

During the Application Period, CLA spent a total of 47.00 hours providing services under this task code for total fees of $7,500.00.

### D.  Audits for 2011 and 2012

As noted above for the 2009-2010 Financial Statement Audit, Clare Oaks is required by regulators and various agreements with creditors to provide annual audited financial statements. The 2011 and 2012 audited financial statements were also required to enable Clare Oaks to obtain the necessary bankruptcy exit financing that closed on December 31, 2012.   The services performed were similar in nature to the services necessary to produce the previous years' audited financial statements, but for 2011 and 2012, there had been no pre-bankruptcy services provided so the total cost of these new audits were expected to cost more than the previous years' audits and the costs were estimated accordingly.  Clare Oaks management initially agreed that no valuation expert be employed for the 2011-2012 audit and CLA's original estimate of $60,000 was made accordingly.  After the engagement had begun, Clare Oaks informed CLA that in order to obtain bankruptcy exit financing, the 2011-2012 audited financial statements were to be used for not only meeting regulatory and pre-bankruptcy creditors' requirements, but also to support the examined forecast that CLA was then engaged to provide as a necessary precondition to Clare Oaks being able to issue new bonds to fund its bankruptcy exit. To support the examined forecast, the 2011-2012 audit could not contain the same GAAP departure as the 2009-2010 audit.  In order to conform to GAAP, a valuation expert had to be engaged and the results of its appraisal, including an impairment adjustment had to be incorporated into the audit.  In addition to the tasks performed both before and after the bankruptcy filing for the 2009-2010 audit, CLA was required to address and document the appraisal and work with management to record the impairment to the value of Clare Oaks assets as revealed by the appraisal.  This additional work caused CLA to increase its estimate of the total cost of the 2011-2012 to $70,000.  This increase in estimated cost was approved by Clare Oaks. The audits were completed in accordance with the requirements of Generally Accepted Auditing Standards (GAAS) and the disclosures required by GAAP were made.  The audits were completed within the time parameters required by Clare Oaks and well within the revised budget estimate of $70,000 provided by CLA.

During the Application Period, CLA spent a total of 295 hours providing services under this task code for total fees of $63,988.75.

### E.  Medicaid Report

Clare Oaks is required to complete and submit a State Medicaid Cost Report within 3 months after each fiscal year end.  Available extensions of this reporting requirement were requested by Clare Oaks and approved by the State of Illinois.  CLA was engaged to prepare the required annual report for the fiscal year ended June 30, 2012.  CLA has assisted in the preparation of the Clare Oaks annual Medicaid Cost Report for the past several years.  CLA used existing conforming software to input the data collected from Clare Oaks and produce the required filing

documents and accompanying data files.  This engagement was completed on time and within initial estimates.

During the Application Period, CLA spent a total of 13.50 hours providing services under this task code for total fees of $2,500.00.

### F.  Form 990 – 6/30/12

Clare Oaks and all IL Non-Profit Organizations have an annual requirement to complete and submit an IRS Form 990 within an original due date of 4 ½ month after the organizations fiscal year end.  Extensions are allowed and acceptable.  Clare Oaks did request and was granted all available extensions to file their IRS Form 990 for the fiscal year ended June 30, 2011 which resulted in a final due date of May 15, 2012.  CLA worked with Clare Oaks' management to compile all required filing information and input that information into the software specified by the IRS for this report.  The IRS Form 990 was completed on time and within initial estimates.

In addition to the IRS Form 990 annual requirements, there are various State of Illinois and Attorney General reporting requirements.  These filing requirements were included in the engagement and timely completed as required by the State of Illinois.

During the Application Period, CLA spent a total of 17.30 hours providing services under this task code for total fees of $1,275.00.

### G.  General and Reimbursement Consulting

Clare Oaks requested that CLA be available to assist in matters that would arise in relation to general consulting services that may not have been known at the time of signing the engagement letter.  Specific assistance related to reimbursement and compliance matters that arose from previously filed cost reports as well as regulatory matters that arose during bankruptcy.  In addition, due to the complex nature of accounting during the period of bankruptcy and required reporting, Clare Oaks requested assistance with various reconciliation matters and general financial and operational consulting.  This engagement was intended to allow Clare Oaks to request additional accounting and reporting assistance during bankruptcy and also obtain assistance in relation to any otherwise unanticipated services that became necessary in addition to or during the various other specific engagements.  The estimated amount agreed to between the Debtor and CLA in the engagement letter was to not exceed $30,000.

During the Application Period, CLA spent a total of 103.50 hours providing services under this task code for total fees of $26,364.50.

### H.  Examined Forecast

CliftonLarsonAllen was contacted by the Chief Restructuring Officer of Clare Oaks, Paul Rundell, and Ziegler Capital Markets to provide a feasibility study which contains the examined forecast in order to complete the Series 2012A Bonds financing transaction which was an essential component of Clare Oak's emergence from Bankruptcy.  The feasibility study containing the examined forecast was identified as a necessary component of the financing

transaction by the Illinois Finance Authority, the bond underwriter and the prospective bond purchasers.

CLA examined, in accordance with attestation standards established by the American Institute of Certified Public Accountants, from information management provided, the forecasted balance sheets, statements of operations, changes in net assets, and cash flows and summaries of significant assumptions and accounting policies of Clare Oaks as of June 30, 2013, 2014, and 2015 and for each of the years then ending, contained in a financial feasibility study. We examined the financial forecast for the purpose of issuing a report stating whether, in our opinion, (1) management's financial forecast is presented in conformity with applicable guidelines established by the American Institute of Certified Public Accountants and (2) management's assumptions provide a reasonable basis for its forecast.

A financial forecast presents, to the best of management's knowledge and belief, Clare Oaks expected financial position, results of operations, and cash flows for the forecast period. It is based on management's assumptions reflecting conditions it expects to exist and the course of action it expects to take during the forecast period. An examination of a financial forecast includes procedures we consider necessary to evaluate (1) the assumptions used by management as a basis for the financial forecast, (2) the preparation of the financial forecast, and (3) the presentation of the financial forecast.

CLA originally estimated the cost of the examined forecast to be $110,000. After commencing the engagement, sue to ongoing negotiations among Clare oaks, the IFA, the underwriter and the proposed purchasers, many tasks had to be repeated or changed as they were being undertaken. The amount of the proposed bond issue changed several times. Each change necessitated revisiting, adjusting and sometimes re-doing completed analyses. All of the foregoing added to the time and cost of completing the examined forecast. The need for an upward revision in total cost for the examined forecast was discussed with Clare Oaks on numerous occasions. Clare Oaks approved an initial increase in CLA's estimated cost for the examined forecast to $145,000. Due to extreme time pressure resulting from the constantly changing parameters of the final financing agreement and the need to meet the rapidly approaching yearend deadline, CLA's invested time substantially exceeded the revised estimate of $145,000. The final time and cost for production of the examined forecast, including CLA's fees, direct costs and attorneys fees, totaled almost $260,000. After extensive negotiation with all parties, including Clare Oaks, the underwriter and the bond trustee, an agreement was reached concerning the amount of CLA's compensation in connection with the examined forecast that would be allowed without objection. That amount is $145,000.

        During the Application Period, CLA spent a total of 890.05 hours providing services under this task code for total fees of $237,051.25, however, at this time CLA requests approval and allowance of fees for the examined forecast of $145,000 (see Footnotes 1-3).

        22.    L.R. 5082-1(B)(1)(c) – None

        23.    L.R. 5082-1(B)(1)(f) – As disclosed above, CLA has previously sent 9 invoices to

the Debtor totaling $406,484.14 with respect to CLA's delivery and the Debtor's acceptance of

each component of work product, and the Debtor has made 7 payments to CLA totaling $135,287.75.

24.     <u>L.R. 5082-1(B)(1)(g)</u> – CLA seeks the allowance and reimbursement of its out of pocket expenses totaling $37,079.64 as actual, necessary expenses. A list of CLA's expenses is attached as Exhibit D. All of the expenses for which CLA seeks reimbursement were actually incurred by CLA, were necessary for the proper representation of the Debtor, and were specifically allocated to the Debtor's case. None of the expenses represents general overhead or other expenses unrelated to this case. CLA has not added any additional charges, and the expenses reflect CLA's actual out-of-pocket costs.

25.     <u>L.R. 5082-1(B)(2)</u> – By this Application, CLA seeks the allowance of its compensation and reimbursement of expenses. As discussed above, the Debtor has previously made payments to CLA totaling $135,287.75 pursuant to the Amended Employment Order, and CLA seeks allowance and payment of remaining compensation and reimbursement totaling $159,350.00. [3] The source of Debtor's payments to CLA is the carve-out in the budget relating to the Debtor's post-petition DIP financing.

_____

[3] During the time period December 5, 2011 through December 31, 2012 which this Final Application covers, CLA's actual fees for 1,501.70 hours of services rendered to the Debtor total $375,143.50 and reimbursement of expenses totaling $37,079.64. Prior to billing Debtor, CLA wrote down the amounts it billed Debtor for fees by a total of $5747.50 to conform CLA's billings to the quoted prices for services contained in its engagement letters or correct for rounding errors. The voluntary reductions prior to billing are shown on rows 56 and 57 of Exhibit B1. However, in order to comply with the revised estimate for the examined forecast, which has been agreed to among CLA, Debtor and other interested parties, CLA has voluntarily agreed to limit its request for payment in connection with the examined forecast to $145,000 at this time, and, therefore, this Final Application seeks total compensation for fees and expenses in the amount of $294, 637.75, or **$111,846.39 less** than CLA's actual billed fees during the application period. CLA agrees to this reduction so that its request for payment will "fit" within the parameters of the wind down budget which was established before the full cost and extent of the work required by the Examined Forecast and Feasibility Study could be determined. No party has objected to CLA's fees and reimbursement. CLA reserves its rights to seek allowance, approval, and payment of its remaining fees in future fee applications from any funds that may remain in the Debtor's wind down budget after reconciliation of actual wind down expenses to that budget and not from any other source.

## DETAILED STATEMENT OF SERVICES
### (L.R. 5082-1(C))

26.     The Bankruptcy Rules require "[a]n entity seeking interim or final compensation

for services, or reimbursement of necessary expenses, from the estate [to] file an application

setting forth a detailed statement of (1) the services rendered, time expended and expenses

incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a). The Local Rules permit

"[t]he applicant's detailed time records [to] constitute the detailed statement required by Fed. R.

Bankr. P. 2016(a)." Local R. 5082-1(C).

27.     The time detail attached as Exhibit C1a-C9b substantially complies with the

requirements of Bankruptcy Rule 2016(a) and Local Rule 5082-1(C),[4] because the time detail is

divided by tasks and activities that match the narrative descriptions in this Application, and all

time entries list the date of the work, the name of the person performing the work, a brief

description of the nature of the work, and the fee charged for the work described in the entry.

## BASIS FOR RELIEF

28.     Pursuant to sections 330 and 331 of the Bankruptcy Code and the generally

applicable criteria with respect to time, nature, extent, and value of services performed, all of

---

[4] CLA has recorded its time entries in increments of .25 hour in accord with its usual and customary
practice.  CLA acknowledges that its practice is not in compliance with Local Rule 5082-1(C).  However,
CLA respectfully requests that it not be required to re-state its time entries in increments of .10 hour as
required by the foregoing Local Rule in consideration of the substantial discount of its fees in this case
which amounts to a reduction of over 29% in its request for compensation.  CLA respectfully suggests
that any downward adjustment in the overall amount of its fees that may result from such a re-statement is
significantly exceeded and accounted for by CLA's pre-billing voluntary reduction in the amount of
$5,739.00 and its further agreement to the $111,836.49 reduction as described above.  Judges of this
Court have observed that the "inflationary" impact of recording time in .25 hour increments as opposed to
.10 hour increments has been perceived as warranting a downward adjustment in the requested fees by
5% or less.  *Cf.*, In re Spanjer Brothers, Inc., 203 B.R. 85 (Bankr. N.D. Ill. 1996) (court applied a 5%
reduction to compensate for the "inflationary" impact of billing in .25 hour increments); In re William J.
Stoecker, 114 B.R. 965 (Bankr. N.D. Ill. 1990) ( 4.26% reduction).  It is submitted that the more than
29% downward adjustment already agreed to by CLA and the other parties in interest eliminates any need
or justification for further adjustment.

CLA's services are compensable and the compensation requested is fair and reasonable. All of the accounting services performed by CLA during the Application Period were required for the proper representation of the Debtor in this bankruptcy case.

29.    The compensation requested by CLA is fair and reasonable. CLA's hourly rates are less than or comparable to rates charged by other accountants having the same amount of experience, expertise, and standing for similar services in comparable Chapter 11 cases in the Northern District of Illinois.

30.    CLA has at all times acted specifically in the best interest of the Debtor and its estate. All services performed and all expenses incurred by CLA were reasonable and necessary for the preservation of the Debtor's bankruptcy estate.

31.    CLA has not entered into an agreement or understanding of any kind, expressed or implied, with any entity to share in its compensation received or to be received by CLA for services rendered to the Debtor in this case.

32.    This is CLA's first and final application for an award of compensation and reimbursement of expenses. Accordingly, CLA may present this Final Application pursuant to Section 330 of the Bankruptcy Code.

## LIMITED NOTICE

33.    Pursuant to Paragraph 3 of the Court's *Order Granting Debtor's Emergency Motion to Authorize Establishment of a Master Service List and Notice Procedures* [Dkt. 38], any entity seeking compensation of fees or expenses must serve such motion on the Master Service List (as that term is defined herein) but may provide limited notice of such motion to all other creditors.

34.     CLA has served a copy of this Application by CM/ECF or first class mail upon (a) the Office of the United States Trustee; (b) Neal Wolf & Associates, LLC, counsel to the Creditors' Committee; (c) Senior Care Development, LLC, the Debtor's post-petition DIP Lender; (d) Mintz Levin Cohn Ferris Glovsky and Popeo, PC, counsel to Wells Fargo Bank, National Association, in its capacity as Master Trustee under the Master Indenture; (e) Duane Morris, counsel to secured lender Sovereign Bank; (f) MB Financial Bank; and (g) those persons who have formally appeared and requested service in these proceedings pursuant to Bankruptcy Rule 2002 (collectively, the "Master Service List"). As authorized by this Court's *Order Granting Debtor's Motion To limit Service of Professionals Final Fee Applications* [Dkt. 470], entered January 22, 2013, CLA is not required to serve a detailed notice of hearing of this Application to all creditors who are not on the Master Service List. Accordingly, CLA submits that notice of the Application is sufficient under the circumstances and that no further notice is required.

WHEREFORE, CliftonLarsonAllen LLP respectfully requests that this Court enter an order: (a) granting the relief requested in this Application; (b) allowing CLA's fees in the amount of $257,558.11 as reasonable compensation for 1,501.70 hours of actual, necessary accounting services rendered to the Debtor between December 5, 2011 and December 31, 2012; (c) allowing reimbursement CLA's out of pocket costs in the amount of $37,079.64 as actual, necessary expenses incurred during between December 5, 2011 and December 31, 2012; (d) approving on a final basis the Debtor's payments to CLA totaling $135,287.75 pursuant to the *Amended Order Authorizing Debtor to Employ CLA* [Dkt. 429] together with the agreement reached among CLA, the Debtor and other parties in interest as to payment of an additional $159,350.00; (e) authorizing the Debtor to pay CLA its remaining allowed compensation in the amount of

$159,350.00 on a final basis; and (f) granting such other relief as this Court deems just and proper.

Respectfully submitted,

Dated: January 24, 2013               CLIFTONLARSONALLEN LLP

By: /s/ Chad Kunze

Chad Kunze, Partner
CliftonLarsonAllen LLP
600 Washington Avenue, Suite 1800
St. Louis, MO 63101-1312
(314) 925-4300 – phone
(314) 925-4350 – fax

Prepared with the assistance of and filed by:

/s/ George R. Mesires
George R. Mesires (# 6276952)
Patrick F. Ross (# 6296461)
Ungaretti & Harris LLP
70 W. Madison Street, Suite 3500
Chicago, IL 60602
(312) 977-4400 – phone
(312) 977-4405 – fax
Email: grmesires@uhlaw.com
        pfross@uhlaw.com

*Counsel for the Reorganized Debtor*